# BRAGDON, BERKSON & DAVIS, P.C.

ATTORNEYS AT LAW

STEPHEN B. BRAGDON
H. NEIL BERKSON
JAMES ROMEYN DAVIS
KATHARINE LORD KLEIN
CAROL MACKINNON

November 17, 1993

82 COURT STREET
P.O. BOX 465
KEENE, NEW HAMPSHIRE 03431-0465

603-357-4800

Gordon J. MacRae
P. O. Box 10
Jemez Springs, NM 87025

Re: State of New Hampshire v. Gordon J. MacRae
    (Cheshire County Superior Court)

Dear Gordon:

Relative to the above-identified matter, enclosed please find our statement dated January 28, 1994 which shows an outstanding balance of slightly less than $1,900.00. Would you kindly attend to payment at once.

As I am sure you are aware, there will be quite a bit of additional activity in this matter in the future. As Ron, you and I have discussed in the past, I am representing you in this matter on a "secondary" basis, mainly for the purposes of assisting in filing paperwork and advising Ron regarding our rather quaint local practices and procedures.

I am assuming that Ron will continue to consult with me from time to time on these procedural matters, assisting in scheduling hearings, etc. I am working on the assumption that Ron will not require my attendance at the trial on the merits or for jury selection. I am also working on the assumption that - as has been the case here to date - Ron will not expect me to go through discovery materials except as specifically requested on an "as needed" basis.

As you are aware, Ron has previously requested my appearance at motion hearings and I am working on the assumption that he will continue to do so. Although it is difficult, if not impossible, to accurately predict the additional time relative to such hearings, I think that there will easily be an additional 15-20 hours of time that I will put into this matter, given the assumptions and expectations contained in this letter.

With that in mind, I would anticipate that an additional advance of $2,100.00 would be appropriate at this time. You may recall my normal hourly billing rate is $140.00 an hour. I have used the lower estimate of 15 hours in suggesting this additional advance.

Gordon J. MacRae
February 2, 1994
Page 2


Should you have any questions, please do not hesitate to contact me.

Sincerely,

James Romeyn Davis

JRD/cm
Enclosure
D3839*1

cc: Ron Koch, Esq.

BRAGDON, BERKSON & DAVIS, P.C.

ATTORNEYS AT LAW



STEPHEN B. BRAGDON
H. NEIL BERKSON
JAMES ROMEYN DAVIS
KATHARINE LORD KLEIN
CAROL MACKINNON

August 18, 1994

82 COURT STREET
P.O. Box 465
KEENE, NEW HAMPSHIRE 03431-0465
—
603-357-4800

**VIA FACSIMILE TRANSMISSION
AND FIRST-CLASS MAIL**

Ron Koch, Esq.
Ron Koch, P.A.
503 Slate Ave., N.W.
Albuquerque, N.M. 87102

Re: <u>State of New Hampshire v. Gordon J. MacRae</u>
(Cheshire County Superior Court)

Dear Ron:

I am in receipt of your fax letter of August 17. Relative to that letter, in the normal course, witnesses are to be identified pursuant to the trial readiness order issued shortly in advance of trial. I have not yet reviewed the outstanding pretrial and trial readiness orders to see if a deadline has ever been established. However, I do not remember that we have ever had such a deadline in this case.

In the normal course in New Hampshire - absent alibi and other affirmative defenses which I will discuss hereinafter - the witness lists are typically exchanged at the beginning of the drawing of the jury. Our practice is to exchange those lists at that time and the Court will normally read the name of all potential witnesses to the veniremen so that the prospective jurors can advise if they know any of the witnesses.

Both the prosecution and defense file these witness lists and they are, obviously, exchanged.

In the case of alibi under our court rule, Superior Court Rule 100, the witnesses have to be disclosed by the defense in the notice of alibi which is to be filed within ten (10) days of a not guilty plea. I believe we have already gone through this issue vis-a-vis alibi. I do wish to discuss this issue with you vis-a-vis trial strategy.

