UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE
--------------------------------------------------

GORDON MACRAE,

　　　　　　　　　　　　　　　　　DOCKET NO.: 1:14-CV-45-JL

　　　　PETITIONER

　　－ AGAINST －

RICHARD M. GERRY, WARDEN,
NEW HAMPSHIRE STATE PRISON

　　　　RESPONDENT
--------------------------------------------------

　　　------------------------------------------------------------
　　　RESPONSE TO RESPONDENT'S
MOTION TO DISMISS PETITION AS UNTIMELY
　　　------------------------------------------------------------

　　　　　　ROBERT ROSENTHAL
　　　　　　COUNSELOR AT LAW
　　　　　　523 EAST 14TH STREET, SUITE 8D
　　　　　　NEW YORK, NEW YORK 10009
　　　　　　(212) 353-3752

　　　　　　CATHY J. GREEN, ESQ., BAR #995
　　　　　　GREEN & UTTER, P.A.
　　　　　　764 CHESTNUT STREET
　　　　　　MANCHESTER, NH 03104
　　　　　　(603) 669-8446

　　　　　　ATTORNEYS FOR PETITIONER GORDON MACRAE

Dated: August 21, 2014

Table of Contents

Table of Cases and Authorities    iv

INTRODUCTION    1

    A.    Organization of the State's Motion and MacRae's Response    1

    B.    Underlying Theme of the State Court's Review and the State's Arguments    2

STATEMENT OF FACTS    2

    1.    Overview    2

    2.    The Accuser: Tom Grover – Liar, Addict and Criminal    3

    Grover the Addict and Manipulator    4

    Grover the Criminal and Predator    5

    Grover the Fortune Hunter    5

    Grover's Behavior After Receiving Payment For His Accusations    6

    Grover's Trial Testimony    6

    The Charged Acts    7

    3.    The Rectory    8

    4.    The Detective    9

    5.    The Therapist – Pauline Goupil    9

    6.    The Trial    10

    MacRae's Counsel    10

    Koch Facilitated Admission of Powerful Other Acts Evidence Against MacRae    10

    Pre-trial, Koch Sent the Defense Strategy Documents to the State    11

    Koch Failed to Object to Inadmissible "Expert Testimony" from McLaughlin    11

Koch Sent an Unprepared Lawyer to Interview Grover                    12

    8.    The Verdict                                                13

ARGUMENT                                                               13

I.    THE PETITION IS TIMELY                                        13

II.   THE ACTUAL INNOCENCE EXCEPTION OVERCOMES ANY TIME
BARS THAT MIGHT AFFECT THE FILING OF MacRAE'S
HABEAS CORPUS PETITION                                                 14

A.   Introduction                                                  14

B.   Actual Innocence Supports the Exception to Habeas Corpus Time Bars     15

    1.    The Exception to the Habeas Time Bar is Applicable Here     15

    2.    The Court Has Discretion to Assess MacRae's Actual Innocence Claim    15

    3.    Speculation of Reasons for MacRae's Decision Not to Testify
and About Unsubstantiated Accusations Are Not Grounds For Dismissal    15

C.   The Newly Discovered Evidence Supports the Claims Presented – Particularly
Actual Innocence                                                      16

    1.    The Purpose of the Newly Discovered Evidence Here           16

    2.    The Newly Discovered Evidence Supports MacRae's Actual Innocence    17

    3.    The State Court's Rejection of the Newly Discovered Evidence Is Based
on an Unreasonable Determination of the Facts                         18

    a.    The Newly Discovered Evidence Was Unavailable at Trial      18

    b.    Cross-Examination at Trial Does Not Disqualify the Newly Discovered
Evidence                                                              19

    c.    The Newly Discovered Evidence is Sufficient to Support Innocence –
Particularly Considered With the Facts and Circumstances of the Case  20

    d.    MacRae's Ineffective Assistance Showing is Not Based on Newly
Discovered Evidence                                                   21

III.    MacRAE WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE
        OF COUNSEL                                                           21

A.      Introduction                                                         21

B.      The State Court Unreasonably Applied *Strickland*, By Failing to Consider
        the "Totality of the Evidence" and "All of the Circumstances" and also
        Rendered Unreasonable Determinations of Facts, Thus Requiring Habeas
        Review and Relief                                                    22

        1.      Standard For Habeas Corpus Review and Relief                 22

        2.      The State Court Misapplied *Strickland*                      22

        3.      Consideration According to the Proper Standard               25

        4.      The State's Ineffective Assistance Arguments Are of No Avail 26

        a.      Introduction                                                 26

        b.      Defense Counsel Served the Prosecution by Facilitating the Admission
                of Highly Prejudicial "Uncharged Acts" Accusations That Had
                Previously Been Suppressed.                                  26

        *Controlling Law*                                                    26

        *Impeaching Grover Would Not Have Inevitably Triggered the Uncharged Acts*  27

        *Increasing the Number of Accusations*                              28

        c.      Counsel Provided the Defense Strategy to the State          28

        d.      Failure to Interview Grover                                  29

        5.      The State Court Failed to Address the Deficient Performance of
                Counsel That it Raised Sua Sponte                           29

        Conclusion                                                          31

IV.     CONCLUSION                                                          31

Table of Cases and Authorities

*Cases*

*Grace v. Butterworth*, 586 F.2d 878 (1st Cir. 1978)                    17

*Kyles v. Whitley*, 514 U.S. 419 (1995)                    18

*McQuiggin v. Perkins*, _U.S._, 133 S.Ct. 1924 (2013)                    15

*Puckett v. United States*, 556 U.S. 129 (2009)                    30

*Rompilla v. Beard*, 545 US 375 (2005)                    30

*Sawyer v. Mullaney*, 510 F.2d 1220 (1st Cir. 1975)                    16

*State v. Mello*, 137 N.H. 597 (1993)                    30

*Strickland v. Washington*, 466 U.S. 668 (1984)                    2

*Wiggins v. Smith*, 539 U.S. 510 (2003)                    18

*Williams v. Taylor*, 529 U.S. 362 (2000)                    18

*Statutes and Constitutional Provisions*

United States Constitution, Sixth Amendment                    21

28 U.S.C. 2244(B)(ii)                    18

28 U.S.C. § 2254(d)                    22

*Other Authorities*

London, K., Bruck, M., & Ceci, S.J., & Shuman, D.W., "Disclosure of child

sexual abuse: What does the research tell us about the ways that children tell?"

Psychology, Public Policy and the Law, 11, 194-226  (2005)                    12

London, Bruck, Wright, & Ceci, "A Review of the contemporary literature on how

children report sexual abuse: Findings, methodological issues" Memory, 16, 29-47  (2008)                    12

INTRODUCTION

**A.      Organization of the State's Motion and MacRae's Response**

The state argues: I - MacRae's habeas petition was filed after the one-year statute of limitations expired (pp. 13-14); and, II - The exception to the one-year statute of limitations should not be applied in this case because MacRae has not established actual innocence, as that exception requires (because the newly discovered evidence is insufficient for actual innocence purposes). (State, pp. 15-18, 29-35)

If the Court finds that MacRae's petition was filed within one year of the completion of his newly discovered evidence investigation, the state's motion must be denied, and the case will move on to a determination of the merits.

