## THE STATE OF NEW HAMPSHIRE

CHESHIRE, SS

SUPERIOR COURT

### THE STATE OF NEW HAMPSHIRE

v.

### GORDON MacRAE

#93-S-0218-0228, 1076-1078, 1229-1231, 1554-1557

---

## REPLY TO STATE'S MOTION FOR DENIAL AND DISMISSAL OF PETITION

---

ROBERT ROSENTHAL
COUNSELOR AT LAW
523 EAST 14TH STREET, SUITE 8D
NEW YORK, NEW YORK 10009
(212) 353-3752

CATHY J. GREEN, ESQ., BAR #995
GREEN & UTTER, P.A.
764 CHESTNUT STREET
MANCHESTER, NEW HAMPSHIRE 03104
(603) 669-8446

ATTORNEYS FOR PETITIONER GORDON MACRAE

## PRELIMINARY STATEMENT

In its Memorandum of Law for Denial and Motion to Dismiss MacRae's Petition, the state makes several incorrect statements about the law and facts. Some reply is necessary.

### A. Trial Counsel Was Grossly Ineffective

#### 1. To undermine MacRae's Ineffective Assistance of Counsel Showing, the State Urges the Court to Apply an Incorrect and Impossible Standard of Review

When there is a "reasonable likelihood" that a defendant would have been acquitted, but for trial counsel's deficient conduct, ineffective assistance of counsel has been established. *Strickland v. Washington,* 466 US 668 (1984), *State v. Faragi,* 127 NH 1 (1985). That "reasonable likelihood" standard has been satisfied here. (MacRae Opening Memorandum ("MacRae"), pp. 38-50)

Accordingly, the state offers its own more stringent standard. The state asks the Court to deny MacRae's motion because he has not shown that the verdict "would have been different" but for his counsel's deficient conduct. (State, p. 28, 39) No authority supports that.[1]

The state is wrong. The state's need for an impossible standard to challenge MacRae underscores the merits of MacRae's showing.

#### 2. The State's Factual Claims Do Not Support its Motion to Dismiss

#### a. Defense Counsel Brought Into the Trial Highly Prejudicial "Uncharged Acts" Testimony that Was a Feature of the Prosecution

Prior to trial, counsel argued successfully for the exclusion of Grover's stories of uncharged acts that would have increased the accusations by more than half, and added graphic yet amorphous claims against which it would have been impossible to defend. And yet in his opening statement,

---

[1]As one could never prove that a verdict "would have been different." The state's argument would eliminate ineffective assistance of counsel as a ground for vacating a conviction.

counsel undid his pretrial success and opened the door to those claims.

The results were devastating. Stories of uncharged molestation were thrown to the jury – devoid of dates and times, making them impossible to defend against. Counsel's conduct accomplished more toward introducing those uncharged claims than the state could do for itself. (MacRae, pp. 27, 40-45)

The state argues all that extra evidence wasn't so bad. According to the state, counsel should be excused for bringing in so many uncharged acts for several reasons.

1.    The state claims that counsel "simply" took a knowing, "calculated" risk of introducing the other acts stories. (State, p. 21) **The record undermines that claim.** Counsel didn't even understand what he did to open the door to the uncharged acts. By definition, his unknowing actions were not a "calculated" strategy. (MacRae, p. 43)

2.    The state finds no harm in the uncharged acts statements because had they not been initially excluded, counsel would have had to defend against them anyway.  (State, pp. 21, 22) **That is not the case.** By that logic, evidence would need never be excluded. That is not the rule.

