# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### http://www.courts.state.nh.us
## RULE 7 NOTICE OF DISCRETIONARY APPEAL

This form should be used only for an appeal from a final decision on the merits issued by a superior court or circuit court in (1) a post-conviction review proceeding; (2) a proceeding involving the collateral challenge to a conviction or sentence; (3) a sentence modification or suspension proceeding; (4) an imposition of sentence proceeding; (5) a parole revocation proceeding; (6) a probation revocation proceeding; (7) a landlord/tenant action or a possessory action filed under RSA chapter 540; (8) an order denying a motion to intervene; or (9) a domestic relations matter filed under RSA chapters 457 to 461-A, except that an appeal from a final divorce decree or from a decree of legal separation should be filed on a Rule 7 Notice of Mandatory Appeal form.

---

1.  COMPLETE CASE TITLE AND CASE NUMBERS IN TRIAL COURT

Gordon MacRae v. Richard Gerry, Warden, New Hampshire State Prison, 12-CV-279

---

2.  COURT APPEALED FROM AND NAME OF JUDGE(S) WHO ISSUED DECISION(S)

Merrimack County Superior Court

Judge Larry M. Smukler

---

3A. NAME AND MAILING ADDRESS OF APPEALING PARTY.  IF REPRESENTING SELF, PROVIDE E-MAIL ADDRESS AND TELEPHONE NUMBER

Gordon MacRae, #67546

New Hampshire State Prison

P.O. Box 14

Concord, NH 03301

E-Mail address: _____
Telephone number: _____

3B. NAME, FIRM NAME, MAILING ADDRESS, E-MAIL ADDRESS AND TELEPHONE NUMBER OF APPEALING PARTY'S COUNSEL

Robert Rosenthal, Esq. (Pro Hac Vice)

523 East 14th Street, Suite 8D

New York, NY 10009

E-Mail address: robert@robertrosenthal.com
Telephone number: (212) 353-3752

---

4A. NAME AND MAILING ADDRESS OF OPPOSING PARTY.  IF OPPOSING PARTY IS REPRESENTING SELF, PROVIDE E-MAIL ADDRESS AND TELEPHONE NUMBER

Richard Gerry, Warden

New Hampshire State Prison

P.O. Box 14

Concord, NH 03301

E-Mail address: _____
Telephone number(603) 271-1812

4B. NAME, FIRM NAME, MAILING ADDRESS, E-MAIL ADDRESS AND TELEPHONE NUMBER OF OPPOSING PARTY'S COUNSEL

George Stewart, Esq.

Merrimack County Attorney's Office

4 Court Street

Concord, NH 03301

E-Mail address: gstewart@mcao.net
Telephone number:  (603) 228-0529

---

Case Name: __MacRae v. Richard Gerry, Warden, NHSP__

**RULE 7 NOTICE OF DISCRETIONARY APPEAL**

5. NAMES OF ALL OTHER PARTIES AND COUNSEL IN TRIAL COURT

Cathy J. Green, Esq.

Green & Utter, P.A.

764 Chestnut Street

Manchester, NH 03104

(603) 669-8446

cathy@green-utter.com

6. DATE OF CLERK'S NOTICE OF DECISION OR SENTENCING.

July 15, 2013

DATE OF CLERK'S NOTICE OF DECISION ON POST-TRIAL MOTION, IF ANY.

7. CRIMINAL CASES: DEFENDANT'S SENTENCE AND BAIL STATUS

33 ½ - 67 years, stand committed, defendant is serving his sentence

8. APPELLATE DEFENDER REQUESTED?   ☐ YES   ☒ NO

IF YOUR ANSWER IS YES, YOU <u>MUST</u> CITE STATUTE OR OTHER LEGAL AUTHORITY UPON WHICH CRIMINAL LIABILITY WAS BASED AND ATTACH FINANCIAL AFFIDAVIT (OCC FORM 4)

9. IS ANY PART OF CASE CONFIDENTIAL?   ☐ YES   ☒ NO

IF SO, IDENTIFY WHICH PART AND CITE AUTHORITY FOR CONFIDENTIALITY.  SEE SUPREME COURT RULE 12.

10. IF ANY PARTY IS A CORPORATION LIST THE NAMES OF PARENTS, SUBSIDIARIES AND AFFILIATES.

11. DO YOU KNOW OF ANY REASON WHY ONE OR MORE OF THE SUPREME COURT JUSTICES WOULD BE DISQUALIFIED FROM THIS CASE?   ☐ YES   ☒ NO

IF YOUR ANSWER IS YES, YOU MUST FILE A MOTION FOR RECUSAL IN ACCORDANCE WITH SUPREME COURT RULE 21A.

12. IS A TRANSCRIPT OF TRIAL COURT PROCEEDINGS NECESSARY FOR THIS APPEAL?
☐ YES   ☒ NO

IF YOUR ANSWER IS YES, YOU <u>MUST</u> COMPLETE THE TRANSCRIPT ORDER FORM ON PAGE 4 OF THIS FORM.

Case Name: MacRae v. Richard Gerry, Warden, NHSP

**RULE 7 NOTICE OF DISCRETIONARY APPEAL**

13. NATURE OF CASE AND RESULT (Limit two pages double-spaced; please attach.)

14. ISSUES ON APPEAL (Limit eight pages double-spaced; please attach.)
    The New Hampshire Supreme Court reviews each discretionary notice of appeal and decides whether to accept the case, or some issues in the case, for appellate review. The following acceptance criteria, while neither controlling nor fully describing the court's discretion, indicate the character of the reasons that will be considered.

1. The case raises a question of first impression, a novel question of law, an issue of broad public interest, an important state or federal constitutional matter, or an issue on which there are conflicting decisions in New Hampshire courts.
2. The decision below conflicts with a statute or with prior decisions of this court.
3. The decision below is erroneous, illegal, and unreasonable or was an unsustainable exercise of discretion.

Separately number each issue you are appealing and for each issue: (a) state the issue; (b) explain why the acceptance criteria listed above support acceptance of that issue; and (c) if a ground for appeal is legal sufficiency of evidence include a succinct statement of why the evidence is alleged to be insufficient as a matter of law.

15. ATTACHMENTS
    Attach to this notice of appeal the following documents in order: (1) a copy of the trial court decision or order from which you are appealing; (2) the clerk's notice of the decision below; (3) any court order deciding a timely post-trial motion; and (4) the clerk's notice of any order deciding a timely post-trial motion.

    Do not attach any other documents to this notice of appeal. Any other documents you wish to submit must be included in a separately bound Appendix, which must have a table of contents on the cover and consecutively numbered pages.

16. CERTIFICATIONS
    I hereby certify that every issue specifically raised has been presented to the court below and has been properly preserved for appellate review by a contemporaneous objection or, where appropriate, by a properly filed pleading.

_____
Appealing Party or Counsel

I hereby certify that on or before the date below, copies of this notice of appeal were served on all parties to the case and were filed with the clerk of the court from which the appeal is taken in accordance with Rule 26(2).

Date 8/12/13

_____
Appealing Party or Counsel

Case Name:  MacRae v. Richard Gerry, Warden, NHSP

**RULE 7 NOTICE OF DISCRETIONARY APPEAL**

## TRANSCRIPT ORDER FORM                    NOT APPLICABLE

INSTRUCTIONS:
1. If a transcript is necessary for your appeal, you must complete this form.
2. List each portion of the proceedings that must be transcribed for appeal, e.g., entire trial (see Supreme Court Rule 15(3)), motion to suppress hearing, jury charge, etc., and provide information requested.
3. Determine the amount of deposit required for each portion of the proceedings and the total deposit required for all portions listed. Do not send the deposit to the Supreme Court. You will receive an order from the Supreme Court notifying you of the deadline for paying the deposit amount to the court transcriber. Failure to pay the deposit by the deadline may result in the dismissal of your appeal.
4. The transcriber will produce a digitally-signed electronic version of the transcript for the Supreme Court, which will be the official record of the transcribed proceedings. The court also will be provided with a paper copy of the transcript. The parties will be provided with an electronic copy of the transcript in PDF-A format.

| PROCEEDINGS TO BE TRANSCRIBED | | | | | |
|---|---|---|---|---|---|
| PROCEEDING DATE (List each day separately, e.g. 5/1/11; 5/2/11; 6/30/11) | TYPE OF PROCEEDING (Motion hearing, opening statement, trial day 2, etc.) | NAME OF JUDGE | LENGTH OF PROCEEDING (in .5 hour segments, e.g.,1.5 hours, 8 hours) | RATE (standard rate unless ordered by Supreme Court) | DEPOSIT |
|  |  |  |  | X $137.50 | $ |
|  |  |  |  | X $137.50 | $ |
|  |  |  |  | X $137.50 | $ |
|  |  |  |  | X $137.50 | $ |
|  |  |  |  | X $137.50 | $ |
|  |  |  |  | X $137.50 | $ |
|  |  |  |  | X $137.50 | $ |
|  |  |  |  | X $137.50 | $ |
|  |  |  |  | X $137.50 | $ |
|  |  |  |  | X $137.50 | $ |
| NONE APPLICABLE |  |  |  | **TOTAL DEPOSIT** | $ |

| PROCEEDINGS PREVIOUSLY TRANSCRIBED | | | | | |
|---|---|---|---|---|---|
| PROCEEDING DATE (List date of each transcript volume) | TYPE OF PROCEEDING (Motion hearing, opening statement, trial day 2, etc.) | NAME OF JUDGE | NAME OF TRANSCRIBER | DO ALL PARTIES HAVE COPY (YES OR NO) | DEPOSIT FOR ADDITIONAL COPIES |
|  |  |  |  | ☐ Yes ☐ No | TBD |
|  |  |  |  | ☐ Yes ☐ No | TBD |
| NONE APPLICABLE |  |  |  | ☐ Yes ☐ No | TBD |

**NOTE:** The deposit is an estimate of the transcript cost. After the transcript has been completed, you will be required to pay an additional amount if the final cost of the transcript exceeds the deposit. Any amount paid as a deposit in excess of the final cost will be refunded. The transcript will not be released to the parties until the final cost of the transcript is paid in full.

