# THE STATE OF NEW HAMPSHIRE

**MERRIMACK, SS.**                                                                                                   **SUPERIOR COURT**

Gordon MacRae

v.

Richard Gerry, Warden
New Hampshire State Prison

No. 12-CR-279

### ORDER

The petitioner, Gordon MacRae, seeks a writ of *habeas corpus*. He asks the court to vacate his 1994 convictions for felonious sexual assault and aggravated felonious sexual assault and grant a new trial. The petitioner maintains that his continued incarceration based on these convictions is illegal because trial counsel was ineffective and newly discovered evidence supports his innocence. At a status conference on January 10, 2013, the parties agreed to bifurcate the claim of ineffective assistance and the claim of newly discovered evidence. By order dated March 15, 2013, the court denied the petitioner's request for *habeas* relief based on his claim of ineffective assistance of counsel. At a status conference on April 29, 2013, the parties agreed that the court could decide the remaining issue, whether newly discovered evidence supports the petitioner's request for a new trial, without a hearing. Because the petitioner has failed to meet his burden of demonstrating that newly discovered evidence is of such a character to warrant a new trial, his petition for writ of *habeas corpus* is DENIED. This renders moot the respondent's motion to dismiss.

On April 30, 1993, the grand jury handed down indictments accusing the petitioner, a Catholic priest, of two counts of felonious sexual assault (class B felony) and four counts of ag-

- 2 -

gravated felonious sexual assault (class A felony). The charges were based on the allegations of ▮ who met MacRae in the early 1980s when ▮ mother turned to her church and to him for help with ▮ alcoholism and legal trouble.

The jury trial began on September 12, 1994 and lasted for ten days. MacRae was tried on all four of the class A felony charges and one of the class B charges. On September 23, 1994, the jury returned verdicts of guilty on all counts. On November 14, 1994, the court sentenced MacRae to a prison term of 33.5 to 67 years. Presently, he remains incarcerated.

On September 25, 1995, MacRae filed a direct appeal. The issues included: (1) whether the state impermissibly used the testimony of its expert witness, Doctor Fleischer, to prove that ▮ allegations were true; (2) whether the trial court erred in precluding the defense from cross-examining ▮ with his juvenile convictions; and (3) whether the trial court erred in instructing the jury to disregard certain of ▮ answers to defense questions. The court affirmed. *State v. MacRae*, 141 N.H. 106 (1996). The instant petition followed.

In the second part of his petition for *habeas* relief, MacRae asserts that he is entitled to a new trial based on newly discovered evidence, which was collected by his private investigator, James Abbot. The purported new evidence falls within three general categories: (1) testimony that ▮ bragged about his intention to obtain money from the church and admitted that his testimony at trial was perjured, (*see* statements of ▮ ex-wife, Trina Ghedoni, his former stepson, Charles Glenn, a former counselor, Debra Collett, and Steven Wollschlager, a peer from Keene, New Hampshire); (2) evidence regarding ▮ reputation and character (*see* statements of Trina Ghedoni and ▮ former stepdaughters, Ms. Collett, and Mr. Wollschlager); and (3) photographic evidence reflecting ▮ actions with regard to the money he received after he obtained judgment against the diocese. To support his claim of new

- 3 -

evidence, MacRae also relies on various miscellaneous statements from Mr. Wollschlager, his friends, Leo and Penny Demers, and Ms. Collett. The court will address these pieces of new evidence in turn.

To succeed on a motion for a new trial based upon newly discovered evidence, the petitioner must prove: "(1) that he was not at fault for failing to discover the evidence at the former trial; (2) that the evidence is admissible, material to the merits and not cumulative; and (3) that the evidence is of such a character that a different result will probably be reached upon another trial." *State v. Cossette*, 151 N.H. 355, 361 (2004), citing *State v. Davis*, 143 N.H. 8, 11 (1998).

The petitioner first claims that there is new evidence that supports findings that ▇ ▇ only made the accusations against MacRae to "get even" with the church and that he lied during his trial testimony. This evidence comes in the form of statements from his ex-wife, Trina Ghedoni, his former stepson, Charles Glenn, a former peer, Steven Wollschlager, and his former therapist, Debra Collett.