As an aside, this is to confirm our previous conversations in which I advised that I am serving as local counsel only and not as lead or trial counsel. You are aware that I have not been reviewing the discovery in any significant detail. Rather, I merely review it to make sure that it appears to be complete and look for the names of contacts and/or potential witnesses to identify conflicts.

Ron Koch, Esq.
August 18, 1994
Page 2

    We need to discuss what, if any, role you wish me to play in the upcoming weeks leading up to trial and during trial. You may remember that the previous orders of the Court have allowed me not to appear; however, at your request, I have continued to appear at the telephonic hearings.

    I have set time aside to meaningfully engage in trial preparation and also to appear at trial - should you desire. However, I am not desirous of appearing merely to "run up the tab."

    You also have asked whether we have to notify the Court regarding "expert witnesses". I hate to be evasive - and sound like a lawyer - but what type of "expert witnesses" do you envision? For what purpose would they be offered?

    Regarding Tom Grover's records, I believe the enclosed Order of August 17 addresses the issues raised in your letter. Kindly provide Ms. Collet's address as well as that of the Derby Lodge.

    Regarding Tirrell House records, am I correct in assuming that you are not requesting releases for these? If this is incorrect, kindly advise at once.

    During our most recent telephonic hearing, there was some discussion regarding the jury questionnaire. Could you kindly advise where you are with this at present and fax or Fed Ex me a copy of the questionnaire - as it currently stands - together with any additional proposals by the prosecution with which you do not concur. If I receive this material, I will attempt to iron out the last details with Bruce Reynolds - if you desire - because of his proximity to me.

    We should also discuss the State's objection to appearance of additional counsel.

    Should you have any other questions, please do not hesitate to contact me.

                                    Sincerely,

                                    James Romeyn Davis

JRD/cm
Enclosure

cc: Gordon J. MacRae




# BRAGDON, BERKSON & DAVIS, P.C.
ATTORNEYS AT LAW

STEPHEN B. BRAGDON
H. NEIL BERKSON
JAMES ROMEYN DAVIS
KATHARINE LORD KLEIN
CAROL MACKINNON

82 COURT STREET
P.O. Box 465
KEENE, NEW HAMPSHIRE 03431-0465

603-357-4800

August 19, 1994

**VIA FACSIMILE TRANSMISSION**
**AND FIRST-CLASS MAIL**

Ron Koch, Esq.
Ron Koch, P.A.
503 Slate Ave., N.W.
Albuquerque, N.M. 87102

Re:   **State of New Hampshire v. Gordon J. MacRae**
       (Cheshire County Superior Court)

Dear Ron:

I am in receipt of your letter of August 18, which I received the morning of August 19 via facsimile transmission, relative to the above.

Regarding interviewing Tom Grover, I think you should set this up as soon as possible given the proximity to trial. If you want to have someone else asking questions, I think this could be arranged. I would be more than willing to do so if you could advise of the specific areas of inquiry that you want me to go into <u>and</u> that you do not want me to go into. Although I have not gone back and looked at the Court order, I certainly believe that we would have to let Bruce be aware and present during that interview.

Regarding the questionnaire, I have it at this point and have briefly reviewed same. Has this version been reviewed and approved by Bruce? Do you know if there are any additional items which Bruce and/or Gainor have requested to be included?

Relative to your comments regarding Bruce and Robert, I sense - although I certainly do not know - that there has been some parting of the ways, particularly vis-a-vis 404B strategy and analysis. I have had no previous experience with Robert; however, I have had quite a few cases with Bruce. Bruce has always been a "404B fanatic". In addition, I strongly suspect that there has been some difference regarding sentencing between the two in the past. Not that Robert wants minimal time, but Bruce definitely wants more time than Robert as part or any pleas.



Ron Koch, Esq.
August 19, 1994
Page 2

    Regarding plea prospects and future prosecutions, etc., I have every reason to believe that Gordon will face trial on all Cheshire County charges irrespective of the result in the Tom Grover case. In addition, if Gordon goes through one trial and is convicted, I think that he will receive the maximum charge possible on at least one Class A felony, if not more, as a result of that trial.