Alternatively, if the Court finds that MacRae's petition was filed late, the state's motion fails if MacRae has shown innocence.

We address the state's arguments in that order. First, we show that the petition was timely filed, and thus the state's motion should be denied. Second (and only if the state's motion survives the first inquiry), we explain the actual innocence showing that triggers the exception to the habeas statute time bar. Subsections of that second section include discussion of the newly discovered evidence that supports the actual innocence claim.

In the middle of its motion, preceded and followed by actual innocence arguments, the state includes, III – that the Court should deny MacRae's ineffective assistance claim. (State motion to dismiss, pp. 19-29) The legal arguments about the ineffective assistance claim are not directly related to the time of filing, and thus, do not seem relevant to the state's motion.

Nevertheless, in an abundance of caution, should the Court decide to consider the merits of

1

the substantive ineffective assistance of counsel claim based on the state's motion to dismiss, we respond to that as well.

**B.      Underlying Theme of the State Court's Review and the State's Arguments**

A theme of the state court's decision was its practice of rejecting MacRae's claims by isolating each piece of evidence or argument presented from the rest of the case. Concerning ineffective assistance of counsel, for example, the court separated each instance of counsel's conduct, dismissing them one at a time, contrary to the consideration of "all of the facts" and "totality" of the evidence that is required by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), the case controlling ineffective assistance of counsel claims. As a result, the court's decisions were the product of unreasonable application of federal law and were based on unreasonable determinations of the facts in light of the evidence presented. As such, habeas relief is warranted 28 U.S.C. § 2254(d).

Federal habeas review is necessary in large part, because of the state court's insistence on separating connected facts and arguments from each other – and then separating those pieces from the case as a whole. Related principles, events, and themes were excised from their context – and thus diminished until the court could declare them meaningless. The state's arguments adopt the same divide-and-conquer approach.

STATEMENT OF FACTS

1.      Overview

The facts of the case are set out at pages 3-32 of MacRae's Memorandum of Law in Support of Petition for a Writ of Habeas Corpus (Habeas Memo)(Dkt. 1:1). Space limitations in this answer allow only a cursory review of the facts. The statement of facts in the Habeas Memo is necessary to

fully consider the state's motion and this response.

The same is true for the legal arguments. The state has challenged the merits of the substantive claims. There is no room in this answer to properly litigate the merits of the underlying petition. The merits are not relevant to the motion, but should the court consider them, review of the petition is necessary.

2.    The Accuser: Tom Grover – Liar, Addict and Criminal

Long before he accused MacRae Thomas Grover was a confessed liar. "I lied a lot to get what I wanted...." (T. 4/62-63 [1]) His former wife, Trina Ghedoni, and step-son Charles Glenn knew him as a "compulsive liar," "manipulator, [] drama queen," and "hustler," who "lied to get what he wanted."[2] (**Exh. A; **Exh. B; **Exh. G; **Exh. N) In 1987, in a rehabilitation program, Grover claimed molestation by, "among others": his foster father, a clergyman, and baby sitters. His "disjointed" accusations of abuse "by so many disparate people" left staff to wonder whether "he was going for some kind of sexual abuse victim world record." (**Exh. D; T. Collett, 10, 15, 30, 45)

As he made up accusations against MacRae, Grover "often" told to Glenn and Ghedoni that his accusations were lies, that he "had never been molested by MacRae," that he would "set MacRae and the church up to gain money for sexual abuse."(**Exh. A; **Exh. B; (T. 8/79, 82-87) )

---

[1]"T" citations refer to the trial transcript volume number and page (T. vol/page). Trial transcripts with no volume number are cited (T. page, date). "Exh." citations refer to the exhibits submitted herewith. "**Exh." citations refer to newly discovered evidence.

[2]Glenn's report of Grover's lying and perjury is corroborated by other evidence. On January 9, 2012, Glenn wrote to counsel that he was "not completely truthful" with MacRae's investigator, who, Glenn alleged: asked Glenn to lie and, *inter alia*, had "intimate relations" with Ghedoni. (Exh. CC) He offered no corroboration. Ghedoni denied Glenn's claims and reaffirmed the truth of her and Glenn's original reports. (Exh. DD)

3

**Grover the Addict and Manipulator**

Grover and his 12 biological siblings were removed from their parents' care "due to abuse and neglect associated with the parents' alcohol abuse."(T. 34-35, 9/13/94) He was adopted by Elmer and Patricia Grover, and became one of eight adopted siblings.

Grover's brothers started him drinking as early as 1979, at 11 years old. (T. 3/4; T. 4/25).

In 1983, the Grovers divorced. Grover blamed his increasing alcohol use on his parents marital problems. "[E]very opportunity, [I] would just go out with [my brothers] and drink..." (T. 2/52) "[I]t got worse when the separation was going on and I really started drinking...." (T. 2/53) "[A]t any available moment that I could get it, I would drink.... (T. 3/6) He was a 15-year-old alcoholic.

Ms. Grover could not manage his addictions. She had known MacRae for several years and thought he could help. (T. 6/44-45, 64-71, 83-84) MacRae tried, but was no more equipped than Ms. Grover to deal with Grover's illnesses. Yet, Grover had other uses for MacRae – first to bail him out of trouble, and finally as a means to fortune.

In 1985, Grover was arrested for burglary and forgery. He ran to MacRae for help, pleading alcoholism and addiction. MacRae intervened, urging the court to forego prosecution in favor of the Beech Hill residential rehabilitation hospital. (**Exh. S; T. 3/29; T. 6/169-171; T. 7/14) Grover used his Beech Hill admission to get clear of the felony charges, and then left the program without completing it. (T. 3/29)

MacRae helped place Grover in at least six more programs. None helped. (T. 3/28-32, T. 19, 9/13/94; **Exh. I, p. 19; Exh. U, p. 12-17, 50, 57, 71, 121) At a program at Derby Lodge in 1987, after confessing to excessive drinking and regular use of drugs, including marijuana, hashish,

cocaine, opium, amphetamines and other hallucinogens, Grover was kicked out for smuggling drugs. (T. 3/29-30; T. 19, 9/13/94 Collett trial transcript; **Exh. H)

He was such a violent force that his mother threw him out of the house. (T. 6/97; T. 116-117, Exh. Grover 9/2/94, pretrial deposition)

### Grover the Criminal and Predator

Alcohol and drugs were not Grover's only problems. In addition to his 1985 arrests, Grover's rap sheet included thefts, forgeries, and burglary. (T. 6/163) In 1990, he pled guilty to another burglary. (T. 3/30-31) In the early 1990s, after breaking Ghedoni's nose, Grover was arrested for resisting arrest and assault on an officer. (**Exh. J)

### Grover the Fortune Hunter

In the early 1990s, the New Hampshire Catholic Diocese paid millions of dollars to men alleging molestation by their priests. One of Grover's peers from that time recently recalled the diocese's reputation as an easy mark:

> In the early 1990s, all the kids in Keene, New Hampshire bragged about how easy it was to set the priests and the church up for money over sexual abuse charges. All the kids were aware that the church was giving out large sums of money to keep the accusations from becoming public and this fed the imagination of the local kids to join in these allegations.