3.    Counsel was not ineffective, says the state, because he avoided bringing in even more uncharged acts stories than he did. (State, p. 22) **That makes no sense.** That counsel could have done even more damage does not diminish the fatal damage he did. (MacRae, pp. 34-35, 40-42)

4.    The state claims that MacRae needed the uncharged acts stories to attack Grover's credibility. (State, pp. 23-25) **The record undermines that claim.** The defense was from the outset an attack on Grover's credibility. The trial court knew that when it suppressed the uncharged acts stories. Thus, there was nothing about attacking Grover's credibility that triggered or relied on

-2-

the uncharged acts stories. It was only counsel's portrayal of Grover's claim as "out of the clear blue" that ushered in the uncharged crimes evidence. Absent those words, counsel would mounted the same credibility attack – but against far fewer accusations. (MacRae, pp. 40)

5.      The state argues that the uncharged acts testimony was harmless because defense counsel challenged its "believability." (State, p. 26-28) **Counsel's challenge to the uncharged acts stories does not undermine their poisonous effect.** Even if they were blunted, it was only counsel's comment that brought them to the jury. Particularly in a child molestation case, the number of accusations alone is damning – even before examining their substance. By no stretch did counsel's efforts to address the mess he wrought neutralize the harm of the uncharged acts evidence he brought to the jury. (MacRae 44-45)

Counsel swamped MacRae with accusations. Needlessly and witlessly.

b.      **Counsel Aided the State by Handing to it the Defense Strategy Before Trial**

The state turned over to the defense a large amount of discovery material, containing accusations and statements of various witnesses. MacRae reviewed all of that material and annotated it with his own impressions and the ways in which each accusation would be confronted. That annotated material contained everything known to the defense about the accusations and the means the defense would use to confront them. That was the defense strategy. Yet, trial counsel, Ron Koch, gave it to the state – with plenty of time for the state to adjust its claims to accommodate the previewed defense challenges. The defense was entirely undermined. Counsel was grossly ineffective in that regard, as well. (MacRae 27-28, 45-46) The state makes several attempts to undermine the import and effect of Koch's move. None are of any avail.

-3-

### 1. There is No *Per Se* Rule Requiring Dismissal of an Ineffective Claim, Even if the Defendant Fails to Object to Counsel's Conduct

The state argues for a *per se* rule that whenever a defendant agrees to any action of his counsel, ineffective assistance of counsel cannot be shown. (State, p. 29, 32) The state is wrong.

**First,** MacRae did not agree to give the material to the state. MacRae disputes any representation that he conceded to such a decision. That includes the materials submitted by the state in its memorandum, *i.e.*, a letter from Koch to the state, claiming MacRae "indicated that he had no objection," and an excerpt of local counsel J. R. Davis' recollection that MacRae "was onboard with it."[2] (State, 29-32)

**Second,** even if the Court were to summarily find that MacRae gave some kind of consent, or failed to object, Davis' interrogatory answers on which the state relies undermines the notion that any consent was knowing. Specifically, in his interrogatories answer, Davis reveals that MacRae was unaware of the import and perils of Koch's actions.

Davis felt it necessary to caution Koch several times to inform MacRae and "make sure that [MacRae] was still on board with the disclosure – particularly depending upon what exactly [MacRae] had noted on the work product or what was contained in the witness statements." MacRae made even more clear his ignorance of what Koch was doing, when he told Davis the package to the state would not contain damaging information. He could not have been more wrong. It was all damaging – and damning. (MacRae, pp. 27-28, 45-46)

**Third,** there is no *per se* rule requiring rejection of an ineffective assistance of counsel showing, merely because a defendant fails to object to counsel's actions. The cases on which the

---

[2]State, Doc. Supp., p. 137.

state bases this argument underscore the absence of such a rule. Each case is decided on its particular facts – none of which are present here.[3]

There is no *per se* rule concerning rejection of ineffective assistance claims. MacRae did not agree to disclose the defense strategy to the prosecution. Even if one could infer some consent to something, it was not knowing. MacRae did not understand what Koch did, the critical nature of the material exposed, the loss to the defense of each piece of strategy given away, and all of the ways in which the state would use the defense case affirmatively at trial. MacRae had no idea what Koch did, or the import of his actions.

2.   Handing Over the Defense Strategy Was Not Helpful to the Defense

The state next claims that giving the defense strategy to the state "actually benefitted the defense." (State, p. 32) It did not.

**First,** the state confuses the benefit of MacRae having prepared and devised strategies to confront the accusations with the subsequent giving those strategies to the state. The preparation was beneficial. Handing over the work product undermined all benefits.