13. NATURE OF THE CASE AND RESULT

In what the petitioner asserts has been revealed as a scam to obtain a cash settlement from the Catholic church, Tom Grover, a drug addict, alcoholic and criminal, accused father Gordon MacRae of molesting him years before. Grover's civil suit – featuring MacRae's conviction – earned him nearly $200,000. No witnesses to the alleged acts could be found, despite that they were to have occurred in busy places. Grover's claims were contradicted by objective facts (*e.g.*, inoperable locks that he claimed worked, acts in an office to which MacRae did not have access, claims about a chess set that had not been purchased).

In New Hampshire at the time, the Catholic diocese was paying huge sums to young men claiming to have been abused by their childhood priests. New evidence from Grover's family and friends at the time of trial reveals that before, during, and after trial, Grover admitted that his accusations were lies and his testimony was perjury – invented in pursuit of his own payment. These people have now come forward and established that MacRae's conviction rests on his perjury.

The trial was marred also by actions and inaction of defense counsel, New Mexico attorney Ron Koch, that undermined the defense, served the prosecution, and assured the conviction.

Pretrial, Koch successfully moved to suppress powerful and highly prejudicial Grover claims of uncharged acts. Suppression of those acts was a critical victory for the defense. But Koch then undermined his victory. In his opening statement, Koch misrepresented the facts in such a way that admission of the uncharged acts was necessary to cure the record. Koch turned a significant defense advantage into a prosecution weapon – and in the process immediately undermined the credibility of the defense in the eyes of the jury. That cannot be justified as strategy. In fact, Koch never even understood what he had done wrong. What he did was serve

the prosecution as it could not serve itself. (Memo, pp. 40-45[1])

That was not Koch's only service to the prosecution. Before trial, he gave to the prosecution a package of materials containing the defense strategies and tactics. Thus, he provided a complete preview of the defense case, with sufficient time for the prosecution to tailor its evidence and strategy accordingly. (Memo, pp. 45-46)

Koch also failed to object to the prosecution's use of its detective to inject expert testimony – essentially telling the jury that typically, abused children withhold and disclose accusations in the same manner as Grover. (Memo, pp. 46-48) And, after securing a pretrial interview of Grover, Koch sent co-counsel who, by his own admission, was unprepared. (Memo, pp. 48-49)

MacRae's appeal to this Court of his conviction was denied on June 6, 1996. He continues to serve the 33½ to 67 year sentence that was imposed following trial.

On December 29, 2011, MacRae filed a Motion for a New Trial in Cheshire County Superior Court, presenting two grounds: ineffective assistance of counsel and newly discovered evidence. The lower court bifurcated the motion, handing down a separate decision for each issue.[2]

The Superior Court decisions are incorrect as a matter of law. The lower court denied MacRae's petition based on standards that conflict with this Court's decisions. Additionally, the lower court failed to review important evidence presented to it which resulted in decisions that are erroneous and an unsustainable exercise of discretion. This Court's review is warranted and necessary. The facts in this case are complex and are barely addressed in this submission. Review of MacRae's entire Superior Court Memorandum is necessary to appreciate the issues that were presented and raised in this Discretionary Notice of Appeal.

---

[1]"Memo" cites refer to MacRae's Motion for New Trial Memorandum of Law in the lower court.

[2]Here, we refer to the Ineffective Assistance of Counsel decision (dated 3/15/2013) as "IAC" and the Newly Discovered Evidence decision (dated 7/9/13) as "NDE."

14.   ISSUES ON APPEAL/STANDARD FOR DISCRETIONARY REVIEW

Criteria for acceptance of an appeal for discretionary review include decisions that conflict with this Court's decisions and decisions that are erroneous, unreasonable or an unsustainable exercise of discretion.   (Rule 7 Notice of Discretionary Appeal, ¶ 14 (3))

Conflicting Decisions:   The lower court's rejection of MacRae's motion is based on rules of its own device that require *per se* denial of claims without analysis of the particular facts of the case. In their application to this case and in light of this Court's jurisprudence, those rules and the decisions based on them contradict this Court's decisions. Thus, review is warranted and necessary.

Erroneous, Unreasonable, and an Unsustainable Exercise of Discretion: A decision is an erroneous, unreasonable, and an unsustainable exercise of discretion unless the record provides an objective basis for it. *State v. Etienne*, 163 NH 57 (2011); *State v. Lambert*, 147 NH 295 (2001). The lower court did not consider critical portions of MacRae's evidence. The court based its decisions on speculation about MacRae's counsel that have no basis in the record – and are contradicted by it. For that reason as well, this Court's review is warranted and necessary.

I.   INEFFECTIVE ASSISTANCE OF COUNSEL

Defense Counsel Opened the Door to Powerful, Highly Prejudicial Uncharged Acts that Had Been Suppressed

Pretrial, Koch successfully moved to suppress powerful Grover claims of uncharged acts. Then, in his opening statement, Koch made a single comment that mischaracterized the evidence. Admission of the uncharged acts was necessary to cure the record. Thus, Koch ensured the admission of damning evidence that the State had been unable to introduce, while at the same time undermining the credibility of the defense. (Memo, pp. 40-41)   The force of the uncharged

7

acts is inestimable. They increased the volume of accusations by more than half. In a case that rested upon the word of Grover, particularly one involving child abuse, the volume of the accusations had a powerful effect.   Also, the uncharged acts contain elements that were more dramatic than the charged allegations. One claim alleged violence, which did not exist in charged acts.   The others, alleged to have occurred while Grover was alone with MacRae in a moving car, avoided the details that objectively undermined the charged accusations – including: acts alleged to have occurred in offices with doors through which sounds were overheard, people outside those doors, people coming and going around the alleged acts, interior and exterior windows through which people could see in, broken locks, and other impossibilities.   Absent all that inherent objective contradiction, the uncharged acts were easier to believe.  (Memo, pp. 41-42)

The lower court rejected MacRae's ineffective assistance of counsel claim on the basis that because the defense strategy was to impeach Grover, it was inevitable that the uncharged evidence would be admitted. (IAC, p. 9) The record expressly undermines that conclusion. Grover's uncharged acts claims were of events alleged to have occurred years prior to the alleged acts charged. In his opening, Koch argued that in 1983 – the time of the charged acts – Grover was so "big," "aggressive," "violent," "hostile," and "strong," that MacRae could not have "out of the blue" molested him for the first time, "with no other explanation or description or anything else." Koch misstated the case history. He knew that Grover alleged molestation prior to 1983. The first alleged charged act was not "out of the blue." It was that particular comment that required introduction of the uncharged acts evidence to correct the record.  (Memo, p. 40-41)

But for Koch's blunder in his opening, Grover's credibility was challenged without opening

the door to the uncharged acts. Koch's attack on Grover's credibility stayed well away from anything that might bear on the uncharged acts. Koch revealed Grover's ever-changing claims of charged acts and raised objective facts that disproved them (*i.e.* inoperable locks, people present). Koch also addressed Grover's criminality, drug and alcohol abuse, and violence – as well as his decision to contact a lawyer about a civil action before contacting police. (Memo, 29-33) None of that is relevant to uncharged acts claims. The lower court did not suggest how that impeachment might have triggered the uncharged acts. The court's "inevitable" justification is a summary conclusion that is contradicted by the facts of the record. It is unreasonable and erroneous and requires this Court's review. The lower court also decided that Koch anticipated triggering the uncharged acts testimony. For justification, the court noted that Koch was able to cross-examine Grover about the uncharged acts. From that, the court inferred that Koch had intended a strategy in which he would open the door to the acts. The record belies that assumption. (IAC, p. 11)   In the first place, Koch's reaction when he was told that his comment triggered the uncharged acts evidence was surprise and confusion. He did not understand what he had done wrong. (Memo, pp. 42-45) It was an accident, not a strategy. The uncharged acts claims were not suppressed until just before trial. The ruling might have gone the other way. Thus, it was incumbent on Koch to prepare to confront those claims. Preparation for a worst case scenario is not indicative of a strategy to risk the worst case scenario.