Ms. Ghedoni is a convicted felon. In her statement she recites: "After 1994, ▇ continually stated that he was going to get even with the church." Memorandum of Law in Support of a Petition for Writ of *Habeas Corpus* ("Memorandum"), Exh. A. Charles Glenn, ▇ former stepson is also a convicted felon. He told investigator Abbot that:

> ▇ often stated to me that he was going to set MacRae and the church up to gain money for sexual abuse. ▇ would laugh and joke about this scheme and after the criminal trial and civil cash award he would again state how he had succeeded in this plot to get cash from the church.

*Id.* at Exh B.

The evidence that the petitioner presents to support the conclusion that Mr. ▇ perjured himself during the trial against MacRae includes a statement from Ms. Ghedoni that: "I know he lied at '94 trial about the assault in the rectory as in the trial it was brought out that the

- 4 -

chess set was not purchased until years later." *Id.* at Exh. A. Ms. Ghedoni is talking about portions of ▇▇▇ trial testimony that refer to a chess set located in the rectory where MacRae would abuse him. Ms. Collett, who testified at MacRae's trial, confirmed in her statement to investigator Abbot that Father "Moe" Rochefort told her that "it was impossible that anyone observed this chess set anywhere in MacRae's room in the year 1983 [like ▇▇▇ testified] as it was purchased in Bar Harbor Maine in 1986 while Rochefort, MacRae and three nuns were on vacation in Bar Harbor, Maine." *Id.* at Exh D. Charles Glenn told investigator Abbot that, "[o]n several occasions ▇▇▇ told me that he had never been molested by MacRae." *Id.* at Exh. B.[1] Finally, Mr. Wollschlager, who grew up in the same area as ▇▇▇ to some extent corroborated these statements of alleged perjury when he told investigator Abbot that: "all the kids in Keene were aware that the ▇▇▇ brothers were setting up the church and priests for accusations of molestation. This was common knowledge among his friends and the subject of many jokes at the time." *Id.* at Exh. R.

The petitioner cannot meet his burden of establishing that this category of new evidence meets the standard required to grant him a new trial. First, the evidence is not "new." Each of these individuals were present either during the investigation or during the trial and were or would have been available. Indeed, Debra Collett testified at the trial and the state subpoenaed Mr. Wollschlager to testify and later determined that it would not call him. Memorandum, Exh. T. Ms. Ghedoni was dating and later married ▇▇▇ and watched the trial from the gallery. Charles Glenn is Ghedoni's son, who ▇▇▇ had contact with both before and during the trial.

---

[1] The respondent has recently filed a supplement to its answer and motion to dismiss in which it attaches a letter that Charles Glenn sent to the Attorney General's Office. In the letter, Glenn claims that the petitioner's investigator asked Glenn to lie in his statements and, in return, the investigator would provide financial assistance to Glenn's mother. Although the petitioner objects to this filing and states that the claims are without merit, the letter raises serious concerns about the veracity and credibility of any of Charles Glenn's statements in this case.

- 5 -

Because the petitioner had access to these individuals and counsel could have interviewed them, he cannot meet his burden of showing that he was not, at least, somewhat at fault for the failure to discover this evidence at the time of trial.

Additionally, the allegations that ▮▮▮ lied about seeing the chess set in the rectory during the abuse do not meet the new evidence standard because they are cumulative. "Cumulative evidence is defined as additional evidence of the same kind to the same point." *State v. Davis*, 143 N.H. 8, 12 (1998). John Karonis testified at trial for the defense that he saw Gordon MacRae with Father "Moe" Rochefort when the two were returning from a vacation in Maine in 1986 or 1987. He remembers MacRae brought the chess set home with him as a souvenir. Trial Transcript ("TT") 8:65. Father Rochefort testified immediately following Mr. Karonis and confirmed that he remembered MacRae purchasing the chess set that stayed in the rectory during their 1986 vacation in Maine. TT 8:71. This testimony, provided at trial, conflicted with ▮▮▮ testimony that there was a chess set in the rectory when MacRae abused him in 1983. The statements from Ms. Ghedoni and Ms. Collett regarding the same chess set are therefore cumulative. Consequently, these statements are not new evidence supporting the petitioner's request for a new trial.