    As you have seen, Judge Brennan is somewhat of a maverick and although I certainly don't always agree with him, he looks at each case individually and is quite reasonable from a defense standpoint in pretrial matters. I should advise you that when it comes to sentencing, however, his appreciation for the defense is far less obvious. Although not considered one of our strictest sentencing judges, he is nonetheless one of our more conservative sentencing judges. In non-negotiated cases, he has a penchant for accepting the State's recommendation if not increasing the period of incarceration. I know from previous experience that he is a "significant sentencer" vis-a-vis sexual assault charges of all types - particularly those involving minors at the time of the alleged offense.

    For political reasons, I also strongly suspect that Rockingham will go forward irrespective of the results in Cheshire County. The County Attorney in Rockingham County has been under some heat as a result of prosecutions and/or pleas in sexual assault cases within the last year or two. Based upon what I hear from the defense bar on the east coast, Carleton's office is pretty much going forward on a "full court press" mentality vis-a-vis prosecutions. This is an election year for county attorneys throughout New Hampshire and their terms of office are only two years.

    In addition - although I do not know if all this political talk really makes any difference - at this point I think that there is some likelihood that the current Cheshire County Attorney, David Park, will be unsuccessful in his primary and that one of his assistants, William Albrecht, will receive the Republican primary endorsement. There is no Democrat running and the Republican primary winner is a "shoe-in" election.

    In the event David is unsuccessful in the primary, then Bruce Reynolds will be remaining as an assistant prosecutor and would keep this case. Although I certainly do not know, I strongly suspect that Bill would continue to have the general policy that each prosecutor make sentencing judgments and recommendations and prosecutorial decisions fairly independently. To the extent that Bill asserted greater authority or control than David currently does over his assistants, this would <u>not</u> be helpful to Gordon.

Ron Koch, Esq.
August 19, 1994
Page 3


Bill Albrecht is an extremely aggressive Assistant County Attorney - much more so than Bruce - and he has made quite a history of active prosecutions of child sexual assault cases - even so-called statutory rape cases where the alleged victim strongly disfavored the prosecution. I know this from first hand information having served as a Guardian <u>ad</u> <u>Litem</u> in several of those cases.

If, in what I believe to be the unlikely event, David is successful in the primary, then I have every reason to believe that Bruce will be resigning as Assistant County Attorney. If this happens, I certainly think there would be some hiatus in the prosecution of the other charges. Whether this would be positive to Gordon is totally beyond my limited powers of prediction.

In respect to Eileen Nevins, I will attempt to find out from Bruce if the reason for their attempting to call her as a witness is because of her interview with Bonacci. At the time of her interview, do you know if she was a member of the bar? Has she filed an Appearance on behalf of Gordon in any of the civil cases? Has she reported the results of those interview results to you? Was she working under your direction or at your request?

Although I have never had to formally research the issue, I can advise that New Hampshire criminal courts typically take a fairly broad view regarding recusal when an attorney is a potential witness. For instance, it is the practice - particularly in Cheshire County - for the County Attorney's office to have limited, if any, interviews with either alleged victims or other potential witnesses pre-indictment. Even post-indictment, if new matters arise, it is fairly common for the County Attorney's office to request the investigating police department to conduct further interviews and then file a report - as has often been the case in these prosecutions. The County Attorneys and their assistants typically meet with victims or witnesses merely in order to know what their testimony will be at grand jury and then to prep the witness for trial preparation purposes. I am aware of several cases where a witness and/or victim has made certain statements to a County Attorney or his assistant and then recanted or attempted to recant that statement, and the County Attorney or his assistant will recuse himself - quite often voluntarily - and allow another attorney in the office to prosecute the case. This has happened not only in cases where the prosecution "goes South" because an alleged victim or witness suddenly takes a pro-defense position but also in cases where an alleged victim or witness attempts to make the testimony better from the standpoint of the State.