(**Exh. T) Grover and his brothers took part in that, ultimately collecting more than a half-a-million dollars in diocese cash. (**Exh. H, **Exh. Y)

Before leveling criminal accusations, Grover contacted a civil attorney to discuss "the possibility of a cause of action" against diocese. (T. 3/57, 58) the attorney referred Grover to Keene Police Department Detective James McLaughlin. (T. 3/65-67)

The civil attorney had "a business relationship with the head person," at the "New Life Center," and sent Grover there. (T. 6/150) Though he told the jury he had been in treatment for "two

years to talk about [abuse]." During those years, he saw therapist Pauline Goupil just 19 times. Worse, when the trial court reviewed Goupil's files, it found "nothing about Mr. MacRae" in them. (T. 3/43) That corroborates Ghedoni's and Glenn's newly discovered statements about Grover's confessions that his visits with Goupil were for nothing but "jury appeal," and to convince the jury "that his problems were a result of the molestation by MacRae." Once Grover received his diocese check, Goupil never saw him again – which evidences the lie of his alleged need and desire for therapy to deal with abuse by MacRae. (**Exh. I, pp. 7-8, 85; **Exh. Q)

### Grover's Behavior After Receiving Payment For His Accusations

Grover abandoned his "victim" role in 1997, when he was paid $195,000 for his accusations. (**Exh. Y) He photographed himself with $30,000 in cash and took the money around to show friends and relatives, and photograph them with it, "all the while, bragging about 'putting it over on the church.'" (**Exh. A; **Exh. B; **Exh. E) Grover took the money to Arizona, where he blew it on alcohol, drugs, cars, gambling, pornography, and motel rooms. Ghedoni left him, when she found him in bed with his biological sister. (**Exh. G; **Exh. B; **Exh. Q)

### Grover's Trial Testimony

Grover's accusations and testimony were fantastic, nonsensical, and contradictory. For example:

• Grover did not report abuse during the decade between its alleged occurrence and his meeting with the civil lawyer because: a) he had repressed the memory (T. 6/10); b) he didn't repress it, but it was "difficult to talk [about] in front of people" (T. 2/42); and c) he did talk about it. (T. 3/33) It is not clear whether his memory of abuse was repressed when he could not, yet did, talk about it.

• Grover might have forgotten each act immediately after it occurred. Or, at the time of each

act, he might have forgotten that the earlier acts occurred. Or, he might have remembered. At trial, he couldn't remember. (T. 5/38-41)

●     Grover was so traumatized during the alleged acts that to describe him as "emotionally upset" and "crying," would be "a mild statement." He "los[t] control," he said. But, when confronted with the fact of people just outside the door, he changed his story. Losing control was "not a vocal thing... .... I don't cry out loud....If I was crying hysterically or out of control....if I was sitting here, it wouldn't be like you could hear me on the other side of the door. (T. 3/103-104) On the other hand, several times during his testimony, Grover sobbed and cried enough that recesses were necessary. (*i.e.*, T. 2/41; T. 3/22)

### The Charged Acts

Grover claimed that MacRae molested him in the rectory five times, between June 6, 1983 and just after Labor Day (September 5, 1983).

There were people just outside the doors to the offices where Grover claimed to have been molested. "[P]eople just walked in and out [of the area directly outside the offices] and there were people in there at all times of the day.... There were always people coming in and out...." (T. 5/8, 26-27, 32-33) No one ever saw or heard anything inappropriate.

According to Grover, four times, while he and MacRae were in an office talking, MacRae "became critical," "degrading," "belittling," and "berating," walked across the room, unzipped Grover's pants, "and started performing oral sex on me..." for 15 minutes, while Grover cried. (T. 3/14-18, 21-24; T. 4/118; T. 5/9-10, 14, 19)

Grover offered ambient details – that were disproved by objective evidence.

●     Grover claimed that the first incident "started out as just a friendly game of chess,"

played on a marble set, across from the couch. (T. 3/19-21) However:

Grover confessed to Ghedoni that the chess set lie was "what they wanted.... It fits." (**Exh. A) He never mentioned it to McLaughlin. (T. 7/130-131)

There was no chess set in 1983. MacRae bought it in 1986, while on vacation in Bar Harbor, Maine. (T. 8/71-74; **Exh. L)

There was never a couch in the office. (T. 8/13, 33 )

● Grover claimed that MacRae "locked the door," and "would usually lock the door of the office." (T. 3/23; T. 5/29-30; T. 7/131) However:

The church caretaker testified that the doors did not lock. (T. 8/31-33)

● Grover claimed that during one alleged act, MacRae stopped for a noise outside the door. (T. 7/125) Faced with the fact that sound travels in both directions, Grover said it wasn't a noise. It was a wooden floorboard that "could make a noise.... [and] might creak on the other side of the door." (T. 3/106) The floors were not wood. (T. 8/30)

● "At different times I remember different things," Grover said. Thus: 1) MacRae did, and did not, unzip Grover's fly; 2) did, and did not, fondle his penis; and 3) Grover might, or might not, have told McLaughlin about his opened (or closed) fly. Other than to say that the alleged third floor of the rectory event was not the first, Grover did not know when it occurred – even in relation to the other claims. (T. 4/112-113)

<u>3.</u>     <u>The Rectory</u>

Grover claimed assaults occurred in the church rectory. Four priests lived and worked there in the summer of 1983, as did the caretaker (who shared an office with MacRae) and one of two church secretaries. The other secretary, a bookkeeper, and the cook worked there as well. (T. 3/80-

82, 86, 87)

The rectory main floor contained the kitchen, a bathroom, living room, four offices, and the dining room. Two stairways open into that floor, there are three doorways to the outside, and many windows. Also on the main floor is a large reception area, in which two secretaries worked – sometimes six days a week. (T. 8/13, 20; T. 3/78, 81). It was always a busy place. According to Grover, it was:

> one of the main avenues in the house, that entry office, people just walked in and out and there were people in there at all times of the day.
>
> [a] central area where most of the activity [took] place...
>
> the most populated place in the rectory that was like the center point of the rectory.... it was just people coming in and out; whoever might have been there, the priests were there....

(T. 3/78-79; T. 5/7-8, 27)

Grover claimed that abuse occurred in two offices on the first floor, both with doorways directly into the reception area. One door has a glass window to the reception area. (T. 8/36, 46) Numerous outside windows looked into both offices from Main Street, the church, the driveway, and the parking lot. (T. 3/19-21) Grover conceded that sound could be heard through the office doors. (T. 5/130) The door locks did not function and were painted. (T. 7/33; 8/11-12, 26, 31; T. 8/40)

<u>4.</u>    <u>The Detective</u>

Grover's first civil lawyer referred him to Detective McLaughlin, who led the effort against MacRae. (T. 3/65-67)

<u>5.</u>    <u>The Therapist – Pauline Goupil</u>

Goupil's role is unclear. Grover admitted he went to her for the purpose of the civil case and because treatment would be appealing to the jury. His attendance record supports that cosmetic use

of therapy. So do Goupil's treatment records which – according to the trial court contain nothing about MacRae (T. 3/43), though, records not withstanding, Goupil testified that they did discuss MacRae. (T. 7/8)

6.    The Trial

**MacRae's Counsel**

New Mexico attorney Ron Koch was lead counsel. New Hampshire attorney J.R. Davis was "local counsel only," to file paperwork and advise Koch – not to review discovery. (Exh. V)

Koch did nearly as much to convict MacRae as did the state.