**Second**, as an example of the benefits of turning over the defense case to the prosecution, the state offers the following:

● Prior to trial, in materials disclosed to the defense, Grover claimed to have been molested only in the *southeast* office.

● The material that was sent back to the state included MacRae's statement that he had not

---

[3]*Lobosco v. Thomas*, 828 F. 2d 1054, 1057 (11th Cir. 1991)(defendant agreed that there was no defense at all, thus, counsel's concession of guilt was akin to entering a guilty plea); *United States v. Weaver*, 882 F.2d 1128, 1140 (7th Cir. 1989)(no showing of prejudice); *United States v. Williams*, 631 F.2d 198, 204 (3d Cir. 1980)(defendant was aware of adverse consequences of affidavits and thus reasons for not using them).

used the *southeast* office at the time of the alleged event.

●     At trial, Grover testified that events had occurred in the *southeast* and *southwest* offices, thus undermining MacRae's impeachment.

The state argues now that Koch's disclosure of work product helped because it allowed MacRae to show that the accusations changed after the state received the annotated material. That makes no sense. Had Koch not given away the defense, Grover would have been caught in a direct lie. By giving away the impeachment material, Koch allowed Grover to adjust his story and forced the defense to try to prove the collateral matter that the detective made Grover change his story, a far more difficult task than impeaching a Grover lie.

As for proving that MacRae was not in the southeast office at that time. Several other witnesses had that information. It was not necessary that it come into trial through the disclosed defense material.

**Third**, the state argues that there was no harm from handing the defense to the state because Koch could have handed over even more work product. (State, p. 34) That Koch could have done more damage does not undo the critical damage that he did.

Koch handed the defense to the state before trial. All of MacRae's thoughts and strategies for confronting the accusations against him were provided to the state. It was an egregious error – the absence of which would likely have resulted in an acquittal.

    3.     Counsel's Failure to Properly Conduct Discovery Undermined the Defense

The defense had an opportunity to interview Grover before trial. Koch sent the unprepared Davis to do it. (MacRae, 48-49) In his recent interrogatories answer, Davis concedes that even though he reviewed the discovery, **"I readily admit that I did not feel adequaltely prepared to**

**conduct the inreview....**"[4] Davis "shared this concern" with Koch before the interview. Koch was

not bothered.[5]

Searching for "ever moving details of his previous disclosures" was, Davis concedes, a key

objective of the interview.[6] (#cite) Revealing his unpreparedness is his failure to explore the stories

of charged acts. (MacRae, pp. 48-49)

The state asks the court to be impressed with new accusations that Davis elicited during the

interview. (State, p. 38) That is not impressive. Eliciting new accusations requires little preparation

– if any. Indeed, anyone entirely unrelated to the case could have asked Grover a question as

simple as "what happened?" and elicited a new accusation.

The state asks the court to hold MacRae to a burden of identifying exactly the material that

Davis did not elicit "that would have led to an acquittal." It argues also that because Davis does not

now recall being concerned that he missed anything in his interview, MacRae was not harmed by

his unpreparedness. (State, p. 38, 39) The state's argument is unavailing. In the first place, it is

impossible for Davis to know what he did not elicit during an interview for which he was

unprepared to explore the charged acts. Moreover, certainty of an acquittal is not the standard of

review. (*supra*, ##) Again, that the state asks the Court to create a burden so high, only evidences

that MacRae satisfies the burden well-settled by *Strickland, supra*.

---

[4]State Doc. Supp., p. 137 (*emphasis in Davis' original*).

[5]In his interrogatories answer, Davis wrote that he was not as concerned for his
unpreparedness after the interview. (State doc. Supp. 137) Of course, it is impossible for him to
have known what he did not know to ask – or what he missed for having been unprepared. Only
Koch would have known that. But he failed to attend.

[6]State Doc. Supp., p. 137.