Third, Koch's opening comment was inconsistent with strategy illustrated in the remainder of the defense. Koch's impeachment of Grover throughout the trial was based on fact. He made Grover admit to being a drug addict, alcoholic, and criminal. He forced Grover to concede to variations in his stories, and revealed facts that undermined Grover's claims. The defense

9

strategy was to  impeach by objective truth. (*E.g.*, Memo, pp. 29-31) Koch's errant opening statement comment was entirely out of character with that. At best, that comment was a plea to speculate that Grover wouldn't have allowed himself to be touched by MacRae. The record reveals that the comment was so far from the defense strategy that it could not have been intended, or its result anticipated.  Nothing in the record indicates that Koch made a strategic decision to open the door to the uncharged acts evidence – or adopt a precarious strategy that risked its admission. Nor is there support for the idea that admission of the uncharged acts evidence was inevitable. The lower court's conclusions about Koch's intentions are contrary to the record. Thus, its ultimate decision is erroneous, unreasonable and cannot stand.

Defense Counsel Gave the Defense Strategy to the State Before Trial:  Pretrial, the prosecution provided MacRae with a considerable amount of discovery material, including Grover's statements. MacRae analyzed that material and annotated it with detailed comments concerning misstatements, impossibilities, and other thoughts and strategies for confronting the accusations. That annotated material was the defense strategy. Nevertheless, Koch gave it to the prosecution – with plenty of time before trial to tailor its case accordingly. (Memo, pp. 45-46)  The lower court decided that handing the defense case to the prosecution was a sound strategy. It cited no authority for its conclusion. Rather, it noted that Koch could have done worse – as another version of that material contained even more notes. The court decided also that Koch's actions were a sound strategy because at one point Koch used one of MacRae's annotations to good effect. (IAC, p. 11) The court did not explain why giving away the entire defense was necessary to use a single annotation. The lower court decided also that detective McLaughlin would not have conceded inconsistencies in Grover's stories during his cross-examination if Koch had not

provided the prosecution with the entire defense case prior to trial. (IAC, p. 11) That finding is inconsistent with the record. Regardless of when McLaughlin was presented with inconsistent stories, he would have had to acknowledge them. In fact, McLaughlin used Grover's inconsistencies affirmatively, as examples of reports characteristic of an abused child. (Memo, p. 36)  The lower court's decision is erroneous, unreasonable and an unsustainable exercise of discretion.

Failure to Object to Detective McLaughlin Providing Expert Testimony: Detective McLaughlin was not qualified as an expert witness. Nevertheless, he provided expert testimony about characteristics of abused children. (Memo, pp. 35-36, 46-48) Koch did not object. The lower court recognized his failure: "to provide effective assistance of counsel the objection should have been made." (IAC, p. 14) Yet, the court rejected MacRae's ineffective assistance claim. The lower court ruled that improper testimony is harmless as long as the witness is cross-examined about other areas, another witness offers similar testimony, and the testimony was not mentioned in final jury instructions. Thus, the lower court deemed McLaughlin's improper testimony harmless because: Koch cross-examined him on other areas; another witness offered "the same type of testimony;" and McLaughlin's expert claims were not included in the jury charge. (IAC, p. 15) The law does not support that ruling. The lower court's holding is an unsustainable exercise of discretion that resulted in an erroneous and unreasonable decision.

Koch Sent an Unprepared Local Counsel to Interview Grover: Koch was a New Mexico lawyer. New Hampshire counsel, J.R. Davis, was retained to assist Koch with local procedure. It was not Davis' responsibility to review discovery or the details of the case. Koch obtained an opportunity for a pretrial interview of Grover. But he sent Davis, alone. Davis has recently

conceded that, though he had a chance to review the discovery before meeting Grover, he "did not feel adequately prepared to conduct the interview." (IAC, p. 16) Nevertheless, the lower court decided that sending Davis was sound strategy. In support, the lower court cited Davis' recent speculation that Koch did not share Davis' concerns. (IAC, p. 16) Koch's lack of attention to Davis' unpreparedness is not strategy. Davis was sent to an interview that he felt unprepared to conduct.

## II.   NEWLY DISCOVERED EVIDENCE

The newly discovered evidence includes statements by those who were Grover's family and friends at the time of trial containing, among other things, Grover's admissions before, during, and after trial that his accusations were lies and his testimony was perjury. (Memo, pp. 50-53) The lower court rejected MacRae's newly discovered evidence showing on three grounds: (1) the evidence is not newly discovered because the people from whom it was obtained were known by MacRae at trial; (2) evidence concerning the non-existence of a chess set to which Grover referred to provide realism to his story is cumulative; (3) the remainder of the evidence concerns Grover's  reputation, conduct after trial, and statements about the investigation and prosecution that would be inadmissible at a new trial.  The standard that the lower court applied conflicts with this Court's decisions. Further, the lower court did not consider all of the evidence presented.

The Lower Court's Rule Requiring Rejection of the Newly Discovered Evidence: The lower court rejected the newly discovered evidence from Grover's family and friends based on a *per se* rule of its own device: Because MacRae knew of those people at the time of trial, their recent statements are not "new" for the purpose of a new trial motion. (NDE, pp. 4-5) That conflicts

with this Court's decisions.

This Court has recognized that new evidence from a source known to a defendant at trial may be newly discovered for a new trial motion. *State v. Etienne,* 163 NH 57 (2011) (recantation as newly discovered evidence, though witness was known); *State v. Mills*, 136 N.H. 46 (1992). Relevant factors concerning whether a defendant was at fault for failing to discover evidence must include the content of the evidence and the circumstances of its unavailability. *Per se* rejection of evidence because a defendant was aware of its source is unsupported by case law.

MacRae could not have discovered the newly discovered evidence at the time of trial. The people who have provided it were Grover's family and friends. They supported him at trial and stood to benefit from his success – and MacRae's conviction. The notion MacRae might have received assistance from them – let alone the damning evidence that they recently offered – is impossible. (Memo, pp. 51) The lower court did not suggest how MacRae might have obtained that evidence at trial. Nor did it offer any basis for faulting MacRae. This ruling was incorrect.

The Lower Court Did Not Consider All of the Evidence Presented:  The lower court listed the evidence that it reviewed: information about a chess set; evidence of Grover's history as a liar and sexual predator; and evidence of Grover's conduct after receiving his settlement check. (Order NDE, pp 5-6) By its own definition, the court did not consider powerful evidence: Grover's admissions to family and friends that he lied and committed perjury to get money from the church. (Memo, pp. 9-10, 13)

The Lower Court's Analysis is Inconsistent with This Court's Decisions: The lower court rejected the newly discovered evidence based on an incorrect standard: Evidence that bears on a trial witness' credibility is limited to collateral matters and cannot be grounds for a new trial.

13

(NDE, p. 6) In support, the court relied upon *State v. Boisvert*, 119 NH 174 (1979).   That reliance is misplaced.  *Boisvert* concerned an assault and rape – acts that were supported by physical evidence and defendant's admission to intercourse with the victim. At trial, the victim testified that she had not consumed an alcoholic beverage in the three years. In a new trial motion, the defendant offered testimony of a witness who would refute that statement. This Court rejected that testimony as newly discovered evidence because it "casts no substantial doubt on the defendant's guilt," as it was limited "only to the collateral issue of the witness' drinking habits" and was "not material to any of the basic issues." *Boisvert*, 119 NH at 177. Thus, according to *Boisvert*, when new evidence has no purpose but to contradict a witness on a collateral matter, it cannot support a new trial motion.   The lower court incorrectly broadened the *Boisvert* holding to reject any evidence that bears on credibility – regardless of its materiality to "basic issues of the case." The new evidence here is not about a "collateral issue." The witnesses who have now come forward assert that Grover admitted that MacRae did not molest him and that his claims were lies to "scam" the church. Grover's admissions of perjury and exculpation of MacRae could not be more "basic" and "material." Grover's admissions more than "casts...substantial doubt on [MacRae's] guilt." The new evidence eviscerates the State's case.

The lower court's treatment of *Boisvert* as a blanket rule rejecting evidence that concerns credibility is incorrect and contrary to this Court's decisions. The lower court's reliance on that reading of *Boisvert,* and its failure to consider all of the evidence presented resulted in a decision based on an unsustainable exercise of discretion that is erroneous and unreasonable. This Court's review is warranted and necessary.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

JUL 1 6 2013

Merrimack Superior Court
163 North Main St./PO Box 2880
Concord NH  03302-2880

Telephone: (603) 225-5501
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

Cathy J. Green, ESQ
Green & Utter PA
764 Chestnut Street
Manchester NH  03104

Case Name:     **Gordon MacRae v Richard M. Gerry, Warden**
Case Number:   **217-2012-CV-00279**

Enclosed please find a copy of the court's order of July 09, 2013 relative to:

ORDER

July 15, 2013

William S. McGraw
Clerk of Court

(484)

C: Offender Records; Robert Rosenthal, ESQ; George A. Stewart, ESQ

NHJB-2503-S (07/01/2011)

# THE STATE OF NEW HAMPSHIRE

**MERRIMACK, SS.**                                          **SUPERIOR COURT**

Gordon MacRae

v.