Next, the court considers the new evidence pertinent to ▮▮▮ reputation among these individuals. Trina Ghedoni told the investigator: "▮▮▮ is a compulsive liar who can tell a lie and stick to it till his end. He molded stories to fit his needs and lied to get what he wanted.... [▮▮▮ is a manipulator and a drama queen." Memorandum, Exh. A. ▮▮▮ former stepdaughters related to investigator Abbot their opinions of ▮▮▮. Tineesha Glenn "described ▮▮▮ as a 'creep' and a 'pervert' and [stated] that he was constantly eyeing her and her sisters.... [O]nce, she and Shalina awoke and [▮▮▮ was sitting in an easy chair between their beds and staring at them. On another occasion [▮▮▮] fondled Tineesha's breast." *Id.* at

-6-

Exh. Z. ▮ other stepdaughter, Shalina Glenn, "described ▮ as a sick individual who was obsessed with sex and teenage girls." *Id.* at Exh. AA. Finally, Debra Collett spoke about ▮ participation in group therapy sessions. She states "Mr. ▮ spent a great deal of time being confronted in [illegible] for his dishonesty, misrepresentation and unwillingness to be honest about his problems." *Id.* at Exh. C.

The new evidence identified by the petitioner is reputation evidence. It does not support his request for a new trial for several reasons. First, the statements from ▮ former stepdaughters are not directed at ▮ character for untruthfulness. *See* N.H. R. Evid. 608. As they involve other bad acts, such testimony would likely be inadmissible character evidence. *See* N.H. R. Evid. 404(b). It is true that much of the rest of the new reputation evidence does go directly to the credibility of ▮. This does not avail the petitioner. "When the testimony of a newly discovered witness is relevant to only a collateral issue, or would serve only to impeach or discredit a witness, an order directing a new trial is not justified." *State v. Boisvert*, 119 N.H. 174, 177 (1979). Because this evidence only goes to ▮ credibility, it cannot be a ground for a new trial. This is especially true in this instance, given that hammering on the credibility of ▮ was the defendant's primary (if not only) trial strategy.

As explained in the court's order of March 15, 2013, the trial record supports this characterization of the defense strategy. At the beginning of his opening, Attorney Koch told the jury that "[y]ou're going to have to judge the motivation and credibility of ▮ in this case based upon what he says from that witness stand...." TT, 1:46. When describing ▮ Koch told the jury:

> ▮ not only had a severe alcohol problem ... he had a severe drug problem. I'm talking marijuana, cocaine, amphetamines, crack cocaine, hashish, and other hallucinogenics.... His alcohol problem and his drug abuse problem was so severe that his family could hardly tolerate him, even as a young man.... ▮ was abu-

sive physically and verbally, even from the time he was a very young man to the point that his family couldn't deal with him. They were afraid of him.

TT, 1:52–53. Koch went on to tell the jury that "▆▆▆▆ has a felony conviction and his felony conviction is that he essentially aided and abetted or was an accomplice to a burglary...."

TT, 1:55–56. With respect to ▆▆▆ accusations, Koch told the jury:

> [A]s ▆▆▆ begins to unveil his version of events, he is talked to on many different occasions by many different people.... [A]s he is speaking to the them and giving statements at different points in time in the scenario of events, there are changes that take place in the version of events.

TT, 1:59. Based on the totality of the record, it is clear that the defense strategy, and most prominent issue in the trial, was ▆▆▆▆ credibility. Under these circumstances, evidence pertaining to ▆▆▆▆ reputation, credibility, or the like, is cumulative. Therefore, this evidence is not of the character that warrants a new trial.

The petitioner also contends that evidence regarding what ▆▆▆▆ did with the money he received from a civil lawsuit award is new evidence warranting a new trial. The court disagrees. This evidence, for the most part, comes in the form of photographs depicting members of Trina Ghedoni's family posing with large sums of cash. Memorandum, Exh. E. Ms. Ghedoni told investigator Abbot that she cropped ▆▆▆ out of the photographs but confirmed that the photographs are from 1996 and depict her children and a few unidentified individuals with money from ▆▆▆ award. *Id.* Even if it could be proved that ▆▆▆ was present and participating, the evidence would likely be inadmissible. It does not tend to make any material fact more or less probable and, for that reason, is likely irrelevant and inadmissible. N.H. R. Evid. 402. Therefore, the petitioner cannot demonstrate that these photographs rise to the level of new evidence requiring a new trial.