Ron Koch, Esq.
August 19, 1994
Page 4

    Regarding your "cat and mouse" concerns - I totally agree. Had it not been for <u>Whittaker</u>, there is little doubt in my mind that much of the 404B evidence would have come in and the cases would not have been separated.

    Although Bruce has been known to sometimes suffer from "tunnel vision", he is normally fairly good on his feet in trial, particularly vis-a-vis the defense or the defendant "opening the door" for impeachment purposes, to get in otherwise excluded 404B evidence, etc. I must admit that he typically is a very careful listener and is adept at figuring how to get around the Judge's ruling.

    Regarding Gordon alleged admissions of being a "hebephile", I think that this will definitely come in. Although I have conducted no grand legal research, it appears to me that it is clearly relevant and a statement against interest. Our denying this statement goes to the issue of weight versus admissibility. The absence of the tape again, I think, goes to the issue of weight versus admissibility. Irrespective of personal vendettas or conspiracy theories regarding Jim McLaughlin, I can advise that the Keene Police Department routinely recycles tapes. Regarding the probation records, I think it depends upon what, if anything, Gordon testifies to and which records you are talking about. If, for instance, Gordon was to deny that he has never done anything inappropriate with a child or a minor, then I would think that the door would be open. Similarly, if Gordon were to testify that he is not a hebephile, I would think that the door may also be open. However, if Gordon were to deny that he made the statement or to deny that he did any of the alleged acts with or to Tom Grover, then I think that much of the information would not be admissible.

    Regarding your possible experts, do you have reports from any of these? To the extent they are providing affirmative defenses as opposed to repeating elements of the charges, then we have to disclose them on the QT. I would think that this would apply to all of your proposed experts, particularly a urologist who would in effect be attempting to establish impossibility.

    Regarding my future services, I am not sure where I would be most helpful. On the one hand, my inflated view of my own abilities tend to make me think that I should be involved in pretrial, jury selection and actual trial. In moments of reflection and candor, I think that my presence during trial would be overkill from a purely legal standpoint unless I was actively participating in examination from time to time. At this point, I have to question whether that makes financial sense to Gordon and accordingly do not think that it is in his best interest.

Ron Koch, Esq.
August 19, 1994
Page 5


From an appearance standpoint, I am not convinced that having "a local attorney" with you and Gordon at the table makes any real difference. I suppose there is some argument that this may be helpful to Gordon from the standpoint of the jury's perspective; however, I am not in the least convinced.

From the standpoint of the law and trial practice, I think my presence might be somewhat helpful. Is this appropriately cagey enough for an attorney? As a practical matter, there are very few areas where procedurally you have greater rights under New Hampshire practice or the New Hampshire Constitution than you do under general criminal practice and the mandates of the Federal Constitution. The areas where there is additional significant benefit are typically in search and seizure issues - which aren't present here.

From a strictly procedural standpoint, I think I could walk you through the important procedural issues pre-trial. I think the most important areas for you to be aware of regarding the vagaries of New Hampshire criminal practice are as follows:

1.  New Hampshire has one of the strictest "contemporaneous objection" requirements known. With very few exceptions, objections that are not immediately raised in proper form to the trial justice are lost forever, even if there is a clear constitutional violation and significant constitutional interest involved. In my humble opinion, the exceptions to the contemporaneous objection rule are so few and far between and their application so problematic, given New Hampshire Supreme Court precedent, that I always think you should raise the objection on the record if you think it is a potential appellate issue - even if there may be certain strategic reasons to wait and see in the event you might be able to raise it later.

2.  Under New Hampshire practice, the opening statement may not be argumentative and the prosecutor must allege all the elements of the crimes charged. In doing so, the County Attorney may read the indictment.

3.  Neither the opening nor closing should include any so-called "personal" opinions. You may say that it is "Gordon's position" or "Gordon claims" or "Gordon says"; however, you may not say "I believe" or "I think".

4.  New Hampshire has wide open cross-examination subject to the normal limitations of relevancy and repetitiveness.

Ron Koch, Esq.
August 19, 1994
Page 6

5. Re-direct and re-cross are theoretically limited to the scope of the cross-examination, on the one hand, or the re-direct, on the other hand.