Koch Facilitated Admission of Powerful Other Acts Evidence Against MacRae

Pre-trial, the court suppressed dramatic Grover-stories of uncharged acts that were to have occurred long before the acts for which MacRae was on trial. (T. 1/9-10) The suppression was critical. Yet, during his opening statement, Koch told the jury that Grover's accusations should not be believed because the earliest event did not have the characteristics of a first act of abuse. (T. 1/52, 59; T. 2/4-5) That was a misrepresentation of the facts. In fact, Grover had alleged earlier acts. But those claims were the uncharged acts that had been suppressed. Thus, Koch used the suppression to mischaracterize the facts. To cure, the court reversed its suppression ruling. The state took full advantage of the uncharged acts claims.

In the first uncharged story, as Grover and MacRae walked through the rectory, MacRae forced him up against the wall, strangled him, "grabbed my crotch area and was grinding his body up against my side." (T. 2/30) That was the only claim of violence in the case. The two other prior acts stories are about car rides in which MacRae, while driving, fondled Grover, in the seat next to him. (T. 2/37-41; T. 4/66-76) *See*, Habeas Memo, pp. 42-45 for description of the other acts claims.

10

<u>Pre-trial, Koch Sent the Defense Strategy Documents to the State</u>

During discovery, MacRae reviewed witness statements and other documents that the state disclosed to the defense, and at Koch's request, annotated them with comments and analyses that Koch would use to develop the defense case. Those annotations were a working document for the defense; the outline of the defense theory and strategy. Also, Koch sent questionnaires to several potential defense witnesses to serve as preliminary interviews and plans for the defense case. Then, Koch gave MacRae's notes on every piece of evidence, and the completed defense witness questionnaires to the state. (Exh. M)

MacRae's annotations, otherwise unavailable, as he did not testify, were used as statements against him. The state was alerted to the holes in its case identified by MacRae and could adjust accordingly. Impeachment of defense witnesses could be devised long before trial, based on their communications with Koch that he shared with the prosecutor. (T. 7/99-104)

Giving away the defense strategy, MacRae's statements, and identification of potential witnesses and their statements before trial, fortified the state and left MacRae defenseless.

<u>Koch Failed to Object to Inadmissible "Expert Testimony" from McLaughlin</u>

The state moved to qualify McLaughlin as an expert on "the process in which victims disclose sexual abuse," and that inconsistencies are "more times than not" seen in true reports. (T. 7/53, 96) The court denied the motion, but permitted McLaughlin to present the same testimony as a lay witness. (T. 7/37, 47. 96) Koch did not object.

McLaughlin's testimony had a scientific flavor, but it was rank vouching and bolstering. He even told the jury that Grover's inconsistencies are expected of true claims. As if speaking from empirical study, he instructed:

11

Most of the adult victims... will basically give you a rough outline of what happened to them.... And then on subsequent interviews, they will come up with additional facts about their victimization.

(T. 7/97-98) McLaughlin also instructed the jury that "disclosure" "typically" comes in pieces rather than at once. Simply, McLaughlin told the jury that Grover's piecemeal, inconsistent and varying claims are typical, if not indicia of truth. (T. 7/98)

There is no support for a notion that prompt and complete reports are suspect or that a report delay has any bearing on truth. Yet Koch objected to none of it.[3]

<u>Koch Sent an Unprepared Lawyer to Interview Grover</u>

Koch had an opportunity to conduct a pretrial interview of Grover. It was critical to pin down the allegations and force Grover to choose a single story. Though attorney Davis admittedly was unprepared, Koch sent him to the interview. (Exh. U) Davis could not explore Grover's claims in any detail. Questions about abuse are found on five transcript pages, with vague answers about two uncharged acts accusations. (Exh. U, pp. 141-145) The rest of the 170-page interview concerned inessential pedigree information; all of which the defense should have known.

Koch did for the state what it could not have done for itself – brought in highly prejudicial and inadmissible evidence, gave the defense strategy to the state, failed to object to bogus expert testimony, and failed to conduct critical discovery. As a result of Koch's efforts, Grover was faced with more accusations than were charged and his defense was entirely undermined before the trial

---

[3]*See*, London, K., Bruck, M., & Ceci, S.J., & Shuman, D.W. (2005). Disclosure of child sexual abuse: What does the research tell us about the ways that children tell?. Psychology, Public Policy and the Law, 11, 194-226; London,, Bruck, Wright, & Ceci (2008) A Review of the contemporary literature on how children report sexual abuse: Findings, methodological issues. Memory, 16, 29-47.

began. The state could not have done that on its own.

8.      The Verdict

With the assistance of Koch's actions, and a trial loaded with uncharged acts claims, MacRae was convicted of all five charged counts. (T. 10/12-13)

ARGUMENT

I.      THE PETITION IS TIMELY

The state argues that MacRae's petition is untimely because "the last of the interviews from this case" took place more than a year before the time the state post conviction petition was filed. (State Motion to Dismiss ("State"), p. 13) That argument is wrong and ignores the realities of the investigation and the timing of MacRae's state court petition. (Habeas Memo, pp. 35-36)

The interview to which the state refers was not the first or the last investigative activity. It was not "the last of the interviews." It was one event in an investigation that began years before, and continued long after. The newly discovered evidence in this case is not a discrete piece of information, a document, a test result, or a particular item that satisfies a certain criteria. The evidence needed to show innocence here is much more subtle and complicated than the state asserts.

This litigation is a critical, perhaps final, opportunity, to vacate the conviction of an innocent man. The decision of when to file the state court petition was highly subjective. Filing would cut off opportunity to develop more evidence. Worse, what evidence was or might be available is impossible to know with certainty. Determining the moment that sufficient evidence was collected to show innocence required analysis of the quality and quantity of material collected, current efforts, and trying to predict what might still be obtained. When counsel determined that the innocence showing

13

could be made, the petition was filed.[4] Even then, names of other possible witnesses and other information that might be available continued to arise.

Ignoring all context, the state picked an arbitrary date of a single interview to begin the time limit clock for filing. By the same reckoning, it could be argued that the time should have run with the first piece of newly discovered evidence, or when three or four items were obtained. Or, for the purpose of delay (as if that could be an advantage), later token interviews could have been conducted and cited in the petition. According to the state's argument, a citation to any interview conducted the week before the petition was filed would have eliminated any challenge based on timing. Arbitrary determinations like that are inappropriate with a life in the balance.