4. Failure to Object to McLaughlin's Testimony Was Ineffective Assistance

The state attempted to have Detective McLaughlin testify as an expert about the process by which victims disclose abuse. The court refused that request. Nevertheless, defense counsel agreed that McLaughlin could testify to those "very same things," as long as he was not qualified as an expert. Accordingly, defense counsel facilitated the admission of the same substantive testimony that the state wanted in the first place – obviously, for its powerful prejudicial value. (MacRae, pp. 46-48)

The state argues that regardless of whether McLaughlin's testimony should have been excluded, its admission was harmless because it would have been subsumed by other expert testimony about disclosure patterns, and thus rendered harmless. (State, p. 40, 42) McLaughlin's performance was qualitatively different, however. He spent considerable time with Grover, as Grover produced accusations, according to what McLaughlin told the jury was the process by which abuse victims disclose. His role in the prosecution underscored his belief that the accusations were true. Thus, McLaughlin's testimony was very different and more damaging than that of an expert with no connection to the case.

The state argues also that *State v. Cressy*, 137 N.H. 402 (1993), controlled this issue at the time and would not have precluded McLaughlin's testimony. (State, p. 41) *Cressy* held that an expert may not testify that a pattern of behaviors is indicative of abuse. Here, McLaughlin, though not labeled as an expert presented himself as one in all respects. He then testified to patterns of behaviors that are indicative of abuse. Through the rest of his testimony he provided examples of Grover acting accordingly. That he had made the ultimate conclusion – that Grover was telling the truth and had been molested – was obvious. He was, after all, the investigator, testifying in

-8-

furtherance of the prosecution.

MacRae did not, as the state claims, argue that counsel should have objected to McLaughlin's testimony about his credentials. (State, p. 43) That is not the case. Overall, McLaughlin testified that there are particular patterns by which abused children disclose abuse – and that Grover made his accusations according to those patterns. Regardless of the legal classification of the witness, that testimony was inadmissible at the time of trial. *Cressy, supra.*

Underscoring the prejudice of McLaughlin's testimony, MacRae pointed out that McLaughlin's claims about of his own experience rival those of an expert. (MacRae, pp. 47-48) Thus, absent an instruction to the contrary, McLaughlin's testimony carried the same weight as would an expert's (who would have been limited by *Cressy*), and perhaps more, since he had worked with Grover during the production of accusations.

The state argues also that it is not certain that an objection, would have been sustained. (State, p. 39) Again, certainty is not the standard. The state's need for a higher burden is again revealed.

Finally, the court had already denied the state's request to present McLaughlin as an expert. It is not unreasonable for counsel to have objected to the substance of his testimony as violating the substance of *Cressy,* though he would testify by another name. The court might well have properly recognized that it is the substance of the testimony, not merely the technical title of the witness that is unfairly prejudicial.

## B.  Newly Discovered Evidence Requires a New Trial

Seeking summary dismissal of MacRae's petition, the state has attempted to pick the newly discovered evidence to meaningless bits, hoping to divert the Court from its impact. We have

-9-

addressed the admissibility and weight of the evidence in our opening memorandum and will not restate it here. (MacRae, 3-23, 50-53)

At this point, a hearing is the place to address and expand on our newly discovered evidence showing. We look forward to that opportunity.

## CONCLUSION

The state has failed to undermine the showing of ineffective assistance of counsel set out in MacRae's Memorandum in Support of a Motion for a New Trial. Nor has the state offered anything that undermines the admissibility and weight of the newly discovered evidence presented by MacRae. And, the state has offered nothing that might undermine the need for a hearing in this case to further explore the weight of the evidence and address whatever disputes of fact the state might have created with its claims.

For these reasons, MacRae respectfully requests that this Court grant his Motion for a New Trial and deny the state's motion to dismiss in its entirety.

Dated: December 7, 2012

Respectfully submitted,

Robert Rosenthal
Counselor at Law
523 East 14th Street, Suite 8D
New York, New York 10009
(212) 353-3752
*Pro hac vice*

Cathy J. Green, Bar #995
Green & Utter, PA
764 Chestnut Street
Manchester, New Hampshire 03104

-10-

(603) 669-8846

Certificate of Service

I hereby certify that a copy of the foregoing has been sent by first class mail, postage prepaid, to the Cheshire County Attorney's Office on December 8, 2012.

Robert Rosenthal

-11-