Richard Gerry, Warden
New Hampshire State Prison

No. 12-CV-279

## ORDER

The petitioner, Gordon MacRae, seeks a writ of *habeas corpus*. He asks the court to vacate his 1994 convictions for felonious sexual assault and aggravated felonious sexual assault and grant a new trial. The petitioner maintains that his continued incarceration based on these convictions is illegal because trial counsel was ineffective and newly discovered evidence supports his innocence. At a status conference on January 15, 2013, the parties agreed to bifurcate the claim of ineffective assistance and the claim of newly discovered evidence. Consequently, this order will be limited to an analysis of the petitioner's claim based on ineffective assistance of counsel. The record provided is extensive and, after review, the court has determined that it is sufficient to determine whether the petitioner did not receive effective assistance of counsel. Thus, the court need not hold a hearing. *See Grote v. Powell*, 132 N.H. 96, 99–100 (1989). Because the petitioner has failed to meet his burden of demonstrating that his counsel's actions amounted to ineffective assistance, his petition for writ of *habeas corpus* is DENIED on that ground and the respondent's motion to dismiss the ineffective assistance claim is GRANTED.

- 2 -

## History

On April 30, 1993, the grand jury handed down indictments accusing the petitioner, a Catholic priest, of two counts of felonious sexual assault (class B felony) and four counts of aggravated felonious sexual assault (class A felony). The charges stemmed from the allegations of Thomas Grover, who met MacRae in the early 1980s when Grover's mother turned to her church and to him for help with Grover's alcoholism and legal trouble.

For his defense, MacRae retained Attorney Ron Koch as lead counsel. Mr. Koch practiced in New Mexico. Attorney J.R. Davis was secondary local New Hampshire counsel. Mr. Davis "was retained primarily so that Ron [Koch] could appear in New Hampshire" and "to assist on local procedural issues and questions and/or to conduct New Hampshire research when requested by [Koch] and/or [MacRae]." Respondent's Memorandum of Law for Denial and Dismissal of Petition ("Objection"), Document Supplement, Tab 9a ("Davis Affidavit"), at 131. Mr. Davis only appeared at trial because, at the close of jury selection, the court made it clear that he was expected to appear. *Id.*

The jury trial began on September 12, 1994 and lasted for ten days. MacRae was tried on all four of the class A felony charges and one of the class B charges. On September 23, 1994, the jury returned verdicts of guilty on all counts. On November 14, 1994, the court sentenced MacRae to a prison term of 33.5 to 67 years. Presently, he remains incarcerated.

On September 25, 1995, MacRae filed a direct appeal with the New Hampshire Supreme Court. The issues on appeal included: (1) whether the state impermissibly used the testimony of its expert witness, Doctor Fleischer, to prove that Grover's allegations were true; (2) whether the trial court erred in precluding the defense from cross-examining Grover with his juvenile convictions; and (3) whether the trial court erred in instructing the jury to disregard certain of Grover's

- 3 -

answers to defense questions. The court affirmed. *State v. MacRae*, 141 N.H. 106 (1996). The instant petition followed.

**Law**

In his petition for *habeas corpus* relief, MacRae asserts that his convictions should be vacated and that he is entitled to a new trial because his trial counsel provided ineffective assistance in violation of both his state and federal constitutional rights. "The State and Federal Constitutions guarantee a criminal defendant reasonably competent assistance of counsel." *State v. Croft*, 145 N.H. 90, 91 (2000) (citations omitted). "The standard for determining whether counsel's performance is constitutionally deficient is the same under both the State and Federal Constitutions." *Id.* (citations omitted). Thus, competency of trial counsel's performance will be evaluated under the State Constitution and Federal case law will be cited for guidance only. *Id.*

In order to succeed on a claim of ineffective assistance of counsel, MacRae "must first show that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case." *State v. Kepple*, 155 N.H. 267, 269-70 (2007). Where the petitioner has failed to meet either prong of this test, the court need not consider the other prong. *Id.* at 270.

To meet his burden under the first prong, MacRae must prove "that counsel's representation fell below an objective standard of reasonableness." *State v. Hall*, 160 N.H. 581, 584 (2010) (quotations and citations omitted). "The reasonableness of counsel's conduct [is] based upon the facts and circumstances of [the] particular case, viewed from the time of that conduct." *Id.* (citations omitted). When considering the first prong of an ineffective assistance of counsel claim:

> Judicial scrutiny of counsel's performance must be highly deferential. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the

- 4 -

evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.*, quoting *State v. Whittaker*, 158 N.H. 762, 769 (2009).

To meet his burden under the second prong of the test, MacRae must demonstrate "that there is a reasonable probability that the result of the proceeding would have been different" if counsel did not take the complained of action. *State v. Sanchez*, 140 N.H. 162, 163 (1995) (citation omitted). In examining the petitioner's claim for prejudice, the court should look to "the totality of the evidence before the judge or jury" at the time of trial. *Avery v. Cunningham*, 131 N.H. 138, 149 (1988). Where the petitioner "is unable to demonstrate such prejudice, [the court] need not even decide whether counsel's performance was deficient." *Sanchez*, 140 N.H. at 163 (citation omitted).

**Analysis**

MacRae's petition specifies four claims of ineffective assistance. Specifically, MacRae asserts that counsel's assistance was ineffective as follows: (1) in the opening statement, counsel "opened the door" to uncharged acts testimony after arguing successfully for the inadmissibility of the evidence during pretrial motions; (2) counsel gave the state certain documents containing MacRae's annotations and thoughts that ultimately amounted to the defense "giving away" its trial strategy; (3) counsel failed to object to the admission of expert testimony elicited through a lay witness; and (4) Attorney Koch improperly permitted secondary counsel Davis to conduct an informal pretrial interview of Grover. The court will address each claim in turn.

**<u>Opening the Door to Otherwise Inadmissible Evidence</u>**

The petitioner first asserts that trial counsel was ineffective when, during his opening statement, he "opened the door" to uncharged acts evidence after he had successfully argued its

- 5 -

inadmissibility pretrial under New Hampshire Rule of Evidence 404(b). Specifically, the defense

sought to exclude testimony of three uncharged acts that would have come in through Grover.

Trial Transcript ("TT"), 2:28–41.

The first uncharged act occurred when Grover was delivering a newspaper to the rectory.

Grover testified that he:

> Had, uhm, a donut and something to drink and went into the other front room of
> the rectory … as we were walking down the hallway, MacRae was behind me at
> first and came and slowly pushed me towards—not pushed me but moved his
> body so I went towards the wall and just before we got to the door he put—
> pushed me up against the wall. I had my paper bag in front of me and he pushed
> his weight up against me and put his arm up under my throat.

> He grabbed—took his hand and grabbed my crotch area and was grinding his
> body up against my side … I tried to move away and he pushed his weight up
> against me and was grinding his lower half against my body….

TT, 2:28–32. As to the second uncharged act, Grover testified that MacRae offered to drop his

brother off at the airport and Grover went along for the ride. On the way home to New Hamp-

shire, Grover said:

> It was night time and late and I fell asleep in the front of the car and when I woke
> up, uhm, Gordon MacRae had his hand on my pants and was fondling me.

TT, 2:38. Finally, as to the third uncharged act, Grover testified that he was in the car again with

MacRae, this time "going to get some food." Grover testified:

> [O]n the way there, he again pinned me—he fondled me through my pants…. He
> just took his arm and pushed like that and then grabbed at my crotch area with his
> hand and was feeling through my pants.

TT, 2:40.

Additionally, several witnesses corroborated portions of Grover's testimony about the

uncharged acts to the extent that Grover told them about the acts or to the extent that they had

involvement leading up to the events that gave MacRae the opportunity to commit such acts: De-

- 6 -

tective James McLaughlin (TT, 7:39–43); Patricia Grover, Grover's adoptive mother (TT, 6:60–62); and Jon Grover, Grover's brother (TT, 7:20 –2 1).

After securing the court's favorable evidentiary ruling excluding Grover's testimony about the three uncharged acts, Koch in his opening characterized the first charged incident of sexual abuse as occurring "out of the clear blue." TT, 1:59. Following Koch's opening, the state objected. It argued that "[the defense has] a misleading advantage by making that representation to the Court that it came out of the blue because in reality there was prior contact between Mr. MacRae and Tom Grover." *Id.* at 62. The court agreed with the state, ruling that testimony of the uncharged acts, though previously ruled inadmissible, would be allowed because Koch's "clear blue comments magnified the issue of Gordon MacRae's opportunity or chance to commit the charged acts to such an extent that it would be an injustice to prevent the state from introducing those acts." TT, 2:4.