Finally, the petitioner proffers new evidence in the form of statements from Mr. Wollschlager, Ms. Collett, and his friends, Leo and Penny Demers, that do not fit into any of the three

categories of new evidence previously discussed. Mr. Wollschlager made several statements regarding corrections he would have made to Detective McLaughlin's report of Wollschlager's interview. Detective McLaughlin interviewed Mr. Wollschlager as a potential additional victim. Now, Mr. Wollschlager claims that if he testified at trial "he would have testified that MacRae never made a single sexual advance or overture towards him." Memorandum, Exh. T. Wollschlager claims that Detective McLaughlin paid him to lie. *Id.* at Exhs. R, S. Ms. Collett told investigator Abbot that Detective McLaughlin and his partner did not "present as an investigator looking for what information I had to contribute but rather presented as each having made up their mind and sought to substantiate their belief in Gordon MacRae's guilt." *Id.* at Exh. C. In another statement, Ms. Collett maintains that her testimony at trial was confusing and misunderstood. For example, she maintains that she only meant to testify that ▇▇▇ alluded to the fact that he was molested by his stepfather and a clergyman and not that he disclosed the abuse to her. *Id.* at Exh. D. Finally, the petitioner proffers the statements of his friends, Leo and Penny Demers, relating to their opinion that Gordon MacRae is innocent and their observations of ▇▇▇ behavior at trial. *Id.* at Exh. W.

As mentioned, these witnesses' statements are not new evidence because they were all available at the time of the petitioner's trial. Thus, the petitioner cannot maintain that he is not at fault for failing to discover these statements.

Before the petitioner's trial, the state subpoenaed Mr. Wollschlager to testify. Although he did not ultimately testify at trial, the defense did receive McLaughlin's police reports in discovery, including those detailing the interview with Wollschlager. State's Memorandum of Law for Denial and Dismissal of Petition, 61, citing State's Discovery, E172–174, E238. As part of the disclosures the petitioner made to the state at the time, it is apparent that petitioner went

- 9 -

through the police reports and annotated them. Additionally, Mr. Wollschlager's statement that his testimony would focus on the fact that the petitioner never molested him is likely inadmissible as irrelevant. N.H. R. Evid. 402. The fact that MacRae did not molest Wollschlager has no bearing on MacRae's guilt in a trial for the abuse of ▮▮▮ To the extent that the petitioner was able to introduce Wollschlager's testimony at the original trial, it likely would have opened the door to testimony regarding other alleged victims, which the court ruled inadmissible. *See* N.H. R. Evid. 404(a). For these reasons, these statements fail to meet the standard required for a new evidence trial.

Ms. Collet's statements are similarly not new evidence because she was available at the time of trial and the petitioner cannot demonstrate that he was not at fault for failing to discover this evidence. The state called Ms. Collet as a witness and defense counsel had an opportunity to cross-examine her. In this way, her statements do not meet the first prong of the new evidence test. Additionally, though, Ms. Collet's trial testimony includes statements that ▮▮▮ had trouble in therapy sessions because of his "lack of honesty" and that he only disclosed to her that one of the perpetrators of abuse against him was a member of the clergy. T Collett: 7, 10. In this way, Ms. Collett's present statements are cumulative of her trial testimony. Thus, they statements do not meet the threshold required for a new trial.

The proffered statements of Leo and Penny Demers likewise fall into the category of evidence that the petitioner is at fault for failing to obtain. Penny Demers attended the petitioner's trial every day and Mr. Demers may have only missed one day. Memorandum, Exh. W. Their statements largely reflect their opinion that MacRae is not guilty and recount an incident during the trial where Penny and Leo observed a woman by the name of Pauline Goupil using hand signals apparently to communicate with ▮▮▮ while he testified. During a break in the testimony,

- 10 -

though, the Demers informed defense counsel of their observations. Counsel informed the court and the judge cleared the courtroom to address their observations. Plainly, this cannot be considered new evidence. Not only were the Demers available to be interviewed—they actually relayed the same statement they offer now to petitioner's trial counsel at the time of trial. Further, their opinion that MacRae is innocent is likely irrelevant and inadmissible. Under the circumstances, these statements cannot be used to support the petitioner's request for a new trial.

Based on the foregoing, the court concludes that the petitioner has not sustained his burden of showing that newly discovered evidence requires a new trial. The evidence presented was either available to the petitioner at the time of trial, is cumulative, or inadmissible. Accordingly, MacRae's petition for writ of *habeas corpus* is DENIED. This ruling renders moot the respondent's motion to dismiss.

**So ORDERED.**

Date: July 9, 2013

*Larry M. Smukler*

**LARRY M. SMUKLER**
**PRESIDING JUSTICE**