6. While addressing the Court, witness, or the jury, you must stand.

7. You will have to ask the Court to swear in all of your witnesses inasmuch as you are not a Justice of the Peace in New Hampshire.

8. When it comes time to close, you will close first and the State will close last - since it has the burden of proof. I do not know your practice in New Mexico, but I am well aware that this is not the practice that many States follow. I have heard of occasional cases where the defendant has requested, in advance, the ability to conduct rebuttal in the closing. I am not aware of any case where that request was honored; however, much of New Hampshire trial practice is handed down as a matter of "folklore" inasmuch as we do not have any source that reports what happens in the trial courts except for those cases that go up on appeal and an issue is raised relative to trial practice.

9. Regarding jury instructions, you have to submit any instructions that you want at the beginning of the selection of the jury. Those instructions should be typed, preferably with each instruction on a separate page. Instructions should contain a citation to the case, rule or form book from which they come.

10. Once the Judge gives his instructions and before the jury retires, you must raise on the record all objections you have to the instructions and provide an explanation for the objection. Any objections not so raised and explained will be lost. As in the case of the contemporaneous objection rule vis-a-vis questioning and evidence, there are a few exceptions to contemporaneous objection - upon which I never rely. I always raise all of my objections - if I think it is important.

11. During deliberations, counsel must remain present to have input on any questions that the jury may address to the Court. You should be advised that it is very common in New Hampshire for the jurors to ask for additional instructions or clarification. If counsel are not present, they waive any objection to the answer which the Court provides, even if that answer is incorrect.

12. Although it varies from judge to judge, it is not unusual for the trial court to provide the jurors with one copy of his instructions to have available to them during deliberations. Some of the judges do this with their complete instructions and others only do it with the substantive law instructions. I am not sure how Judge Brennan is currently handling this. I will discuss it with the clerk and bailiffs. I have had him do it different ways in different cases. This lies within the discretion of the trial court.

13. I assume that you are not going to be requesting sequestration of the jury. This is not favored under New Hampshire law and practice and is seldom granted - at least before deliberations commence - and not often afterwards. For instance, in the Pam Smart case, the trial judge specifically refused to sequester the jury during trial. That case was obviously subject to more media exposure than Gordon's. The trial judge was upheld on this issue on appeal.

14. If you desire to have sequestration of witnesses, this is normally granted if requested at the beginning of trial. When sequestration of witnesses is granted, however, it applies to both witnesses for the State and defense.

I hope that these wanderings have been at least somewhat helpful. I look forward to talking to you later today or on Monday.

Sincerely,

James Romeyn Davis

JRD/cm

cc: Gordon J. MacRae

# Ron Koch, P.A.
### ATTORNEY & COUNSELOR AT LAW

August 22, 1994

Mr. J.R. Davis
Attorney at Law
P.O. Box 465
Keene, New Hampshire
03431-0465

Via facsimile: 603-357-4800

Re: State of New Hampshire v. Gordon J. MacRae

Dear J.R.

I would like you to interview Tom Grover as soon as possible. I think you should interview him as though you were taking his deposition. In other words, obtain as much information as you can from him about his background, these charges, his treatment, his contact with other victims, his lawsuit against Gordon, etc. If Bruce will allow for a deposition it would avoid the necessity for having the tapes transcribed, however, we'll do whatever is necessary.

I've forwarded your letter of August 19th to Gordon. I have discussed the possibility of a plea with him on prior occasions and he seems to have no interest. I think we should find out what it would take resolve all cases by plea so we can discharge our duty to Gordon. Please talk to Bruce about resolution.

The jury questionnaire is one that Robert Gainor and I were working on although I have added some questions to the last document received by Mr. Gainor.

Thank you.

Very truly yours,

Ron Koch

REK:ysk
cc: Gordon MacRae

503 Slate Avenue, N.W.  /  Albuquerque, New Mexico 87102　　　505-247-2972  /  FAX 505-243-3669