The petition was filed shortly after the legal team was satisfied that sufficient newly discovered evidence was obtained. Accordingly, the petition in this Court was timely, as was the state court petition. The state's motion to dismiss should be denied.[5]

II.    THE ACTUAL INNOCENCE EXCEPTION OVERCOMES ANY TIME BARS THAT MIGHT AFFECT THE FILING OF MacRAE'S HABEAS CORPUS PETITION

    A.    **Introduction**

If the Court does not deem the petition timely filed, the inquiry must turn to the exception

---

[4]Investigation activities occurring following the state's arbitrary date included attempts to locate Grover and additional information about him. His extensive criminal record had to be tracked down from several jurisdictions. The search for Grover himself was time consuming. Several strategies for approaching him were devised, discussed, and rejected before one was chosen. Logistics had to be settled and contact with Grover initiated. The results of the meeting with Grover were evaluated. Plans for additional contacts with him were assessed. Witnesses offered additional information. Names of other witnesses who could provide more evidence of Grover's admitted perjury and motives were obtained. The amount of information collected, against what might still be available and collected was a continuing process as new facts arose.

[5]Denial of the state's motion based on this argument obviates the need for review of its other claims. The state's other arguments are relevant only if the Court finds that MacRae should have filed his petition earlier.

to habeas time bars made applicable to this case by MacRae's showing of innocence.

**B.   Actual Innocence Supports the Exception to Habeas Corpus Time Bars**

1.   The Exception to the Habeas Time Bar is Applicable Here

When a federal habeas petition includes a showing of actual innocence and an independent constitutional violation, any time bars to filing the petition are overcome. *McQuiggin v. Perkins*, _U.S._, 133 S.Ct. 1924 (2013)(Habeas Memo, pp. 35-36) That exception is applicable here. Thus, the state's motion should be denied.

Actual innocence is properly included in MacRae's petition, along with his constitutional ineffective assistance of counsel claim. (Petition Memorandum, pp. 38-64) Thus, the state's claim about the merits is of no avail to its motion.

2.   The Court Has Discretion to Assess MacRae's Actual Innocence Claim

The state complains also that this Court should reject the actual innocence showing – and the newly discovered evidence – because deciding MacRae's petition requires subjective review. That is true for all post conviction litigation. (State, pp. 17) Consideration of the quality, quantity, and weight of evidence, along with legal arguments is always a necessary responsibility of the court. The most fundamental purpose of habeas review is a determination of whether the state court reached decisions based on an unreasonable determination of the facts, or involved an unreasonable application of established federal law. 28 U.S.C. 2254 (d). That requires subjective review. Thus, the state's objection to the Court considering any part of MacRae's petition – in the context of the entire case – fails.

3.   Speculation of Reasons for MacRae's Decision Not to Testify and About Unsubstantiated Accusations Are Not Grounds For Dismissal

The state urges that actual innocence be rejected because MacRae did not testify at trial, and

because of "other accusations" and "charges" against MacRae – things that the state claims undermine his innocence in this case. (State Motion, p. 17) The state's assumptions about MacRae's testimony and untested claims relating to other matters do not undermine the new evidence in this case or his innocence in this trial. The new evidence is Grover's statements that MacRae did nothing to him, which proves MacRae's innocence. With that, the state's speculation about other matters is irrelevant.

### C.    The Newly Discovered Evidence Supports the Claims Presented – Particularly Actual Innocence

To undermine MacRae's showing of innocence, the state attacks the newly discovered evidence that supports it. The state's challenge is based on the same unreasonable isolated determinations of facts that was unreasonably applied by the state court.

#### 1.    The Purpose of the Newly Discovered Evidence Here

The newly discovered evidence supports MacRae's showing of actual innocence – particularly when considered with all the circumstances in the case. Thus, it supports the exception to the federal habeas time bar.

The state argues that, "newly discovered evidence is not a basis for habeas corpus relief" and that MacRae "relies on the claim that newly discovered evidence warrants relief from this Court." (Motion to Dismiss, p. 29, 32) Both comments are a misdirection. MacRae is not seeking habeas relief based on newly discovered evidence. The bases for relief concern ineffective assistance of counsel and actual innocence. (Habeas Memo, table of contents)

To the extent the state uses that argument to urge the Court to reject the newly discovered evidence, the cases cited by the state (State. P. 30) are of no use. In *Sawyer v. Mullaney*, 510 F.2d 1220 (1st Cir. 1975), the basis for relief sought was the court's refusal to hear newly discovered

evidence. And, in *Grace v. Butterworth*, 586 F.2d 878 (1ˢᵗ Cir. 1978), the petitioner did not allege any error in the underlying trial. The substantive issue in each of those cases was newly discovered evidence. Not so here. The substantive issues are ineffective assistance of counsel and innocence. (Habeas Memo, table of contents) The newly discovered evidence supports the constitutional violations that require habeas relief.

　　2.　　The Newly Discovered Evidence Supports MacRae's Actual Innocence

The state's case at trial offered no evidence in support of the charged acts except Grover's stories. Those are undermined by Grover's concessions that there were people within hearing distance of the alleged acts – nevertheless, the state never found a single witness. Grover's stories were also contradicted by objective facts about the places, times, and circumstances in which the charged acts were to have occurred that revealed serious inconsistencies to his claim. (Habeas Memo, pp. 16-19) What was known of Grover's general personal history weakened the accusations, as well. (Habeas Memo, pp. 5-12) But particular and specific evidence of Grover's lies against MacRae was missing. That would not emerge until more than a decade later.

The newly discovered evidence comes from those closest to Grover at the time of trial. It obliterates the state's case and reveals MacRae's innocence. Grover admitted to them that he had hatched a scheme to extort money from the diocese. (Habeas Memo, pp. 7, 12) He boasted to his inner circle that his claims were lies, that his testimony was perjury, and that his interest was purely diocese cash. His conduct after the conviction – when Grover received his payment and abandoned the role of victim – corroborates their reports of Grover's confessions. (Habeas Memo, pp. 5-15, 22-24, citations throughout the Habeas Memo marked with ** are newly discovered evidence). Simply, Grover confessed that MacRae is innocent.

17

That showing triggers the exception to the habeas time bar. Thus, the state's claim that it should be inapplicable here fails and its motion must be denied.

    <u>3.</u>    <u>The State Court's Rejection of the Newly Discovered Evidence Is Based on an Unreasonable Determination of the Facts</u>

To deny MacRae's constitutional claims, the state court had to reject the supporting newly discovered evidence. To do that, the court isolated the evidence from its context and the facts of the case. Thus, it failed to consider facts it should have considered. Accordingly, the court's ultimate decision is the product of those unreasonable determinations of the facts. Thus, this Court's habeas review is necessary. 28 U.S.C. §2254(d); *Williams v. Taylor*, 529 U.S. 362, 397, 416 (2000) (unreasonable application provision of § 2254(d) allows relief when state court fails to consider totality of relevant evidence); *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)(state court's failure to consider related facts was objectively unreasonable).[6]

The state urges also that because the state court cited the appropriate standard for assessing newly discovered evidence, its rejection of the evidence is safe from review. (State, pp. 30-31) That is wrong. By isolating single facts from the evidence, the court misapplied that rule. Again, habeas review and relief is appropriate and necessary.