The petitioner asserts that Attorney Koch's opening, which caused the admission of otherwise inadmissible evidence, could "**never** [be] within any objective standard of reasonableness." Petitioner's Memorandum of Law in Support of a Petition for Writ of Habeas Corpus ("Petition"), 42 (emphasis added) (quotations omitted). Further, the petitioner asserts that the "prejudice of introducing critical and dramatic prosecution evidence that the state could not obtain for itself is obvious." Petition, 44. The petitioner relies on four points of prejudice that he submits create a reasonable probability of a different trial outcome had the uncharged acts not been admitted: (1) "The uncharged acts were a feature of the trial" and were testified to by numerous witnesses; (2) the indictment did not give notice of times, dates, weeks, or months for the charged acts and evidence of the uncharged acts only added to the inability to mount a defense; (3) the uncharged acts "rehabilitated important flaws in Grover's stories;" and (4) right from the

- 7 -

beginning, defense counsel gave the jury the impression that he was misleading them or leaving out important facts, undermining his own trustworthiness and "making it that much more diffi-cult to have the jury view the defense as credible." Petition, 45.

While the court disagrees with the petitioner's assertion that allowing the admission of otherwise inadmissible evidence could "never" be within an objective standard of reasonable-ness, it will nevertheless assume without deciding that Attorney Koch's "out of the clear blue" statement was not part of a calculated risk designed to further a trial strategy. While Koch's ar-gumentative response to the state's objection to his opening statement can be construed as a vig-orous effort to retain an advantage he was willing to sacrifice, it could also be construed as in-consistent with the respondent's contention that his "clear blue" comment was purposeful and part of an overall trial strategy to undermine Grover's credibility. *See* TT 1:62–64. Additionally, Attorney Davis explained that "[h]aving successfully excluded the 404(b) evidence pre-trial, [Koch] and I both wanted to keep it out." Davis Affidavit, 134. Although it may have been part of the defense team's overall strategy to undermine Grover's credibility, with respect to the ex-cluded 404(b) evidence, "[Koch] wanted to get as close to the line as he possibly could without crossing it." *Id.*

Having assumed that Koch inadvertently opened the door, the court moves on to the se-cond prong of the analysis—whether there is a reasonable probability that the results of the trial would have been different. The petitioner has not sustained this burden. The totality of the record evidence does not support the petitioner's claim that Koch's "opening the door" actually preju-diced the outcome of the case.

From the outset, it is clear from the record that the defense strategy was to attack Grover's credibility and call into question his motivations for the allegations he made against

- 8 -

MacRae. Davis Affidavit, 134. This was rationally the only strategy available to the defense. As the respondent explains:

> An alibi defense would have been difficult in light of [the] wide time frame during which the assaults were alleged to have occurred.... Had Koch abandoned his pointed attacks on TG's credibility ... [he] would have been left with the claims of delayed reporting, inconsistencies between the police statements and trial testimony, and the lawsuit against the Church. But Dr. Fleischer's testimony tended to reduce the impact of [Grover]'s delayed reporting and the inconsistencies.

Objection, 28–29. Additionally, Koch could not put MacRae on the stand. If MacRae did testify, the court made it clear that other previously excluded 404(b) evidence involving other victims and probation violations would be admissible because it would be probative of MacRae's credibility. TT, 1:10. With these circumstances in mind, Koch's only viable and reasonable theory of defense was to attack the credibility of Grover in a directed and specific way—with the "precision of a laser surgeon." Document Supplement, Tab 9b, 141.

The trial record supports this characterization of the defense strategy. At the beginning of his opening, Koch told the jury: "You're going to have to judge the motivation and credibility of Tom Grover in this case based upon what he says from that witness stand...." TT, 1:46. When describing Grover, Koch told the jury:

> Tom not only had a severe alcohol problem ... he had a severe drug problem. I'm talking marijuana, cocaine, amphetamines, crack cocaine, hashish, and other hallucinogenics.... His alcohol problem and his drug abuse problem was so severe that his family could hardly tolerate him, even as a young man.... Tom was abusive physically and verbally, even from the time he was a very young man to the point that his family couldn't deal with him. They were afraid of him.

TT, 1:52–53. Koch went on to tell the jury that "Tom Grover has a felony conviction and his felony conviction is that he essentially aided and abetted or was an accomplice to a burglary...." TT, 1:55–56. With respect to Grover's accusations, Koch told the jury:

> [A]s [Grover] begins to unveil his version of events, he is talked to on many different occasions by many different people.... [A]s he is speaking to them and

giving statements at different points in time in the scenario of events, there are changes that take place in the version of events.

TT, 1:59. Based on the totality of the record, it is clear the defense strategy, and most prominent issue in the trial, was Tom Grover's credibility.

Koch could not have caused any actual prejudice to the defense when he "opened the door" to the uncharged acts testimony. Because undermining Grover's credibility was Koch's best rational option as a trial strategy, it was inevitable that Koch would open the door to the uncharged acts in his attempt to attack Grover's stories precisely and successfully. As part of the defense tactic to diminish Grover's credibility, a dominant theme recurred—Grover was introduced to MacRae for legal and mental health help, Grover would not have submitted to sexual abuse in such a distraught state, and he would not have continuously returned for repeated abuse. While Koch may have wanted to "get as close to the line as he possibly could without crossing it," this defense tactic would almost certainly allow for the admission of the uncharged acts.

Despite the inevitability of triggering the admission of the uncharged acts evidence, this tactic was reasonable. Indeed, Koch's pretrial preparation anticipated this turn of events. He was prepared to execute effective cross-examinations based on the uncharged acts testimony. For example, during his cross-examination of Grover, Koch elicited that, as to the first uncharged act, MacRae invited him into the rectory for juice and doughnuts, just like another priest, Father Horan had done "on many occasions." TT, 3:121–122. As respondent points out, however, Koch elicited through Father Horan that the priests did not invite individual children into the rectory for doughnuts. TT, 8:50. Additionally, as to the first incident, Koch elicited from Grover that he told different versions of the incident to Detective James McLaughlin than he told to the jury during his direct examination. TT, 4:15. Further, Koch spent parts of his cross-examination of Grover eliciting testimony that Grover did not recall how old he was, what time of year it was, or

- 10 -

any conversation with MacRae surrounding the uncharged acts incidents. TT, 4:10–14:66, 71. Based on the record, therefore, Koch was able to continue to undermine Grover's testimony and maintain his overall defense strategy despite the admission of the uncharged acts.

Finally, just before Grover testified to the uncharged acts, the court provided the jury with a limiting instruction. The court instructed the jury that the only permissible use of the evidence, if credible, was to find that MacRae had the opportunity to commit the alleged acts. The court instructed the jury that it would not be permissible for the jury to use the testimony of the uncharged acts to find that MacRae committed the charged acts. TT, 2:28–29. These instructions support the respondent's argument that Koch's actions during opening did not result in actual prejudice to the outcome of the case.

Based on the totality of these circumstances, the court concludes that Attorney Koch's "out of the clear blue" statement, which "opened the door" to otherwise inadmissible character evidence, did not actually prejudice the outcome of the case. The petitioner has failed to persuade the court that there is a reasonable probability that the result would have been different if Koch did not "open the door" to such evidence. Consequently, Koch's comments during his opening statement did not amount to constitutionally defective assistance of counsel.

### Annotated Discovery

The petitioner next asserts that Attorney Koch did not provide competent assistance of counsel when he provided the state with a copy of certain documents from state discovery that MacRae had annotated with his thoughts and impressions. The petitioner contends that this amounted to Koch "giving away the defense theory and strategies." According to the petitioner, "[d]isclosing the defense case to the state is so far outside any standard of reasonableness ... that assessments of reasonableness or strategy are all but irrelevant." Petition, 46. The court disagrees.

- 11 -

Attorney Davis gave several explanations as to why providing the state with copies of its own discovery with MacRae's annotations was part of the defense strategy. The reasons included: (1) "formulating and substantiating an alibi defense;" (2) setting up an argument for fundamental unfairness in defending allegations from unknown dates from ten years prior; (3) "setting things up for a bill of particulars from the state;" and (4) due to their own questioning regarding whether or not Grover would testify "when push cam[e] to shove," the disclosure was in part a way to force the state to question their own witness or motivate Grover to not assist the state. Davis Affidavit, 135. Indeed, Davis explains that there were actually two versions of the same documents that MacRae annotated—one, that did "not contain any damaging information," that the defense would disclose to the state and a second one that the defense would keep for its own purposes. *Id.*

Additionally, as respondent argues, the annotations from MacRae served purposes at trial nearly akin to MacRae testifying himself. Defense counsel was able to use the annotated discovery to keep out damaging letters between MacRae and Detective McLaughlin. In the letters, McLaughlin posed as Grover's brother and the state asserted that the letters were admissions of misconduct and showed consciousness of guilt. After Koch read the court MacRae's own explanation from his annotations, the letters were ruled inadmissible. Moreover, Koch later elicited from Detective McLaughlin that, before trial, he reviewed MacRae's annotations and was aware of some of the inconsistencies in Grover's allegations.

Based on the record, and mindful of the deference that must be given to Koch's actions in providing MacRae's annotated discovery to the state, the court finds and rules that it was part of a sound trial strategy. Therefore, the petitioner has failed to sustain his burden of demonstrating that this conduct amounted to ineffective assistance of counsel. Because Koch acted within a

- 12 -

standard of objective reasonableness, the actual prejudice prong of the ineffective assistance

analysis need not be considered.