Examples of the state court's misapplication of proper standards, in service of rejecting the newly discovered evidence follow.

    <u>a.</u>    <u>The Newly Discovered Evidence Was Unavailable at Trial</u>

At the time of trial, the newly discovered evidence was held exclusively by the people closest

---

[6]*See also, Kyles v. Whitley*, 514 U.S. 419 (1995)(cumulative review of evidence unknown at trial); *Strickland v. Washington*, *supra*. ("all of the circumstances" and "totality" of evidence review); 28 U.S.C. 2244(B)(ii)(review "as a whole" of evidence presented with successive habeas petition).

to Grover – his family and friends who stood to gain from his windfall. Yet, the state court decided that because MacRae knew of their existence at trial, the evidence they would later reveal was available to him then.

To do that, state court ignored all of the facts concerning their relationship to Grover, their interests in his success, and their hostility to MacRae. Mere knowledge of their existence, the state court insisted, rendered any information they possessed "available," and thus prohibited from being considered newly discovered evidence now.

Essentially, the state court announced a *per se* rule that evidence cannot be newly discovered if the identity of its source was known at trial, regardless of any other facts. That is a perverse rule. By no definition is it reasonable to ignore the most salient facts – such as that the source of the newly discovered evidence was hostile to the defendant and benefitted from withholding the favorable evidence from him. Treating the merit and admissibility of evidence in isolation, without considering the context in which it stands, makes no sense and would be an abandonment of judicial responsibility. Yet that is what the state urges in its motion to dismiss. (State, p. 32) That is not a basis to dismiss a habeas petition.

### b.       Cross-Examination at Trial Does Not Disqualify the Newly Discovered Evidence

The state also argues that because Grover was cross-examined at trial, the new evidence should be rejected. (Motion to Dismiss, pp. 17) Again, the state ignored the context of the case, specific necessary facts, the character of the evidence, the use to which it would have been put at the original trial, and its purpose at a new trial. Consideration of all that reveals that the new evidence is very different from evidence pursued through cross-examination.

The new evidence provides Grover's admissions that his claims were lies and his testimony

perjury, and thus, MacRae is innocent. (Habeas Memo, pp. 10-13) Trial cross-examination evidence was much more limited. Grover was faced with contradictions in his stories, and facts of his unsavory life, but not direct evidence of his perjury and MacRae's innocence.

The new evidence, on the other hand, goes directly to the truth of the accusations. Grover's boasts that none were true. He admitted to committing crimes – perjury. The new evidence is evidence of innocence. There was nothing like it available at trial.

    c.    <u>The Newly Discovered Evidence is Sufficient to Support Innocence – Particularly Considered With the Facts and Circumstances of the Case</u>

The state devotes four pages to a section titled, "the 'newly discovered evidence' is not a basis for habeas corpus relief." (State, pp. 32-35)

In the first place, MacRae has not asserted that it is. This is not a case like those upon which the state relies, where newly discovered evidence was the grounds for the relief requested. *Sawyer*, *supra* (failing to hear newly discovered evidence); *Grace*, *supra* (no challenge to underlying trial). Thus, the state's claim reflects neither MacRae's arguments nor the facts of the case.[7]

The state continues in those pages to urge the Court to reject all of the newly discovered evidence for want of credibility. The state's complaints might be persuasive if the state court had held a hearing at which credibility was addressed. The state notes the need for an evidentiary hearing. (State, p. 15) Nevertheless, it urges the court, to reject the evidence, without a hearing, and without regard for the context of the case – that includes various corroboration of the new evidence.

Likewise, the state urges the Court to reject Glenn's reports of Grover's admissions of perjury

---

[7]The state's characterization of MacRae's arguments is flawed in other ways. For example, that the instances of counsel's ineffective assistance cited in the petition are not "newly discovered evidence." (State, p. 18) Of course not. MacRae never suggested that they are.

and MacRae's innocence based on Glenn's apparent recantation – again without contextual consideration. From his maximum security prison, Glenn provided evidence to MacRae (convicted of child abuse) at great peril. His cooperation with MacRae was unexpected and wildly against even his physical interests. The danger in which he placed himself is a significant indicia of truth, as is other corroboration. His showy attempted recantation is not surprising, given all the facts. It is hardly reason to dismiss the entirety of the newly discovered evidence.

    d.    MacRae's Ineffective Assistance Showing is Not Based on Newly Discovered Evidence

The state argues that MacRae's ineffective assistance claims are not newly discovered evidence. (State Motion, p. 18) MacRae has not claimed they are.

Ineffective assistance of counsel caused the violation of MacRae's constitutional Sixth Amendment right. It is the independent constitutional ground upon which habeas relief should be granted.

III.    MacRAE WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

    A.    Introduction

It is not clear why ineffective assistance of counsel might be relevant to the state's motion to dismiss on timeliness grounds. The determination of the merits of that claim has nothing to do with the date the petition was filed, or the exception to the habeas time bar in this case.[8]

_____

    [8]The state offers this introduction to its claim: "Because this Court cannot consider a free-standing actual innocence claim, this Court must review the superior court's ruling on the ineffective assistance of counsel claim." (State, p. 19) But the issue before the court is limited to the state's motion to dismiss, which is unrelated to the ineffective assistance merits. At the end of its ineffective assistance section, the state writes, "the petitioner has not demonstrated that he is entitled to a waiver of the statute of limitations and habeas corpus relief on this [ineffective assistance] ground." (State, p. 29) The waiver would allow the court to consider the merits. The merits need not be determined to warrant the exception.

Nevertheless, the state uses its motion to challenge the merits of the ineffective assistance claim. So, we are bound to respond – though we suggest that the merits be left to an appropriate forum in which the issues and arguments can be more comprehensively litigated than as an aside to the state's motion to dismiss.

MacRae's arguments on the merits of ineffective assistance of counsel are presented at pages 38-62 of his Habeas Memo. There is not room to present more than a summary of particular aspects of them here. Thus, we urge the Court to rely on that document should it entertain the merits of the issue.

    B.    The State Court Unreasonably Applied *Strickland*, By Failing to Consider the "Totality of the Evidence" and "All of the Circumstances" and also Rendered Unreasonable Determinations of Facts, Thus Requiring Habeas Review and Relief

**1.    Standard For Habeas Corpus Review and Relief**

Habeas relief is warranted when the state court adjudication:

resulted in a decision that...involved an unreasonable application of clearly established federal law, as determined by the Supreme Court....

or

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(Habeas Memo, pp. 32-35)

The state court unreasonably applied the proper standard for determining ineffective assistance claims, *Strickland v. Washington*, 466 U.S. 668 (1984). That unreasonable application led to unreasonable determination of facts. Thus, both circumstances for habeas relief are satisfied.

**2.    The State Court Misapplied *Strickland***

*Strickland* is the settled federal law that controls ineffective assistance claims.

22

Pursuant to *Strickland*, a court reviewing an ineffective assistance of counsel claim must determine whether counsel's **performance** fell below an objective standard of reasonableness. The court must also determine whether the **prejudice** to the defendant caused by counsel's conduct created a reasonable probability that the outcome of the proceeding would have been different. *Strickland,* 466 U.S. at 690, 694; Habeas Memo, pp. 39-42)

*Strickland* requires contextual inclusive consideration of both the performance and prejudice components of the analysis.