### Expert testimony of Detective McLaughlin

In his third argument, the petitioner contends that Koch provided ineffective assistance

when he failed to object to expert testimony elicited through a lay witness, Detective McLaugh-

lin. At trial, the state asked the court to qualify Detective McLaughlin as an expert witness in

"the process in which victims disclose the sexual abuse, mainly looking at the inconsistencies ...

that this is more a process rather than an event." TT, 7:53. Although the court ultimately denied

the state's request, it inquired of Koch:

> We've just had Detective McLaughlin testify about all these hundreds of
> witnesses that he's interviewed. What would be your objection if the State were to
> ask [Detective McLaughlin] if there were ever any inconsistencies in the
> recollections of these witnesses? And would you consider that answer to be the
> answer of an expert? Standing here without your argument, I don't think that's the
> answer of an expert. I think that's an answer, that's direct evidence. The question
> could be asked. How would you respond to that?

TT, 7:94. Attorney Koch agreed with the court. Eventually, Detective McLaughlin testified as

follows:

> A.    Most of the adult victims who are victimized as children sexually, when
> they finally come to terms and are able to disclose that information, especially to
> an authority, will basically give you a rough outline of what happened to them,
> what occurred over a length of time. And then on subsequent interviews, they will
> come up with additional facts about their victimization.
>
> Q.    Is there a term 'confabulation that you're familiar with?
>
> A.    Confabulation is sometimes the mind will take incidents of abuse that
> occurred years ago, and let's say three incidents happen during a given day. Their
> mind may believe that those occurred on three separate days, or vice versa, that
> three separate day's events happened all in one day, and that can happen.
>
> Q.    So if I understand, your disclosure sometimes comes in pieces rather than
> in its totality?
>
> A.    Yes, typically.

- 13 -

TT, 7:97–98. The petitioner maintains that this was impermissible expert testimony because it was elicited through a lay witness.

In support of this argument, the petitioner relies on *State v. Gonzalez*, 150 N.H. 74, 78 (2003). *Gonzalez* holds that testimony regarding victim denials or recantations in sexual assault cases and whether they are unusual or not is expert testimony; thus, it would be impermissible for a lay witness to testify as such. The respondent contends, on the other hand, that this was not the law when the case was tried in 1994; therefore, it has no bearing on the determination of whether Koch acted with a reasonable degree of competency. In his reply, the petitioner relies on *State v. Cressey*, 137 N.H. 402 (1993)—a case that was decided before the 1994 trial. The court is not persuaded. *Cressey* holds that a psychological expert could not testify that the symptoms or behaviors of a particular complaining witness indicate that the complaining witness was sexually abused. This is because the science is not sufficiently reliable. *Cressey*, 137 N.H. at 407. McLaughlin's testimony does not fall into this category; rather, he testified generally that victims of sexual abuse often forget details of incidents or take time to come forward with allegations of abuse, often needing more than one interview to realize fully the extent of their abuse. The sexual abuse is already acknowledged. McLaughlin did not testify that interviewees who have trouble remembering details or interview over the course of several meetings must be victims of abuse. Indeed, *Cressey* explicitly held that such evidence could be admitted. *Id.* at 411-412. The issue here, however, is not whether such general evidence was admissible, but whether it could have come in through McLaughlin in 1994.

While the court agrees with the respondent that *Gonzalez* would not be applicable to a 1994 case, the foundation for the law as decided in *Gonzalez* was already in place at that time. Generally, even in 1994, to determine whether a witness is offering expert testimony, the court

- 14 -

must consider "whether or not the witness, by either study or experience, has knowledge on the subject-matter of his testimony so superior to that of men in general concerning it that his views will probably assist the trier of fact." *McMullin v. Downing*, 135 N.H. 675, 679 (1992). By way of example, in *Gelinas v. Metropolitan Property & Liability Ins. Co.*, 131 N.H. 154, 167 (1988), two lawyers proposed as witnesses to give testimony on their first-hand knowledge of events surrounding a negotiation and a trial were deemed to be lay witnesses because they were not offering opinions or conclusions from their observations; rather, the lawyers were solely testifying factually.

Unlike the lawyers in *Gelinas*, Detective McLaughlin testified to a conclusion he drew about sexual assault victims after many interviews with different victims over a period of time. These numerous interviews and his conclusion that sexual assault victims often do not remember parts of incidents or reveal details through a process of interviews are plainly part of the experience and knowledge he has as a detective. This knowledge is also plainly outside that of the average juror. Further, other jurisdictions had already held in 1994 that a police officer's experience and the conclusions drawn from it constitute expert testimony. *See Seal v. Miller*, 605 So.2d 240, 244 (Miss. 1992) (police officer's testimony based on experience investigating accidents is not lay testimony). Under these circumstances, an objection to the court's suggestion that McLaughlin's testimony was admissible even though he was a lay witness could have and should have been made. This court understands that the trial court, in its suggestion, implied that it would rule the testimony admissible despite any objection. TT, 7:94. This does not change the analysis. To provide effective assistance of counsel, the objection should have been made.

Having determined that Koch's failure to object fell below an objective standard of reasonableness, the court must now consider whether the admission of McLaughlin's testimony re-

29

- 15 -

sulted in any actual prejudice to the outcome of the case. The petitioner has not sustained his burden of showing prejudice. First, Koch effectively cross-examined McLaughlin on the discrepancies in Grover's testimony and McLaughlin's failures in investigation: *e.g.*, Grover testified the assault occurred in the southeast office, but MacRae only used the southwest office, TT, 7:112–113; McLaughlin's failure to interview Father Dupuis or inquire of Grover whether any assaults took place in the southwest office, TT, 7:118; failure to determine whether the doors in the rectory locked, TT, 7:131; and eliciting from McLaughlin that his investigation is ongoing and at any time he can update or supplement his report, TT, 7:118. The cross-examination would have worked to further the defense strategy of undermining Grover's credibility and would also have undermined McLaughlin's direct testimony.

Additionally, the jury heard the same type of testimony from a more credible source. The state's expert, Dr. Leonard Fleischer, testified even more in depth and more specifically than Detective McLaughlin about the length of time it usually takes sexual abuse victims to disclose their abuse (TT, 7:177–175) and how victims tend to forget details when it comes to the actual disclosure (TT, 7:184–187). Moreover, in the court's final jury instructions, it referred only to Dr. Fleischer when it instructed on expert testimony. TT, 9:81; 89–90. Under these circumstances, the petitioner cannot meet his burden of demonstrating that Koch's failure to object to the expert testimony elicited from Detective McLaughlin resulted in any actual prejudice to the outcome of the case. Consequently, Koch's action was not constitutionally ineffective.

### Assignment of Interview to local Counsel

The petitioner's final contention is that Koch provided ineffective assistance of counsel when he permitted secondary counsel Davis to conduct an informal, pretrial interview of Grover. According to the petitioner, if Koch (who the petitioner claims had been egregiously ineffective in his other conduct) had conducted a pretrial deposition of Grover, he would have been able "to

30

- 16 -

pin down Grover and force him to commit to a particular version" of events. Petition, 48. Further, the petitioner maintains that if Koch conducted a pretrial deposition, he "would have ferreted out critical cross-examination material and prior statements with which to impeach Grover at trial." *Id.* Rather than gain these advantages, Koch allowed Davis to conduct an informal interview. The petitioner asserts that Davis was unprepared for the interview and did not focus appropriately on discrepancies in Grover's stories but, instead, focused on background information. The court is not persuaded.

First, as the respondent asserts, Koch could not have conducted a pretrial deposition of Grover. The trial court specifically limited defense contact with Grover to an informal interview and not a deposition. *See* Motion Hearing Transcript, 36–39. Moreover, as the respondent explains, if Koch conducted a pretrial deposition of Grover, the state would have been able to use the deposition to lock Grover into trial testimony. Koch's decision to conduct an informal interview "preserved his ability to challenge [Grover's] inconsistencies at trial and deprived the State of the use of a deposition as a source of prior consistent statements." Objection, 35–36.

Additionally, Koch explained in a letter to Davis that:

> I also want to take my statement from Tom Grover. I may utilize an attorney or investigator, other than myself to do the interview as I don't want Mr. Grover to become acquainted with me and my style. I don't want him to feel that I'm a familiar figure when we go to court.

Document Supplement, Tab 9b, at 141. Although Davis admits "that [he] did not feel adequately prepared to conduct the interview," he did state that, to prepare, he "reviewed the discovery extensively." Davis Affidavit, 137. Importantly, "[n]either [Koch] nor [MacRae] shared [Davis'] concern" that he was not adequately prepared. *Id.* Under these circumstances, Koch's decision to let Davis conduct the informal pretrial interview of Grover deserves deference as being within

31

- 17 -

sound trial strategy. The action did not fall below an objective standard of reasonableness and, therefore, did not amount to ineffective assistance of counsel.

**Conclusion**

Based on its review of the record provided, counsel's arguments, and the foregoing analysis, the court finds and rules that the petitioner has not sustained his burden of demonstrating that any of the specified actions of Attorney Koch amounted to ineffective assistance of counsel. Accordingly, the petitioner's request for *habeas* relief based on ineffective assistance of counsel is DENIED and the respondent's motion to dismiss the petition as to ineffective assistance of counsel is GRANTED.