**Performance**: "in any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable *considering all the circumstances*." *Strickland*, 466 U.S. at 687-688 (*italics added*). Thus, all of the instances of ineffective assistance presented by the defendant must be reviewed with the others – as those are part of "all the circumstances of the case."

**Prejudice**: when assessing counsel's "errors," the reviewing court "must consider the *totality* of the evidence before the judge or jury." *Strickland*, 466 U.S. at 687, 695 (*italics added*). *See also*, *Williams v. Taylor*, 529 U.S. 362 (2000), *Wiggins v. Smith*, 539 U.S. 510 (2003)(cumulative approach to considering prejudice).[9] (Habeas Memo, p. 39-42)

Whether the term "cumulative," "all the circumstances," or "totality" is used, ineffective assistance claims must be considered in context of the case – in light of all that has transpired in the record. The "ultimate focus of inquiry must be on the fundamental fairness of the [underlying] proceeding" and insuring that it was just and reliable. *Strickland*, 466 U.S. at 686, 696.

The state court did exactly the opposite. It considered each instance of Koch's conduct in

---

[9]The standard for assessing prejudice is the same as that for determining merit in withholding of evidence cases. *Kyles v. Whitley*, 514 U.S. 419 (1995).

isolation from the others, and apart from "all of the circumstances," and the "totality" of the case. That complete departure from *Strickland* is a quintessential unreasonable application that warrants habeas relief.

The state does not dispute that the state court's review was not inclusive of "all the circumstances" and "totality," or that the state court considered one ineffective assistance claim at a time. Rather, without addressing *Strickland*'s express instructions, the state argues that a "cumulative error doctrine is not clearly established federal law." (State, p. 21) Nor do the cases on which the state relies offer anything that undermines *Strickland*. Thus, the state has provided no cover for its unreasonable misapplication of *Strickland*.

The state argues also, that a cumulative analysis of prejudice would be unpersuasive because it could recognize only the two instances of Koch's conduct that the state court deemed deficient (triggering uncharged acts evidence and failing to object to expert testimony). (State Motion, p. 22-23) That is incorrect. The prejudice analysis expressly requires consideration of the "totality" to determine the prejudice of ineffective assistance. *Strickland*, 466 U.S. at 687, 695. It does not permit a court to avoid considering certain facts or claims – as the state court did here. Further, because the state court unreasonably applied *Strickland* when considering the facts for the performance analysis, its decision concerning prejudice is corrupted by the unreasonable determination of the facts. Habeas review is necessary.

### 3. Consideration According to the Proper Standard

Consideration of the ineffective assistance of counsel claim according to the proper, contextual, "all the facts," "totality" analysis reveals a very different case than the one portrayed by the state court, after separating each claim from the others and from "all the circumstances."

In the aggregate, Koch's conduct reveals an attorney who was not in control of his case. Prior to trial, he failed to discover and interview witnesses (Habeas Memo pp. 53-54) He sent an unprepared lawyer to conduct a critical interview with the complainant. (Habeas Memo, pp. 60-61) He gave the defense strategy to the state. (*Id.*, pp. 55-57) In his opening statement, he made a single comment that triggered admission of massive amounts of dramatic uncharged acts testimony. (*Id.*, pp. 42-52) He permitted the detective to inject improper testimony without challenge. (*Id.*, pp. 58-60)

Maybe, if considered in isolation, one or two instances might properly be deemed strategic or harmless. However, when each is considered with the others, and "all the circumstances," Koch's carelessness, lack of foresight and strategy, and critical lapses of attention become clear. For example,  Koch triggered the admission of substantial uncharged acts testimony. That subjected MacRae to considerable prejudice. The prejudice is even greater, however, because  Koch gave the state the blueprint for avoiding any planned defense to the accusations, and sent an unprepared lawyer to interview Grover, leaving the defense unaware of an even greater number of accusations, bolstered by the detective's bogus "expert testimony" that was facilitated by Koch. Counsel's errors infected the entire trial. The deficiencies and harm of  Koch's acts is enormous according to the *Strickland* analysis – requiring "all the circumstances," including the weakness of the state's case, Grover's despicable character, the objective contradictions of his claims, the lack of evidence in support Grover's stories, and the newly discovered evidence of his perjury confessions.

Proper application of the *Strickland* "all the circumstances," "totality" analysis reveals deficient performance throughout and extraordinary prejudice. The state court opted not to use that analysis. Accordingly, the state court's method of considering the case was an unreasonable application of *Strickland* that requires habeas review and relief.

4.      **The State's Ineffective Assistance Arguments Are of No Avail**

a.      Introduction

The state offers discussion of some ineffective assistance claims in its motion to dismiss. It offers little more than repetition of the state court's opinion – which is addressed in MacRae's habeas petition. (Habeas Memo, pp. 42-62) Page limits allow only a brief response here. If the Court chooses to consider the state's arguments on the merits, reference to the habeas memo is necessary.

b.      Defense Counsel Served the Prosecution by Facilitating the Admission of Highly Prejudicial "Uncharged Acts" Accusations That Had Previously Been Suppressed.

This claim is set out in detail in MacRae's Habeas Memo (pp. 42-52). Pre-trial, Koch persuaded the court to suppress a considerable amount of damaging uncharged acts claims. In his opening statement, however, in a single sentence, Koch used the suppression ruling - the absence of the uncharged acts claims – to mischaracterize the facts of the case. He told the jury that the earliest alleged act did not bear the characteristics of a first act of abuse, and should not be believed. In fact, that act was not the earliest act alleged by Grover. The earliest was an uncharged act that had been suppressed. To cure, the court unleashed the uncharged acts claims that had been suppressed. The defense was wrecked. The state relied on the uncharged acts testimony throughout the trial, injecting it through Grover and repeating it from the first witness to the last.

*Controlling Law*

The state argues that this claim "fails" because MacRae has not cited "a controlling United States Supreme Court case. That is wrong. *Strickland* is the clearly established Supreme Court decision that controls ineffective assistance of counsel cases. The state court unreasonably applied *Strickland*. (*Supra*., pp. 22-25) Accordingly, habeas review and relief are warranted. 28 U.S.C. § 2254(d). MacRae's petition cites cases of successful habeas ineffective assistance claims in which

26

counsel opened the door to damaging evidence. (Habeas Memo, pp. 46-48) Thus, there is no question that this claim is appropriate for habeas review.

*Impeaching Grover Would Not Have Inevitably Triggered the Uncharged Acts*

The state court held, and the state now argues, that impeachment of Grover would inevitably have triggered the uncharged acts evidence, thus,  Koch's action was harmless. (State, p. 25) That decision is another product of the state court's misapplication of *Strickland – i.e.*, by isolating facts from context.

First, impeachment is the strategy in every case. And, the trial court was aware of MacRae's strategy when it suppressed the uncharged acts. It would not have done that if mere impeachment made its admission inevitable. Thus, the circumstances of the trial court's suppression ruling in the first place undermine the state court's inevitability assumption.