**So ORDERED.**

Date: March 15, 2013

LARRY M. SMUKLER
PRESIDING JUSTICE

32

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

MAR 2 ?

Merrimack Superior Court
163 North Main St./PO Box 2880
Concord NH 03302-2880

Telephone: (603) 225-5501
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**Cathy J. Green, ESQ**
**Green & Utter PA**
**764 Chestnut Street**
**Manchester NH 03104**

Case Name:      **Gordon MacRae v Richard M. Gerry, Warden**
Case Number:    **217-2012-CV-00279**


Enclosed please find a copy of the court's order of March 15, 2013 relative to:

ORDER


March 20, 2013                          William S. McGraw
                                        Clerk of Court

(485)

C: Offender Records; Robert Rosenthal, ESQ; George A. Stewart, ESQ

# THE STATE OF NEW HAMPSHIRE

**MERRIMACK, SS.**                                        **SUPERIOR COURT**

Gordon MacRae

v.

Richard Gerry, Warden
New Hampshire State Prison

No. 12-CR-279

### ORDER

The petitioner, Gordon MacRae, seeks a writ of *habeas corpus*. He asks the court to vacate his 1994 convictions for felonious sexual assault and aggravated felonious sexual assault and grant a new trial. The petitioner maintains that his continued incarceration based on these convictions is illegal because trial counsel was ineffective and newly discovered evidence supports his innocence. At a status conference on January 10, 2013, the parties agreed to bifurcate the claim of ineffective assistance and the claim of newly discovered evidence. By order dated March 15, 2013, the court denied the petitioner's request for *habeas* relief based on his claim of ineffective assistance of counsel. At a status conference on April 29, 2013, the parties agreed that the court could decide the remaining issue, whether newly discovered evidence supports the petitioner's request for a new trial, without a hearing. Because the petitioner has failed to meet his burden of demonstrating that newly discovered evidence is of such a character to warrant a new trial, his petition for writ of *habeas corpus* is DENIED. This renders moot the respondent's motion to dismiss.

On April 30, 1993, the grand jury handed down indictments accusing the petitioner, a Catholic priest, of two counts of felonious sexual assault (class B felony) and four counts of ag-

- 2 -

gravated felonious sexual assault (class A felony). The charges were based on the allegations of

Thomas Grover, who met MacRae in the early 1980s when Grover's mother turned to her church

and to him for help with Grover's alcoholism and legal trouble.

The jury trial began on September 12, 1994 and lasted for ten days. MacRae was tried on

all four of the class A felony charges and one of the class B charges. On September 23, 1994, the

jury returned verdicts of guilty on all counts. On November 14, 1994, the court sentenced

MacRae to a prison term of 33.5 to 67 years. Presently, he remains incarcerated.

On September 25, 1995, MacRae filed a direct appeal. The issues included: (1) whether

the state impermissibly used the testimony of its expert witness, Doctor Fleischer, to prove that

Grover's allegations were true; (2) whether the trial court erred in precluding the defense from

cross-examining Grover with his juvenile convictions; and (3) whether the trial court erred in

instructing the jury to disregard certain of Grover's answers to defense questions. The court af-

firmed. *State v. MacRae*, 141 N.H. 106 (1996). The instant petition followed.

In the second part of his petition for *habeas* relief, MacRae asserts that he is entitled to a

new trial based on newly discovered evidence, which was collected by his private investigator,

James Abbot. The purported new evidence falls within three general categories: (1) testimony

that Grover bragged about his intention to obtain money from the church and admitted that his

testimony at trial was perjured, (*see* statements of Thomas Grover's ex-wife, Trina Ghedoni, his

former stepson, Charles Glenn, a former counselor, Debra Collett, and Steven Wollschlager, a

peer from Keene, New Hampshire); (2) evidence regarding Grover's reputation and character

(*see* statements of Trina Ghedoni and Thomas Grover's former stepdaughters, Ms. Collett, and

Mr. Wollschlager); and (3) photographic evidence reflecting Grover's actions with regard to the

money he received after he obtained judgment against the diocese. To support his claim of new

- 3 -

evidence, MacRae also relies on various miscellaneous statements from Mr. Wollschlager, his friends, Leo and Penny Demers, and Ms. Collett. The court will address these pieces of new evidence in turn.

To succeed on a motion for a new trial based upon newly discovered evidence, the petitioner must prove: "(1) that he was not at fault for failing to discover the evidence at the former trial; (2) that the evidence is admissible, material to the merits and not cumulative; and (3) that the evidence is of such a character that a different result will probably be reached upon another trial." *State v. Cossette*, 151 N.H. 355, 361 (2004), citing *State v. Davis*, 143 N.H. 8, 11 (1998).

The petitioner first claims that there is new evidence that supports findings that Tom Grover only made the accusations against MacRae to "get even" with the church and that he lied during his trial testimony. This evidence comes in the form of statements from his ex-wife, Trina Ghedoni, his former stepson, Charles Glenn, a former peer, Steven Wollschlager, and his former therapist, Debra Collett.

Ms. Ghedoni is a convicted felon. In her statement she recites: "After 1994, [Grover] continually stated that he was going to get even with the church." Memorandum of Law in Support of a Petition for Writ of *Habeas Corpus* ("Memorandum"), Exh. A. Charles Glenn, Grover's former stepson is also a convicted felon. He told investigator Abbot that:

> Grover often stated to me that he was going to set MacRae and the church up to gain money for sexual abuse. Grover would laugh and joke about this scheme and after the criminal trial and civil cash award he would again state how he had succeeded in this plot to get cash from the church.

*Id.* at Exh B.

The evidence that the petitioner presents to support the conclusion that Mr. Grover perjured himself during the trial against MacRae includes a statement from Ms. Ghedoni that: "I know he lied at '94 trial about the assault in the rectory as in the trial it was brought out that the

- 4 -

chess set was not purchased until years later." *Id.* at Exh. A. Ms. Ghedoni is talking about por-

tions of Grover's trial testimony that refer to a chess set located in the rectory where MacRae

would abuse him. Ms. Collett, who testified at MacRae's trial, confirmed in her statement to in-

vestigator Abbot that Father "Moe" Rochefort told her that "it was impossible that anyone ob-

served this chess set anywhere in MacRae's room in the year 1983 [like Grover testified] as it

was purchased in Bar Harbor Maine in 1986 while Rochefort, MacRae and three nuns were on

vacation in Bar Harbor, Maine." *Id.* at Exh D. Charles Glenn told investigator Abbot that, "[o]n

several occasions Grover told me that he had never been molested by MacRae." *Id.* at Exh. B. [1]

Finally, Mr. Wollschlager, who grew up in the same area as Grover, to some extent corroborated

these statements of alleged perjury when he told investigator Abbot that: "all the kids in Keene

were aware that the Grover brothers were setting up the church and priests for accusations of mo-

lestation. This was common knowledge among his friends and the subject of many jokes at the

time." *Id.* at Exh. R.

The petitioner cannot meet his burden of establishing that this category of new evidence

meets the standard required to grant him a new trial. First, the evidence is not "new." Each of

these individuals were present either during the investigation or during the trial and were or

would have been available. Indeed, Debra Collett testified at the trial and the state subpoenaed

Mr. Wollschlager to testify and later determined that it would not call him. Memorandum, Exh.

T. Ms. Ghedoni was dating and later married Grover and watched the trial from the gallery.

Charles Glenn is Ghedoni's son, who Grover had contact with both before and during the trial.

---

[1] The respondent has recently filed a supplement to its answer and motion to dismiss in which it
attaches a letter that Charles Glenn sent to the Attorney General's Office. In the letter, Glenn
claims that the petitioner's investigator asked Glenn to lie in his statements and, in return, the
investigator would provide financial assistance to Glenn's mother. Although the petitioner ob-
jects to this filing and states that the claims are without merit, the letter raises serious concerns
about the veracity and credibility of any of Charles Glenn's statements in this case.

- 5 -

Because the petitioner had access to these individuals and counsel could have interviewed them, he cannot meet his burden of showing that he was not, at least, somewhat at fault for the failure to discover this evidence at the time of trial.

Additionally, the allegations that Grover lied about seeing the chess set in the rectory during the abuse do not meet the new evidence standard because they are cumulative. "Cumulative evidence is defined as additional evidence of the same kind to the same point." *State v. Davis*, 143 N.H. 8, 12 (1998). John Karonis testified at trial for the defense that he saw Gordon MacRae with Father "Moe" Rochefort when the two were returning from a vacation in Maine in 1986 or 1987. He remembers MacRae brought the chess set home with him as a souvenir. Trial Transcript ("TT") 8:65. Father Rochefort testified immediately following Mr. Karonis and confirmed that he remembered MacRae purchasing the chess set that stayed in the rectory during their 1986 vacation in Maine. TT 8:71. This testimony, provided at trial, conflicted with Grover's testimony that there was a chess set in the rectory when MacRae abused him in 1983. The statements from Ms. Ghedoni and Ms. Collett regarding the same chess set are therefore cumulative. Consequently, these statements are not new evidence supporting the petitioner's request for a new trial.