Second, the uncharged acts claims were admitted because Koch used their absence as a tool to misrepresent the facts. That is not impeachment. The impeachment of Grover was based on known facts: Grover changed his stories over time, objective evidence contradicted his claims (*i.e.*, alleged locked doors without working locks), and his history as a criminal and addict. (Habeas Memo, 5-15, 49-53) None of those things implicated the uncharged acts evidence in any way. The state court essentially invented a rule that a credibility challenge renders uncharged acts admissible. The court offered no support for that. The state repeated it, but also without authority.

Again, the court's decision is the product of its failure to consider the "totality" of the evidence, as is required by *Strickland*. Unreasonably applying the *Strickland* standard, the court did not consider "all the circumstances." Thus, it did not consider the difference between  Koch's impeachment and the opening statement comment that implicated the uncharged acts. Nor did the

court consider that, but for his opening comment,  Koch said nothing that would have triggered the uncharged acts claims. The state has not addressed those circumstances of the case. Rather it repeats the state court's unreasonable determination without additional analysis. (State, p. 25-26) "All the circumstances" make clear the deficiency of  Koch's conduct and the prejudice caused by it.

*Increasing the Number of Accusations*

The uncharged acts accusations nearly doubled the accusations that MacRae had to defend against. (Habeas Memo, pp. 42-52) The state suggests that there was no prejudice from that, adding that MacRae benefitted from more accusations because it "increased the avenues of challenging [Grover's] credibility." (State, p. 26) That makes no sense. If it did, defendants would welcome uncharged acts claims – and prosecutors would move to suppress them.

The uncharged acts evidence included claims of violence and allegations of events so far in the past that it was impossible to marshal any sort of alibi defense. (Habeas Memo, p. 44-45, 48-49) The state court's unreasonable misapplication of *Strickland* left the court unaware of those circumstances of the case – and resulted in an unreasonable determination of facts. Habeas review and relief is required.

c.    Counsel Provided the Defense Strategy to the State

Again, it was the state court's failure to consider "all the circumstances" of the case that brought it to the conclusion it reached. The state court offered some isolated "explanations" of why giving away the defense was a "strategy." Each is contradicted by the record, again, revealing the court's continued rejection of the "all the circumstances" and "totality" review required by *Strickland*. (Habeas Memo, pp. 55-57) Thus, habeas review and relief is required.

The state argues that MacRae agreed to send the defense case to the state. That contention

28

is based on the cover letter that Koch sent with the package to the state. (State, p. 28) MacRae did not agree to that. The absence of a statement to that effect in his affidavit was an oversight. At the time the merits are considered, we will submit an affidavit to the following: Koch asked MacRae to do a line-by-line commentary of police reports and other discovery. Koch then told MacRae that he had to make most of it available to the state. MacRae believed that was a discovery obligation. Thus, he was neither for or against Koch's actions. He did not know there was a choice.

  <u>d.</u>  Failure to Interview Grover

  The lawyer that Koch sent to interview Grover thought himself to be unprepared for the task. (Habeas Memo, pp. 60-61) The state court excused Koch's decision to do that by deeming it strategy.

  Again, the state court failed to conduct a proper *Strickland* review. "All of the circumstances" include Koch's failure to elicit accusations and pin Grover to specific versions of his stories. And, what was lost was all the more prejudicial because of the increased number of accusations against which MacRae had to defend (due to Koch's deficient conduct). As with consideration of all of Koch's ineffective conduct, an "all the circumstances" review reveals Koch's consistent failures of performance and prejudice that increased exponentially across the totality of the case. The court's unreasonable application of *Strickland* requires habeas review and relief.

  **5.**  **The State Court Failed to Address the Deficient Performance of Counsel That it Raised Sua Sponte**

  True to its general practice in this case, the state court reviewed the newly discovered evidence in a vacuum – away from the facts and circumstances of the case. It was through that unreasonable application of *Strickland* that the court decided that because of MacRae's knowledge of the existence of Grover's wife and stepson (because they "were present"), the information that

they would provide to MacRae years later, was "available" to him at trial – and thus, not newly discovered. That ruling created another instance of ineffective assistance: if Koch failed to collect available evidence of Grover's perjury confessions (and the court found that is what happened) he was indeed ineffective. And, the state court found that is what happened. (Habeas Memo, 53-54)

The court described the ineffective conduct, creating the issue. However, it never conducted the *Strickland* analysis of performance and prejudice with respect to that issue. Thus, habeas review is necessary because the court failed to consider the merits of the argument it raised. (Habeas Memo, p. 53; *Rompilla v. Beard*, 545 US 375 (2005)(failure to consider *Strickland* prejudice prong).

The state takes issue with this analysis several times in its motion, to no avail. (State, 16, 29-30, 31) The state alleges that the issue is waived because it was "not preserved with a contemporaneous objection in the proceeding below." That is incorrect. First, there was no proceeding below in which an objection to ineffective assistance could have been made. Second, the error is a function of the state court's finding that the information was available at trial. Third, preservation requirements are to provide the court in which the error occurred with the opportunity to address it. *State v. Mello*, 137 N.H. 597 (1993); *Puckett v. United States*, 556 U.S. 129 (2009)(purpose of contemporaneous objection to avoid sandbagging the court). Here, the state court identified the error. Thus, it had every opportunity to address it according to *Strickland.* It chose not to. Fourth, the claim was created in the state court by the state court in its decision. It could not have been raised by MacRae prior to then.

**Conclusion**

This is a summary presentation of MacRae's ineffective assistance claim. The merits of the claim can only be understood from the habeas petition and memorandum.

In sum, the state's claim that the state court's ruling "was not constitutionally unsound" is wrong. The state court unreasonably applied *Strickland* at every turn, which resulted in rulings that are contrary to the law, the facts, and common sense. Habeas review and relief is warranted.

IV.     CONCLUSION

MacRae's petition was filed within one year of the completion of the investigation of the newly discovered evidence that supports his petition. Thus it was timely filed. For that reason, the state's motion to dismiss must be denied.

In the alternative, the state's motion must be denied because MacRae has shown innocence, which, along with an independent constitutional claim, triggers an exception to the one-year habeas time bar.

It is unclear why the state included arguments of the merits of MacRae's ineffective assistance claim in its motion to dismiss. There is nothing even in the relief requested related to that. To whatever extent it might bear any relevance, it is insufficient to warrant granting the state's motion.

For all those reasons, and all of the reasons presented in MacRae's habeas corpus petition and memorandum in support, MacRae respectfully requests that the state's motion to dismiss be denied in its entirety.

Respectfully submitted by his attorneys,


/s/ Robert Rosenthal
Robert Rosenthal
Counselor at Law
523 East 14th Street, Suite 8d
New York, New York 10009
(212) 353-3752


/s/ Cathy J. Green,
Cathy J. Green, Bar #995
Green & Utter, P.a.
764 Chestnut Street
Manchester, NH 03104
(603) 669-8446
Attorneys for Petitioner Gordon MacRae

Dated: August 21, 2014