Next, the court considers the new evidence pertinent to Grover's reputation among these individuals. Trina Ghedoni told the investigator: "Thomas Grover is a compulsive liar who can tell a lie and stick to it till his end. He molded stories to fit his needs and lied to get what he wanted.... [Grover] is a manipulator and a drama queen." Memorandum, Exh. A. Grover's former stepdaughters related to investigator Abbot their opinions of Grover. Tineesha Glenn "described [Grover] as a 'creep' and a 'pervert' and [stated] that he was constantly eyeing her and her sisters.... [O]nce, she and Shalina awoke and [Grover] was sitting in an easy chair between their beds and staring at them. On another occasion [Grover] fondled Tineesha's breast." *Id.* at

- 6 -

Exh. Z. Grover's other stepdaughter, Shalina Glenn, "described [Grover] as a sick individual who was obsessed with sex and teenage girls." *Id.* at Exh. AA. Finally, Debra Collett spoke about Grover's participation in group therapy sessions. She states "Mr. Grover spent a great deal of time being confronted in [illegible] for his dishonesty, misrepresentation and unwillingness to be honest about his problems." *Id.* at Exh. C.

The new evidence identified by the petitioner is reputation evidence. It does not support his request for a new trial for several reasons. First, the statements from Grover's former stepdaughters are not directed at Grover's character for untruthfulness. *See* N.H. R. Evid. 608. As they involve other bad acts, such testimony would likely be inadmissible character evidence. *See* N.H. R. Evid. 404(b). It is true that much of the rest of the new reputation evidence does go directly to the credibility of Thomas Grover. This does not avail the petitioner. "When the testimony of a newly discovered witness is relevant to only a collateral issue, or would serve only to impeach or discredit a witness, an order directing a new trial is not justified." *State v. Boisvert*, 119 N.H. 174, 177 (1979). Because this evidence only goes to Grover's credibility, it cannot be a ground for a new trial. This is especially true in this instance, given that hammering on the credibility of Thomas Grover was the defendant's primary (if not only) trial strategy.

As explained in the court's order of March 15, 2013, the trial record supports this characterization of the defense strategy. At the beginning of his opening, Attorney Koch told the jury that "[y]ou're going to have to judge the motivation and credibility of Tom Grover in this case based upon what he says from that witness stand...." TT, 1:46. When describing Grover, Koch told the jury:

> Tom not only had a severe alcohol problem ... he had a severe drug problem. I'm talking marijuana, cocaine, amphetamines, crack cocaine, hashish, and other hallucinogenics.... His alcohol problem and his drug abuse problem was so severe that his family could hardly tolerate him, even as a young man.... Tom was abu-

- 7 -

sive physically and verbally, even from the time he was a very young man to the
point that his family couldn't deal with him. They were afraid of him.

TT, 1:52–53. Koch went on to tell the jury that "Tom Grover has a felony conviction and his fel-

ony conviction is that he essentially aided and abetted or was an accomplice to a burglary...."

TT, 1:55–56. With respect to Grover's accusations, Koch told the jury:

> [A]s [Grover] begins to unveil his version of events, he is talked to on many dif-
> ferent occasions by many different people.... [A]s he is speaking to the them and
> giving statements at different points in time in the scenario of events, there are
> changes that take place in the version of events.

TT, 1:59. Based on the totality of the record, it is clear that the defense strategy, and most promi-

nent issue in the trial, was Tom Grover's credibility. Under these circumstances, evidence per-

taining to Tom Grover's reputation, credibility, or the like, is cumulative. Therefore, this evi-

dence is not of the character that warrants a new trial.

The petitioner also contends that evidence regarding what Tom Grover did with the mon-

ey he received from a civil lawsuit award is new evidence warranting a new trial. The court disa-

grees. This evidence, for the most part, comes in the form of photographs depicting members of

Trina Ghedoni's family posing with large sums of cash. Memorandum, Exh. E. Ms. Ghedoni told

investigator Abbot that she cropped Grover out of the photographs but confirmed that the photo-

graphs are from 1996 and depict her children and a few unidentified individuals with money

from Grover's award. *Id.* Even if it could be proved that Grover was present and participating,

the evidence would likely be inadmissible. It does not tend to make any material fact more or

less probable and, for that reason, is likely irrelevant and inadmissible. N.H. R. Evid. 402. There-

fore, the petitioner cannot demonstrate that these photographs rise to the level of new evidence

requiring a new trial.

Finally, the petitioner proffers new evidence in the form of statements from Mr. Woll-

schlager, Ms. Collett, and his friends, Leo and Penny Demers, that do not fit into any of the three

- 8 -

categories of new evidence previously discussed. Mr. Wollschlager made several statements re-
garding corrections he would have made to Detective McLaughlin's report of Wollschlager's
interview. Detective McLaughlin interviewed Mr. Wollschlager as a potential additional victim.
Now, Mr. Wollschlager claims that if he testified at trial "he would have testified that MacRae
never made a single sexual advance or overture towards him." Memorandum, Exh. T. Woll-
schlager claims that Detective McLaughlin paid him to lie. *Id.* at Exhs. R, S. Ms. Collett told in-
vestigator Abbot that Detective McLaughlin and his partner did not "present as an investigator
looking for what information I had to contribute but rather presented as each having made up
their mind and sought to substantiate their belief in Gordon MacRae's guilt." *Id.* at Exh. C. In
another statement, Ms. Collett maintains that her testimony at trial was confusing and misunder-
stood. For example, she maintains that she only meant to testify that Grover alluded to the fact
that he was molested by his stepfather and a clergyman and not that he disclosed the abuse to
her. *Id.* at Exh. D. Finally, the petitioner proffers the statements of his friends, Leo and Penny
Demers, relating to their opinion that Gordon MacRae is innocent and their observations of Tom
Grover's behavior at trial. *Id.* at Exh. W.

    As mentioned, these witnesses' statements are not new evidence because they were all
available at the time of the petitioner's trial. Thus, the petitioner cannot maintain that he is not at
fault for failing to discover these statements.

    Before the petitioner's trial, the state subpoenaed Mr. Wollschlager to testify. Although
he did not ultimately testify at trial, the defense did receive McLaughlin's police reports in dis-
covery, including those detailing the interview with Wollschlager. State's Memorandum of Law
for Denial and Dismissal of Petition, 61, citing State's Discovery, E172–174, E238. As part of
the disclosures the petitioner made to the state at the time, it is apparent that petitioner went

41

- 9 -

through the police reports and annotated them. Additionally, Mr. Wollschlager's statement that

his testimony would focus on the fact that the petitioner never molested him is likely inadmissi-

ble as irrelevant. N.H. R. Evid. 402. The fact that MacRae did not molest Wollschlager has no

bearing on MacRae's guilt in a trial for the abuse of Grover. To the extent that the petitioner was

able to introduce Wollschlager's testimony at the original trial, it likely would have opened the

door to testimony regarding other alleged victims, which the court ruled inadmissible. *See* N.H.

R. Evid. 404(a). For these reasons, these statements fail to meet the standard required for a new

evidence trial.

Ms. Collet's statements are similarly not new evidence because she was available at the

time of trial and the petitioner cannot demonstrate that he was not at fault for failing to discover

this evidence. The state called Ms. Collet as a witness and defense counsel had an opportunity to

cross-examine her. In this way, her statements do not meet the first prong of the new evidence

test. Additionally, though, Ms. Collet's trial testimony includes statements that Grover had trou-

ble in therapy sessions because of his "lack of honesty" and that he only disclosed to her that one

of the perpetrators of abuse against him was a member of the clergy. T Collett: 7, 10. In this way,

Ms. Collett's present statements are cumulative of her trial testimony. Thus, they statements do

not meet the threshold required for a new trial.

The proffered statements of Leo and Penny Demers likewise fall into the category of evi-

dence that the petitioner is at fault for failing to obtain. Penny Demers attended the petitioner's

trial every day and Mr. Demers may have only missed one day. Memorandum, Exh. W. Their

statements largely reflect their opinion that MacRae is not guilty and recount an incident during

the trial where Penny and Leo observed a woman by the name of Pauline Goupil using hand sig-

nals apparently to communicate with Grover while he testified. During a break in the testimony,

42

- 10 -

though, the Demers informed defense counsel of their observations. Counsel informed the court and the judge cleared the courtroom to address their observations. Plainly, this cannot be considered new evidence. Not only were the Demers available to be interviewed—they actually relayed the same statement they offer now to petitioner's trial counsel at the time of trial. Further, their opinion that MacRae is innocent is likely irrelevant and inadmissible. Under the circumstances, these statements cannot be used to support the petitioner's request for a new trial.

Based on the foregoing, the court concludes that the petitioner has not sustained his burden of showing that newly discovered evidence requires a new trial. The evidence presented was either available to the petitioner at the time of trial, is cumulative, or inadmissible. Accordingly, MacRae's petition for writ of *habeas corpus* is DENIED. This ruling renders moot the respondent's motion to dismiss.

**So ORDERED.**

Date: July 9, 2013

**LARRY M. SMUKLER**
**PRESIDING JUSTICE**