UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * *
                                *
     GORDON J. MACRAE           *
                                *   14-CV-45-JL
          v.                    *   March 17, 2015
                                *   10:35 a.m.
NEW HAMPSHIRE STATE PRISON      *
WARDEN, RICHARD M. GERRY        *
                                *
* * * * * * * * * * * * * * * * *


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE


APPEARANCES:


For the Petitioner:      Robert Rosenthal, Esq.
                         Rosenthal Law Office

                         Cathy J. Green, Esq.
                         Green & Utter



For the Respondent:      Elizabeth C. Woodcock, Esq.
                         NH Attorney General's Office




Court Reporter:          Susan M. Bateman, LCR, RPR, CRR
                         Official Court Reporter
                         United States District Court
                         55 Pleasant Street
                         Concord, NH 03301
                         (603) 225-1453

```
 1                    P R O C E E D I N G S

 2           THE CLERK:  The Court has before it for

 3   consideration today a motion hearing in civil case number

 4   14-CV-45-JL, Gordon MacRae versus New Hampshire Department of

 5   Corrections.

 6           THE COURT:  All right.  Good morning everyone.

 7   We're here for a motion hearing, a motion to dismiss this

 8   habeas corpus petition.

 9           Why don't counsel identify themselves for the

10   record and we'll proceed.

11           MS. WOODCOCK:  Elizabeth Woodcock for the Warden,

12   your Honor.

13           MR. ROSENTHAL:  Robert Rosenthal for Gordon MacRae.

14           MS. GREEN:  And Cathy Green for Mr. MacRae.

15           THE COURT:  Thank you.

16           A couple of housekeeping matters first.  First of

17   all -- I want to apologize first of all.  I made a disclosure

18   last night on the docket.  There's something that I didn't

19   realize until very late in my consideration of this motion,

20   which is that I was employed at the Attorney General's Office

21   for the State of New Hampshire during the time that office

22   handled the appeal, the direct appeal, from Mr. MacRae's

23   conviction.  It looks like it was in 1996, or thereabouts,

24   and I was employed there as a prosecutor.

25              I didn't have any recollection of it.  I didn't
```

1   have any recollection of the office handling it or anybody

2   there handling it or any discussions, but I thought it was

3   important to make the parties aware of that.

4          I wanted to first ask if either side had any kind

5   of request for relief based on that disclosure.

6          MS. WOODCOCK:  Not for the Warden.  Thank you, your

7   Honor.

8          MS. GREEN:  And not for Mr. MacRae.  We've

9   conferred with Mr. MacRae who indicates that he has no

10   problem at all with the Court remaining on the case.

11          THE COURT:  All right.  Then we'll proceed.

12          Now, this motion -- the argument behind this motion

13   is the case is time barred, all right, as we all know.

14          I just want to make sure I'm framing the issue

15   correctly because I think I understand both prongs of Mr.

16   MacRae's argument, but I want to be positive that I do.

17          It seems that you have two arguments as to why the

18   case isn't time barred.  One is that the time bar just

19   doesn't apply because of a claim based on actual innocence.

20   That one is easier for me to wrap my mind around.

21          The other one is basically, if I understand

22   correctly, that the case is not time barred.  You devote much

23   less time with that in your brief, and it's basically because

24   your argument is that it's newly discovered evidence, it's a

25   newly discovered evidence claim, and basically you didn't

1    appreciate that the newly discovered evidence was sufficient

2    to file the motion until a certain -- the petition until a

3    certain time.  And when you did, when you were satisfied,

4    that's when you filed.  Do I understand that correctly?

5            MR. ROSENTHAL:  That's correct, your Honor.  And

6    that's about as much time as I'm going to devote on that here

7    as well.

8            THE COURT:  Yeah.  Let me just -- let me put it

9    bluntly then.  It's hard to take that argument seriously

10   based on the way you've presented it, but if you want me to I

11   mean I can engage it the best I can.

12           Did I state it at least correctly?

13           MR. ROSENTHAL:  Yes.  And having stated it, I think

14   we're good.  I think we can move to the actual innocence

15   argument.

16           THE COURT:  Okay.  Can I assume then just for

17   purposes of this argument though -- because my usual practice

18   is to either rule from the bench on these or at least give a

19   pretty good indication of where I'm leaning.  I view that --

20   you didn't cite this provision in the objection to the

21   motion.  It looks like it's under 22 USC -- 28 USC

22   2244(d)(1)(D), which reads that, "A 1-year period of

23   limitation shall apply to an application for a writ of habeas

24   corpus by a person in custody pursuant to the judgment of a

25   State court.  The limitation period shall run from the latest

1    of --" and the provision number is (D) "the date on which the

2    factual predicate of the claim or claims presented could have

3    been discovered through the exercise of due diligence."

4            That's the only one I can fit it under.  It seems

5    to fit pretty nice under that one.  Is that fair?

6            MR. ROSENTHAL:  Yes.

7            THE COURT:  Fair enough.  All right.  I know you

8    didn't want to devote any more time to it.  I just wanted to

9    make a record of what your argument is.  Okay.  So you want

10   to talk then about actual innocence.

11           Even though it's your motion, in this type of

12   situation this is really Mr. MacRae's burden so I'm going to

13   let him address it.  Please.

14           MR. ROSENTHAL:  Thank you.  It is a motion to

15   dismiss for untimely, which is essentially a 12(b)(6) motion

16   is how that's treated in habeas.  So we need to plead

17   adequately.  Our first contention is this actual innocence

18   contention.

19           THE COURT:  I don't know if I agree with that.  I

20   mean I hate to interrupt you already.

21           MR. ROSENTHAL:  Please.

22           THE COURT:  I don't think it's a pleading type of

23   analysis necessarily.  I understand it's a motion to dismiss,

24   but it's a motion to -- you have the burden of showing

25   that -- you have the burden of establishing actual innocence

1    such that this case isn't time barred.  That's not a

2    pleading.  That's something you need to -- and you have

3    presented evidence.  You've attached a lot of evidence to

4    your petition and your objection, but I don't view that as a

5    pleading analysis.  Am I wrong about that?

6              MR. ROSENTHAL:  I think the relief that's requested

7    is to dismiss the petition for being time barred.

8              THE COURT:  Yeah.

9              MR. ROSENTHAL:  That's the 12(b)(6).  The time bar

10   is an element of the habeas statute.  So if we've not met an

11   element, we've not sufficiently pled the case.

12             As far as this motion, have we pled properly, we

13   have pled the actual innocence and we have pled the

14   independent state ground, and I can talk about why we've

15   properly pled it, but I don't think the Court can reach for

16   the purpose of this motion the merits of that.  That would be

17   a response on the merits that we have not pled actual

18   innocence.

19             THE COURT:  You don't think I can reach whether

20   you've satisfied the actual innocence standard today?

21             MR. ROSENTHAL:  I don't think so.  I don't think

22   that's what the motion is about.  And to satisfy that, as an

23   example, the state court in reviewing the new evidence never

24   issued a decision on the credibility, findings on the

25   credibility of the witnesses.

1          It took what the witnesses said, put them into

2     categories of reputation, impeachment and various things and

3     said this doesn't satisfy New Hampshire's newly discovered

4     evidence requirements, but it never said these people are

5     telling the truth, they're not telling the truth, I agree

6     with them, I don't agree with them.  So there's no finding of

7     fact concerning their credibility.

8          And so for this Court -- this Court sees that de

9     novo, there's no factual finding, so I don't think you can

10    rule on the merits of have we proved actual innocence today.

11         THE COURT:  But that would mean then that as long

12    as you pled, as long as you mouthed the words, in your

13    complaint actual innocence and offered some type of evidence,

14    then you survive this motion.  That's your position?

15         MR. ROSENTHAL:  The motion to dismiss on the

16    pleadings, yeah.  This is a motion to dismiss on the

17    pleadings.  If this was an answer, we would be here dealing

18    with the factual issues as well.  But this is just have we

19    pled this properly, and we have pled it, the gateway, which

20    is the McQuiggen issue of actual innocence, and we have pled

21    the independent constitutional ground, which is the

22    ineffective assistance.

23         So really what we would be talking about here, as I

24    see it, is have we pled the components of both.  Have we

25    actually pled ineffective assistance, have we actually pled

1    the actual innocence, and have we made an offer.

2            Our pleadings must be assumed as true.  The facts

3    alleged by us must be alleged as true unless there's a

4    contrary finding of fact by the state court, which there is

5    not, when it comes to the credibility of these people, which

6    is what your determination on actual innocence would be based

7    on.

8            THE COURT:  I have to admit I didn't review Judge

9    Smukler's order on the actual innocence.  He has two orders.

10            MR. ROSENTHAL:  Correct.

11            THE COURT:  One on ineffective assistance and one

12    on actual innocence.

13            MR. ROSENTHAL:  Correct.

14            THE COURT:  And I didn't really view that as a

15    group of factual findings or not.  You say they're not.

16            MR. ROSENTHAL:  They're not.  And it's a very

17    short -- I mean it's longer than I would read to you, but

18    it's I think three or four pages at most of his decision.

19            THE COURT:  I have the order right here.  I have it

20    right in front of me.

21            MR. ROSENTHAL:  But there's nothing about the

22    credibility.  He mentions that two of them have a criminal

23    record, and then he categorizes the evidence and finds that

24    it wouldn't be admissible in New Hampshire for the purpose of

25    newly discovered evidence.

1                McQuiggen and Schlup that it's based on don't limit

2      you.  You're not limited by the evidentiary grounds for the

3      evidence that comes in in considering actual innocence.  You

4      are not limited by is this admissible at trial or is it not.

5                THE COURT:  That's a state standard, yeah, that I

6      think that he was applying.

7                MR. ROSENTHAL:  Yeah.

8                THE COURT:  It's just that -- I mean actual

9      innocence is a judicially created exception, isn't it, to the

10     deadline, right?

11               MR. ROSENTHAL:  It existed prior to the AEDPA.  It

12     is the equitable relief of a habeas.

13               THE COURT:  There you go.

14               MR. ROSENTHAL:  So it's the spirit of habeas

15     actually.  So it's not -- it's not created by statute.

16               THE COURT:  Right.

17               MR. ROSENTHAL:  It's created by -- Schlup was the

18     first one and then McQuiggen two years ago.

19               THE COURT:  Right.  And you don't see it as your

20     burden today to establish just a sufficient showing of actual

21     innocence to defeat the motion?  I just don't know if I agree

22     with that, but I'll let you proceed.

23               MR. ROSENTHAL:  We're on the pleadings.  Unless I

24     can somehow get you to make factual findings on the

25     credibility of witnesses without having the witnesses

1   fleshing all this out further.

2           THE COURT:  I have opinions about the credibility

3   of these witnesses.  How could one not reading what you

4   presented.  You've presented a lot of evidence.  But that

5   credibility assessment wouldn't be based on a lack of

6   testimony.  You're not presenting any, and you're basically

7   telling me you don't think you have to.

8           MR. ROSENTHAL:  For the purposes of this motion

9   only.  For you to get to the merits I think is a bigger deal.

10          THE COURT:  The merits of your habeas petition or

11  the merits of your actual innocence claim subject for removal

12  from the time bar?

13          MR. ROSENTHAL:  For the actual innocence claim as

14  well.

15          THE COURT:  Okay.

16          MR. ROSENTHAL:  I think there's de novo findings

17  that need to be made here on that evidence that we've

18  offered.  We've made a showing.  It is just a component of

19  the habeas pleading.

20          THE COURT:  Let's talk about -- let me put that

21  aside for a minute and let me ask you this.

22          My understanding is that basically the universe of

23  new evidence you're talking about, and you repeated this in

24  your memorandum a couple of times, really are the statements

25  of the ex-wife and the stepson that you say -- I don't want

1    to be dismissive of it -- that you characterize as

2    recantations, right?

3              MR. ROSENTHAL:  No.  They didn't testify in the

4    first place so they wouldn't have recanted.

5              THE COURT:  Not that they recanted.  That they say

6    the victim recanted.

7              MR. ROSENTHAL:  Yes, yes.  Admissions of perjury --

8    well, recantations.  If he said it before he testified, it

9    wouldn't be a -- if he told them that before he testified, it

10   wouldn't be a recantation.

11             THE COURT:  They're inconsistent statements, right?

12             MR. ROSENTHAL:  Yes.

13             THE COURT:  All right.  But that's it.  For your

14   new evidence claim, that's the new evidence?

15             MR. ROSENTHAL:  Yes.

16             THE COURT:  That this man has basically stated that

17   this didn't happen.  And that comes through two witnesses,

18   stepson and ex-wife.

19             MR. ROSENTHAL:  Yes.  And you're also permitted,

20   because you're not bound by the New Hampshire criteria, to

21   consider the evidence of the other -- statements that were

22   taken from other witnesses, being the stepdaughters.

23   Everything that we put in that we didn't have at trial.

24             So the stepdaughters is one.  The contemporaries.

25   His ex-wife.  His stepson.  I'm blanking on whether there was

1  another.  And it's considering that, and it's considering

2  that in the context of everything else that happened at

3  trial.

4          THE COURT:  Sure.

5          MR. ROSENTHAL:  Innocence is the overall and it

6  also needs to be looked at, and that's the thing which

7  actually was in the State's papers that I didn't catch at

8  first, how interrelated these are.

9          It's also looking at the independent constitutional

10  ground that we've alleged needs to be looked at also because

11  it's the strength of the trial, and we've alleged that --

12  this is not a perfect trial.  We have alleged the

13  constitutional ineffective assistance claim of defense

14  counsel triggering all that evidence and all the rest of

15  that.  So all of this needs to be considered in a cumulative

16  way.

17          THE COURT:  It sounds like you're trying to say

18  that we really can't -- I don't know.  This investigation, as

19  far as I can tell, wrapped up in 2009 pretty much.  The last

20  interview that Abbott conducted was in 2009.

21          MR. ROSENTHAL:  That we submitted, yes.

22          THE COURT:  Well, how else would I know about it?

23          MR. ROSENTHAL:  Right.

24          THE COURT:  Okay.  Your burden is to show -- you

25  have two burdens.  One of them is timely that we've already

1   talked about.  That newly discovered evidence was known to

2   you but not known to you in a satisfactory way you claim

3   until within a year of filing your petition.

4            And then there's this actual innocence claim.  It's

5   the evidence of actual innocence, right?  I'm looking at your

6   motion, your -- let me see here, your response to the motion

7   to dismiss, all right, page 16.  "The new evidence is

8   Grover's statements that MacRae did nothing to him, which

9   proves MacRae's innocence."  Those statements come through

10  two people, ex-wife and stepson, right?

11           MR. ROSENTHAL:  Those statements, yes.

12           THE COURT:  Well, you say the new evidence is --

13           MR. ROSENTHAL:  Right.

14           THE COURT:  This is you talking.

15           MR. ROSENTHAL:  We described it all.  And I think

16  you just read to me a typo from my brief.

17           THE COURT:  Oh, really?

18           MR. ROSENTHAL:  I think so.  No.

19           THE COURT:  It could be the way I read it.

20           MR. ROSENTHAL:  It doesn't matter.  But we talk

21  about all of it in the brief, the daughters and all that

22  stuff.  It's all in the habeas petition.

23           THE COURT:  Oh, that's all there.  But see, I'm

24  trying to -- to the extent you're trying to do a kitchen sink

25  approach here, I'm not inclined to permit that because I'm

1  trying to hold you to what you say.

2          MR. ROSENTHAL:  Right.

3          THE COURT:  Now, I'm not trying to restrict what

4  you're allowed to say.  I'm trying to say what you said to

5  me.  Page 17, your brief, "The newly discovered evidence

6  comes from those closest to Grover at the time of trial.  It

7  obliterates the State's case."

8          I'm reading from your brief, page 17, document

9  number 14.  "The newly discovered evidence comes from those

10 closest to Grover at the time of trial.  It obliterates the

11 State's case and reveals MacRae's innocence.  Grover admitted

12 to them that he had hatched a scheme to extort money from the

13 diocese.  He boasted to his inner circle that his claims were

14 lies," et cetera, et cetera.  "His conduct after the

15 conviction -- when Grover received his payment and abandoned

16 the role of victim -- corroborates their reports of Grover's

17 confessions.  Simply, Grover confessed that MacRae is

18 innocent."

19         There's nothing in your papers, and I've looked

20 closely, on which you're basing a claim of actual innocence

21 besides that.  That's the evidence of actual innocence that

22 you need to persuade me lifts the time bar in this case.

23         The other stuff I don't understand -- if you are

24 arguing the other stuff, I don't see it in your papers.  Why

25 don't you show me it in your papers besides just listing all

1   of this evidence that you have listed effectively.  You've

2   listed a lot of evidence, but you are careful, and I thought

3   you were trying to present an argument with integrity,

4   frankly, that my evidence of actual innocence is this.

5         The other stuff about how he behaves towards -- how

6   he's creepy around teenage girls and the like, I don't know

7   how that's -- it doesn't sound to me like you're seriously

8   advancing that as evidence of actual innocence.  I'm right

9   about that, right?

10        MR. ROSENTHAL:  Yes.  Absolutely.

11        THE COURT:  Okay.

12        MR. ROSENTHAL:  There is though -- you said

13  obviously what I said.  It does all need to be considered in

14  the strength of the State's case in the first place

15  generally.

16        THE COURT:  Yeah.

17        MR. ROSENTHAL:  As far as how we pled it, we have

18  pled it and we have offered the evidence that we will present

19  on the merits.

20        It does seem like a big case to be decided on did

21  we plead it properly, but it's a motion on the pleadings.

22        THE COURT:  Really?  Okay.

23        MR. ROSENTHAL:  I mean this motion is on the

24  pleadings.  It is a motion to dismiss rather than --

25        THE COURT:  No, it isn't really on the pleadings.

1    It's like a statute of limitations case, right?  It's on your

2    ability to escape the time bar which clearly -- if you can't

3    prove it was timely under what you were talking about before,

4    let me see, 2244(d)(1)(D), it's not really the pleadings.

5    It's whether your case is time barred, and that depends on

6    your ability to show actual innocence, to demonstrate a

7    sufficient showing of actual innocence subject to lift the

8    time bar.  It's not on the pleadings.  What authority is

9    there for that proposition?

10           MR. ROSENTHAL:  Well, a motion to dismiss in a

11   federal habeas is deemed a 12(b)(6) motion unless that's

12   contrary to habeas corpus, which is why it's deemed a

13   12(b)(6) motion because it's not contrary.  Time is an

14   element of the statute.  So it's a failure to plead.  We've

15   offered grounds that the time bar should be --

16           THE COURT:  Should not apply.

17           MR. ROSENTHAL:  -- avoided.  Should not apply.

18   Hat's what we're required to do on this motion.  Had it been

19   an answer, we would be doing a different thing.  We would be

20   looking at different issues.  We would be looking at people.

21           And the same with the -- we also have to prove --

22   to pass the time bar we need to show that we have an

23   independent constitutional ground.

24           So they sort of go -- and that's what I didn't

25   quite understand.  The State explained that to me.  These two

1    are linked.  We can only argue actual innocence if we're

2    properly arguing ineffective assistance.  We sort of have to

3    consider the merits together, but I don't think on this

4    motion we're making findings of fact.

5              THE COURT:  Okay.  All right.  I interrupted you.

6              MR. ROSENTHAL:  Well, I can go on into how we've

7    properly pled the ineffective assistance, or do you not want

8    to get there yet?  But again, my argument will be that it's

9    properly pled.  I'm not going to argue to you that you should

10   make the finding of fact of was there ineffective assistance

11   or not.

12             THE COURT:  All right.

13             MR. ROSENTHAL:  Because my argument is that the

14   trial court didn't follow clearly established federal law,

15   and that being the case there's again de novo findings that

16   need to be made here as well.  And this Court would have to

17   apply the appropriate standard which was not before.  So

18   obviously I'm prepared to do that, if you want.

19             THE COURT:  Not yet.  Let me hear from the

20   prosecutor about that.  Okay.

21             MS. WOODCOCK:  Thank you, your Honor.  I guess

22   listening to the Court and the petitioner's counsel I'm a

23   little bit confused as to where we actually are.

24             Our position is that the conviction was final in

25   1996.  Nothing happened in this court for a couple of

1    decades, or nearly a couple of decades.  The last interview

2    took place on August 27, 2009.

3            So even if that is newly discovered evidence, which

4    the Warden does not concede it is, the petition is time

5    barred because the petitioner did nothing.  He didn't file

6    anything in state court until after the time had expired for

7    filing in this court.

8            THE COURT:  What do you say to his argument that it

9    took some time for his legal team to become satisfied that

10   there were grounds -- that the newly discovered evidence

11   standard could be satisfied?

12           MS. WOODCOCK:  Well, first of all, I don't concede

13   that it's newly discovered evidence.  But even if it is, this

14   is not a complicated issue.  This is -- the witness is saying

15   that the victim was lying.  That's no surprise.  That was

16   really examined very carefully during the course of the

17   trial.  The victim was on the stand for several days being

18   cross-examined.  His credibility being repeatedly challenged.

19           The allegation that the petitioner had not bought

20   this chess set at the time that the victim said he saw it,

21   you know, there were a number of different things that were

22   explored by the defense.

23           These latter-day comments that, oh, the victim said

24   at some point I made it all up years after the trial took

25   place to me is not newly discovered evidence, and there's

1  nothing from the victim.  These are just statements that

2  these people made under unusual circumstances.

3       I mean in one of the cases the investigator had

4  loaned the woman money.  Something that was not disclosed to

5  the state court for some time.

6       THE COURT:  Yeah.

7       MS. WOODCOCK:  It's a situation in which the

8  petitioner is attempting to kind of bootstrap these late

9  statements to cover the argument that he just didn't file

10  with this court within -- you know, if it were a matter of a

11  couple of months even I might understand it, but this is

12  years later.

13       THE COURT:  Understood.  All right.

14       Do you agree that because this is a motion to

15  dismiss I am limited to evaluating whether his pleadings

16  sufficiently allege actual innocence subject to escape the

17  time bar at least at this stage?

18       MS. WOODCOCK:  Well, I think that it's at least a

19  two-step process.  The Court first has to decide that the

20  petition is time barred, and then I think the Court has to

21  look to see if the petitioner has made really kind of a

22  believable claim of actual innocence, one that this Court

23  could actually entertain, and it can't be --

24       THE COURT:  Sort of a plausible allegation, like

25  under the Iqbal/Twombley standard?  Is that your point?

1          MS. WOODCOCK:  Well, plausible in the sense that it

2   constitutes a federal constitutional claim.  It can't just

3   be, well, if you don't believe the victim, because it's not

4   this Court's position to be assessing credibility.  It's

5   whether the -- because the Court can't.  We don't bring the

6   trial back in here and retry the case.  So it's not this

7   Court's role to say is this -- was this victim believable.

8   It's the Court's role to say, based on what the petitioner

9   has put forward is this a claim that raises a federal

10  constitutional right; in which case the Court has to sort of

11  consider, well, have they made out a claim of ineffective

12  assistance of counsel that would be sufficient to toll the --

13  to reset the clock so that --

14          THE COURT:  I must be on a different planet.  I

15  thought in order to -- I understand your point, but at the

16  end of the day this is about whether there's a federally

17  cognizable, you know, constitutional claim here.

18          But to get to that analysis someone has to make a

19  showing of actual innocence based on newly discovered

20  evidence or something.

21          MS. WOODCOCK:  That's right.

22          THE COURT:  Right.  Now, the law says that I'm

23  supposed to view that in the context of the trial, you're

24  right about that, but that means looking at all the evidence.

25  In other words, deciding whether a juror could actually

1    acquit this defendant.  That's the standard.  That's the

2    standard on actual innocence, whether a juror could acquit

3    this defendant, and that is looking at the new evidence in

4    light of the trial evidence.  Evidence.

5         MS. WOODCOCK:  Well, the Court has to have -- it's

6    not as simple as just saying, oh, do I think this guy could

7    be actually innocent.  You have to take that claim in the

8    context of a federal constitutional right.

9         THE COURT:  Why?  We're just trying to figure out

10   whether it's time barred.  That's all.

11        MS. WOODCOCK:  Well, I understand, your Honor, but

12   the Court can't entertain just claims of actual innocence

13   standing alone.

14        THE COURT:  Why not?

15        MS. WOODCOCK:  Well, I have to say -- I mean I read

16   something just this past week where someone was criticizing

17   Justice Scalia for taking exactly this position, but it's

18   because the way that you get into federal court is to say

19   that the trial was somehow failed under a federal

20   constitutional standard, and actual innocence is not

21   recognized as a federal constitutional standard.

22        THE COURT:  Absolutely.  Right.

23        MS. WOODCOCK:  So we have to say, all right, well,

24   Mr. MacRae is standing here and he's claiming actual

25   innocence, but the way that he gets this Court to respond to

1    that is to say my counsel was ineffective or this is newly

2    discovered evidence which would entitle me to a new trial.

3              Now, he didn't prevail on either one of those

4    claims in the state court.  So he comes in here and says this

5    Court needs to reset the clock, wind it back, so that I can

6    come in and actually argue these claims, and it's the

7    Warden's position that he can't do it.

8              THE COURT:  I understand that.  You're right.

9    There's no independent actual innocence grounds for habeas

10   relief.  That's not the proper way to understand it.  And I

11   think when I first read Mr. MacRae's pleadings I thought he

12   was sort of conflating actual innocence into a claim in

13   itself, but he's not.  He's arguing actual innocence purely

14   as a means to escape the time bar.

15             MS. WOODCOCK:  Correct.

16             THE COURT:  But it sounds like your point is, but

17   you don't get to federal court unless you can make a claim of

18   unconstitutional deprivation of liberty.  But that question

19   comes after you determine whether you even get by the

20   courthouse door because your case is time barred.

21             MS. WOODCOCK:  Right.

22             THE COURT:  And, I don't know, for some reason it

23   seems like you want me to jump into the second part of the

24   analysis to get to the first.

25             MS. WOODCOCK:  I don't.  What I would ask the Court

1   to do is just to look at the numbers and say this is time

2   barred.

3         THE COURT:  Right.  I understand that, yeah.

4         MS. WOODCOCK:  Then I think at that point --

5   because the petitioner is saying, but the way that I escape

6   the time bar is to assert this actual innocence claim and

7   here is the basis, here is the federal constitutional basis

8   for me to advance it, I think that the Court has to consider

9   it in the sense that will this -- is there enough to rewind

10  the clock based on what he has advanced.

11        It's why when I filed my pleading I made the

12  argument that it was time barred, and then I tried to address

13  some of the claims without going into an entire motion for

14  summary judgment addressing every single thing that he had

15  raised, which I would typically do.  But I tried to point out

16  the weaknesses in what I thought were his strongest points

17  because in my view he doesn't get -- he hasn't reached the

18  point where he can say to the Court, you need to rewind the

19  clock.  You need to give me a break of many years.  I've

20  missed this deadline, and you need to give me a break of many

21  years because of the following.  And it's my view that he

22  hasn't gotten there.

23        So if he doesn't reach that point of persuading the

24  Court that this statute of limitations should be enforced,

25  then he gets nowhere.

1          THE COURT:  Okay.  Now, let me ask this question of

2  Mr. MacRae's counsel.

3          By the way, anybody can speak here today.  It's not

4  the idea that only Mr. Rosenthal can address this.  Any time

5  anybody wants to speak it's fine.

6          But look, you've attached evidence to your petition

7  though.

8          MR. ROSENTHAL:  Yes.

9          THE COURT:  So I guess I have two questions.

10          The Court can certainly consider the evidence you

11  attached to the petition in evaluating this actual innocence

12  claim, right?

13          MR. ROSENTHAL:  Yes.

14          THE COURT:  Okay.

15          Secondly -- and I guess this is sort of like is

16  this all academic.  Suppose you survive this motion today and

17  there's a motion for summary judgment so this becomes about

18  affidavits and maybe testimony.  I mean, should I anticipate

19  receiving, you know, affidavits from ex-wife and stepson?  Is

20  that ever going to be forthcoming?

21          MR. ROSENTHAL:  We would certainly be trying to get

22  those and get those in.  If not, put them on the stand.  We

23  would make a full factual presentation.

24          THE COURT:  Okay.

25          MR. ROSENTHAL:  Judge, if I could just go back.

1          THE COURT:  Yes.

2          MR. ROSENTHAL:  In McQuiggen -- it's not this --

3    for the sake of argument, I cannot withdraw anything because

4    I'm afraid I'll disintegrate if I do, okay, but let's say --

5    we can stop talking about is the petition late.  Let's say it

6    is, because we are talking now about McQuiggen and the

7    exception.

8          THE COURT:  Yeah.

9          MR. ROSENTHAL:  So we can put that behind us.

10          THE COURT:  Okay.

11          MR. ROSENTHAL:  McQuiggen is a gateway.  It is not

12    trying to get you to rewind the clock in some way.  It is a

13    gateway established by the Supreme Court that says if we can

14    persuade you that it is more likely than not that no

15    reasonable juror would have convicted MacRae in light of the

16    new evidence, in light of what we're going to show you, we

17    have shown that he is actually innocent.  You actually cannot

18    let him out because of actual innocence.  You can't grant the

19    writ for that.

20          THE COURT:  I can only entertain your petition if

21    you've made a sufficient -- if you've made that showing.

22          MR. ROSENTHAL:  But I think that's one step too

23    far.

24          THE COURT:  Okay.

25          MR. ROSENTHAL:  I'm just clarifying where we are on

1    this.  It is a gateway.  We're not trying to get the Court to

2    rewind.  The Court is going to have to make some findings of

3    fact.  I mean that's the case every time we come to court.

4            THE COURT:  My question is can't I make some of

5    those findings based on your petition which has a lot of

6    evidence attached to it.

7            Here is what McQuiggen says, "The gateway should

8    open only when a petition presents evidence of innocence so

9    strong that a court cannot have confidence in the outcome of

10   the trial unless the court is also satisfied that the trial

11   was free of nonharmless constitutional error."

12           MR. ROSENTHAL:  Right.

13           THE COURT:  All right.  So I mean this Court can

14   determine whether that petition presents evidence of

15   innocence so strong I have to evaluate the evidence attached

16   to your petition.  Not just the pleadings.

17           MR. ROSENTHAL:  But see, I think petition doesn't

18   mean piece of paper petition.  I think petition means the

19   petition for federal habeas corpus, which is the process of

20   our case.  I don't think it -- McQuiggen is not talking

21   about -- I don't think McQuiggen is talking about a motion on

22   the pleadings.

23           THE COURT:  Right.

24           MR. ROSENTHAL:  I don't believe that's the case.

25           THE COURT:  Neither do I.  That's why I thought

1   today if you were going to present some evidence you would.

2        I mean this all took place 20 years ago.  This

3   investigation you're relying on wrapped up in 2009.

4        I have to believe if you had evidence to present to

5   me, all right, that would establish actual innocence, you

6   would have got someone to swear to it by now and present it

7   to me in court.

8        We're going to like decide if this case survives

9   another day, and now you're going to go out and start trying

10  to get the evidence?  I mean, the stepson has already

11  recanted the statements he gave to your guy, Abbott, right?

12  I mean, that's not going to happen.  He's serving a prison

13  sentence.

14       When I say that's not going to happen, I'm not

15  trying to suggest that matters for this.  I have the evidence

16  in front of me.

17       I'm really struggling with this idea that in the

18  context of a motion to dismiss because the case is time

19  barred, which is different, all right -- which is different

20  than just a 12(b)(6) pleading motion, right?

21       I mean, when I read the word petition in McQuiggen,

22  you're trying to tell me it refers to some sort of more

23  amorphous process, you know, the great writ, but it's the

24  petition.  No?

25            MR. ROSENTHAL:  That's not how I read it.  I read

1    it as --

2            THE COURT:  The case.

3            MR. ROSENTHAL:  Yes, but that -- what we present to

4    you on the merits -- Judge, I didn't make a motion to dismiss

5    on the pleadings.  I didn't make a motion to dismiss for

6    timeliness.  I didn't choose not to answer and bring all the

7    merits to you, at which point these arguments all could have

8    been made anyway.

9            I wouldn't have brought witnesses here today

10   because I'm here on a motion to dismiss on the pleadings.  If

11   you do a Lexis search for a motion to dismiss habeas, 2254,

12   you're going to find repeatedly treat it as a 12(b)(6)

13   motion.

14           THE COURT:  Yeah, that's true.

15           MR. ROSENTHAL:  So I wouldn't have brought

16   witnesses today.  I came to discuss the pleadings and what I

17   have presented with allegations that must be accepted as true

18   for the purpose of the motion.

19           I'm not trying to preview what you're going to do

20   ultimately.  But as far as where we are today, I wouldn't

21   have presumed to bring more.

22           THE COURT:  All right.

23           MR. ROSENTHAL:  And just for the record, I think

24   McQuiggen was nine years that they had the -- nine years,

25   fifteen years, between McQuiggen and -- Schlup was the other

1    case, which I think was the other nine or fifteen years.

2          It's not a sort of shamed backdoor bootstrap.  It's

3    a gateway, which is the equitable purpose of federal habeas

4    that allows an independent constitutional ground to be heard,

5    and we need to have that ground.

6          We also need -- the quote that you just read, we

7    need to show you that the trial did contain constitutional

8    error in order for you to really consider the actual

9    innocence anyway.  I think that was in the paragraph that you

10   just read.

11         THE COURT:  Which is the point that Attorney

12   Woodcock keeps trying to make, you know, it doesn't matter.

13   Her point is you can't -- if you're not convinced that

14   there's a possibility of constitutional error here, you

15   shouldn't even be considering the actual innocence.

16         MR. ROSENTHAL:  That's why this is really hard and

17   it doubles back on itself.  And even when you read the

18   Supreme Court decisions, there are so many double negatives

19   in every paragraph that it's really hard to parse through

20   this.  This is hard stuff.

21         THE COURT:  Yeah.  Let me look at my notes here to

22   see if I have anymore questions for you.

23         Let me take this one step at a time.  There's two

24   dimensions of this -- or two prongs to this argument by the

25   defense -- not by the defense, by the petitioner, by Mr.

1   MacRae, that this case is not time barred, and the first one

2   is because it's timely under Section 2244(d)(1)(D).

3          Now, Mr. MacRae doesn't specifically site 2244(d)

4   in his petition, but it really is the only one that he could

5   be arguing to suggest that the actual petition is timely

6   under the statute as opposed to under a doctrine such as

7   actual innocence, and counsel has assured me that that is the

8   argument.

9          Now, the premise of this is MacRae's assertion that

10  it was timely filed because he filed it "shortly after the

11  legal team was satisfied that sufficient newly discovered

12  evidence was obtained to make the innocence showing."

13         I think that point of time though is irrelevant

14  really for two reasons.  First, under the statute

15  2244(d)(1)(D), "The running of the one-year limitations

16  period is tied to discovery of the factual predicate giving

17  rise to the claim."

18         The primary habeas claim here is for ineffective

19  assistance, as counsel has pointed out.  The factual

20  predicate of that turns on things that really occurred before

21  and during the trial which were known to Mr. MacRae or at

22  least could have been discovered a long time ago.

23         Now, there's also a second sort of habeas claim

24  besides -- well, let me ask.  That's the claim.  The claim is

25  ineffective assistance.  You're not asserting actual

1    innocence as a habeas claim.

2              MR. ROSENTHAL:  That's correct.

3              THE COURT:  Okay.

4              MR. ROSENTHAL:  But, for the record, it's listed in

5    the brief as a habeas claim because habeas colleague is going

6    to change.

7              THE COURT:  Counsel you to be thorough.

8              MR. ROSENTHAL:  It's going to change.  Exactly.

9              THE COURT:  All right.  Well, at least let's think

10   prospectively then.  I guess if it's going to change -- the

11   bottom line is the authority out there is that the Supreme

12   Court, and our court of appeals, has rejected the idea of an

13   independent ground of habeas relief except for maybe in a

14   capital case, an extraordinary capital case.  And when MacRae

15   discovered that the facts didn't rise to his claim that he's

16   actually innocent then are not really relevant -- when he

17   discovered those claims are not really relevant to this

18   inquiry.

19             Now, even assuming that this actual innocence claim

20   is relevant to that inquiry, the inquiry to the case is not

21   time barred, okay, the first argument that you've made.

22             The date on which the legal team was satisfied to

23   that standard is objective.  It's not subjective.  The law

24   says that the standard is objective, not subjective.  That's

25   Wood v. Spencer.  It's a 2007 First Circuit case.  "The

1    petitioner bears the burden of proving that he exercised due

2    diligence."  That's an objective standard.  MacRae in this

3    situation has not come close to satisfying that burden.

4            Even if you credit that unsupported assertion, it

5    is my opinion that the investigation continued until about

6    August of 2009 when that last interview took place.  That

7    evidence that he relies on comes almost entirely from people

8    whose identities were known or could have been known to

9    MacRae prior to or at the time of trial over 20 years ago.

10           The inquiry has to be objective and not subjective,

11   because if it was subjective the statute of limitations would

12   begin running only when a petitioner has satisfied that he

13   has a claim -- he can satisfy the standard -- and that would

14   basically write the statute of limitations out of the

15   statute.  It just doesn't make sense to me.

16           So on that first claim that it's not time barred

17   because it's timely under the statute, 2244(d)(1)(D), the

18   Court rejects that and grants the motion to dismiss to the

19   extent it's based on that argument.

20           This other issue here, actual innocence as

21   providing relief from the time bar, that's my understanding

22   of actual innocence.  The correct understanding.  It's not an

23   independent claim for habeas relief.  What it is -- it is a

24   grounds for which the time bar does not apply.

25           I guess what I want to do is think about that a

1    little bit because my view is I can evaluate that based on

2    the petition and the evidence attached to the petition, and I

3    have some thoughts about that and questions for counsel about

4    that evidence, some of those issues, and what it means and

5    its weight.

6           You say I should talk about admissibility.  And I

7    really wasn't going to focus on admissibility, frankly, but

8    its weight is important to the Court and I think I'm in a

9    position to do that.

10          I guess what it sounds like -- maybe I'm

11   misunderstanding your argument.  It sounds like you're saying

12   to me that if you mouth the words I am actually innocent

13   because the victim recanted or made a statement that he had

14   perjured himself when he made this accusation against me,

15   that's enough.  Is that what you're saying?

16          MR. ROSENTHAL:  I think we've done more than that.

17          THE COURT:  Is that what you're saying, though?  I

18   think you've done more than that, too.  I think you've done a

19   lot more than that, but that's not the point because if it's

20   a pleading standard -- right?

21          MR. ROSENTHAL:  Yes.

22          THE COURT:  -- and I can't evaluate the credibility

23   of the evidence that you allege that demonstrates actual

24   innocence, how is it any more complicated than whether you've

25   said the magic words?  It isn't.

1          MR. ROSENTHAL:  Well, okay.  Correct.  I mean I

2    would -- I guess because we did more I don't feel that we've

3    only mouthed the words, but I think this is a well pled case

4    as far as the pleadings are concerned.

5          If this was a civil case and it was a 12(b)(6)

6    motion, labeled as that, and you didn't come thinking

7    something else, I think we have presented enough to survive

8    the motion.

9          THE COURT:  Respectfully, though, and I think I

10   understand, you don't want to be labeled with I only said the

11   magic words.  I did a lot more.  And the fact is you did.

12   You attached a lot of evidence to your petition.

13         But isn't your argument that I'm not allowed to

14   evaluate the quality of the evidence that you've attached;

15   I'm allowed only to determine whether you have -- I don't

16   want to be dismissive about it, but whether you've said the

17   magic words, I'm actually innocent because two people claim

18   the victim in this case admitted lying and confessed to

19   perjuring himself, however you want to put it, had said that

20   the allegations he made against this defendant, this

21   petitioner, were untrue?

22         That seems to be the logical conclusion in your

23   argument, and that doesn't seem to me to be consistent with

24   habeas law and actual innocence as providing relief from the

25   time bar at all to me.

1          MR. ROSENTHAL:  But again, Judge, it's the context

2     of the pleading.  And in this type of motion the Court is

3     obliged to assume that all facts pled by the petitioner are

4     true.  So in fact it's true that --

5          THE COURT:  Do I have to assume -- right.  So I

6     have to assume that he did make these statements to ex-wife

7     and stepson, right?

8          MR. ROSENTHAL:  Yes.

9          THE COURT:  Yeah.

10          MR. ROSENTHAL:  So if you're assuming -- actually,

11     if you're going to assume at face value everything that they

12     said is true and you want to -- I think the State would want

13     to make --

14          THE COURT:  Well, hold on.  Wait a minute.  I don't

15     have to assume -- even under your standard I don't have to

16     assume everything that stepson and ex-wife said is true.  I

17     have to assume that they actually did make these statements

18     in Abbott's reports and unsworn statements.  I have to assume

19     they said these things.

20          MR. ROSENTHAL:  Right.  For the purpose of the

21     pleading --

22          THE COURT:  I don't have to assume their statements

23     are true.  I have to assume they said them, they made the

24     statements.

25          MR. ROSENTHAL:  For the purpose of deciding the

1   pleading if we've plead the case but not for the merits of

2   the case.  For the merits of the case you need to make de

3   novo finding of the statements themselves, and that's not

4   done on a motion to dismiss.

5           THE COURT:  All right.  I understand.  I want to

6   take a brief recess.

7           (RECESS)

8           MR. ROSENTHAL:  Ms. Green will be back in a moment.

9   We can start.

10          THE COURT:  No problem.  No problem.

11          I'm having some difficulty, and I don't think --

12  here's my point.  I don't think the cases bear out the

13  proposition you've been advancing, that because this was a

14  motion to dismiss it somehow means I'm limited to evaluating

15  the sufficiency of your pleading.  I don't buy that.

16          I think this is a habeas case.  I think it's time

17  barred unless -- I've already ruled that it's time barred

18  under the statute.  So unless there's equitable tolling

19  involved here, all right, and a showing of actual innocence

20  can excuse the time bar, I think you are barred from

21  proceeding.

22          I think you make that determination before you get

23  to the merits, and I think this Court is well within its

24  rights to rely not only on your petition but on all of the

25  evidence you attach to your petition in evaluating it to

1    determine whether you make a showing of actual innocence

2    sufficient to remove this case from the time bar under an

3    equitable tolling argument.

4              And here's the thing.  If I'm wrong about that, it

5    certainly isn't going to prejudice Mr. MacRae in any way

6    because if -- because if actual innocence -- because if you

7    could ever get evidence of actual innocence together, this

8    wouldn't be barred as a second or successive petition if you

9    came back to court.  If you went and got sworn statements or

10   did something more to -- an actual recantation from the

11   victim that he swore to or something -- in other words, this

12   ruling can't prejudice you in any way should this Court

13   rule -- after we've worked through a few issues here that I

14   want to talk about -- that you haven't made a showing for

15   actual innocence.

16             I want to talk about what you've presented.  All

17   right?  Explain to me -- my understanding is that there was

18   some type of financial arrangement between the investigator

19   and the ex-wife.

20             How do I pronounce her name correctly, by the way?

21             MR. ROSENTHAL:  Ghedoni.

22             THE COURT:  Ghedoni.  All right.

23             What's your understanding of that evidence?

24             MR. ROSENTHAL:  My understanding -- again, we would

25   bring the investigator to testify because that's a

1   credibility concern obviously.

2          THE COURT:  Yeah.

3          MR. ROSENTHAL:  I believe that when he went back to

4   interview her a second time to confirm -- I don't think it

5   was in the first interview that she asked him to borrow

6   money.  He loaned her some money.  I don't remember how much

7   it was.  She gave him a receipt.  She paid it back.  He gave

8   her a receipt.  And he didn't give her money.  He loaned her

9   money.

10          THE COURT:  Was it ever repaid?

11          MR. ROSENTHAL:  Yes.  Absolutely.

12          THE COURT:  Now, whose employ was Abbott in at the

13   time?

14          MR. ROSENTHAL:  Abbott was retained by the defense

15   team.  By MacRae's defense team.

16          THE COURT:  But that wasn't you two yet.

17          MR. ROSENTHAL:  We were here, but we didn't sign a

18   retainer.  I wasn't here when he was hired but -- yes.

19          THE COURT:  Oh, really?

20          MR. ROSENTHAL:  We were here during that time.

21          THE COURT:  Okay.

22          MR. ROSENTHAL:  But I think he was before me.

23   Before you?  Between Ms. Green and me.

24          THE COURT:  Okay.  Would you agree with me that in

25   evaluating the evidence you attach to your petition, you

1    know, statements by Ghedoni and Mr. Grover's stepson, in

2    evaluating those I can assume -- or I must assume that they

3    have made the statements -- that they have made the

4    statements to Abbott that you allege they have made, right?

5    I don't have to assume their truth, do I?

6            MR. ROSENTHAL:  For the purpose of the pleading,

7    no.

8            THE COURT:  Okay.

9            MR. ROSENTHAL:  But that's the point.  That's why

10   the de novo -- you have the de novo power here.  How are you

11   going to determine whether the pleadings are true without

12   making the credibility determination, without seeing the

13   witness?  And if we -- if no one shows up to testify in front

14   of you, if somehow we fall apart, that's a credibility

15   determination.  They said it on paper but they're not saying

16   it in person -- or they're here now and they're saying it

17   and --

18           THE COURT:  I know.  It's like you want me to kick

19   this can down the road.  It's inconceivable to me that at

20   this stage of this litigation, though, that you would not

21   have that evidence.

22           MR. ROSENTHAL:  But, Judge, even the notice for the

23   hearing was because you wanted to hear oral argument on the

24   motion.

25           THE COURT:  Yeah.

1        MR. ROSENTHAL:  And I agree.  I don't know that I
2   would have filed a motion to dismiss, rather than respond on
3   the merit, than file a pleading.
4        THE COURT:  What do you mean that --
5        MR. ROSENTHAL:  I'm not kicking the can down the
6   road -- or I didn't put the can in the road.  We could
7   have --
8        THE COURT:  You're talking about if you were the AG
9   you would have filed something.
10       MR. ROSENTHAL:  I would have gone to the merits.  I
11  didn't choose to be on the road with the can.  That's where
12  we are.
13       And as I said, I would have probably -- just as
14  like in a negligence claim if I only allege three of the four
15  requirements, then my pleading fails.  If I allege four, my
16  pleading passes, but you still would have to hear the
17  witnesses to determine was there a stop sign there, were they
18  really speeding.
19       THE COURT:  Not according to McQuiggen.  From
20  McQuiggen, "On remand the District Court's appraisal of
21  Perkins' petition as insufficient to meet Schlup's actual
22  innocence standard should be dispositive absent cause, which
23  we do not currently see, for the Sixth Circuit to accept that
24  evaluation."
25       There's a lot of cases out there where petitions

1    are evaluated in evidence in order to determine whether
2    someone has triggered equitable tolling under the actual
3    innocence doctrine.

4         What you're saying -- you don't want to say it for
5    some reason, but what you're advancing is the idea that if
6    you say the magic words of actual innocence and back it up
7    with some allegations, that I guess someone could credit for
8    an actual innocence showing that's enough just because this
9    is in a context of a 12(b)(6) motion as opposed to something
10   else, but that's not how habeas works.

11        There's a lot of haziness in habeas.  Summary
12   judgment is used to decide habeas all of the time, but
13   there's authority for the proposition that that's just how we
14   decide habeas.  It isn't exactly like Rule 56 practice in
15   civil cases.  It's the vehicle we use to decide habeas.

16        Courts sometimes dismiss these petitions sua sponte
17   because they don't buy into an actual innocence showing.  The
18   words are there, but that doesn't mean you've satisfied with
19   sufficiency to make the showing.

20        I'm not wagging my finger here at you saying you
21   should have brought witnesses.  Don't misunderstand me.  My
22   point is I'm assuming you've presented the evidence you have
23   to trigger equitable tolling.  That's what I'm assuming
24   unless you're telling me you have more evidence.  What you
25   have to be telling me is you have the right to go out and

1    develop that evidence just to get to a habeas petition on the

2    merits.  That can't be the law.

3             MR. ROSENTHAL:  I'm saying I have -- I'm saying

4    that I can bring you witnesses to make the de novo ruling on

5    credibility.

6             Summary judgment issues -- habeas is decided on it

7    when there are no issues of fact, and that's appropriate when

8    there are no issues of fact.  And habeas petitions are

9    dismissed on the merits when there are no meritorious issues.

10            But a summary judgment motion is not granted when

11   you have a factual issue.  On the summary judgment motion

12   it's not granted when you have a factual issue that needs to

13   be decided by the Court.

14            THE COURT:  All right.

15            Well, this Court's ruling is that -- this Court's

16   ruling at this stage, okay, is that under McQuiggen, and the

17   case law out there, this Court can evaluate the habeas

18   petition and evidence attached to it to determine whether the

19   defendant has made a showing of actual innocence sufficient

20   to remove a case from the time bar.

21            I guess counsel and I disagree about that, but

22   that's my position on it.  That's the ruling.

23            I'm inclined based on that to grant this motion,

24   although I want to think about it a bit more, but I'm leaning

25   toward granting this motion to dismiss.

1          I've already explained why I'm granting it to the
2    extent that the petitioner has argued that the case is not
3    time barred under the statute, under 2244(d)(1)(D).  It's
4    already been dismissed on those grounds.  The defendant has
5    not made that showing of a newly discovered evidence basis
6    under 2244(d)(1)(D).

7          Why I'm leaning toward dismissal of actual
8    innocence is basically the following:

9          The Schlup case.  Schlup says -- it's 513 U.S. 298,
10   "An actual innocence claim is a gateway through which a
11   habeas petitioner may have been otherwise barred from a
12   constitutional claim considered on the merits."  All right.

13         Under Walker v. Rousseau, a First Circuit case, and
14   the Awon case, also a First Circuit, 2002 -- Walker is 506
15   F.3d 19, and Awon is 308 F.3d. 133.  It's a very narrow
16   exception reserved for truly exceptional cases.

17         Awon said actual innocence exception is "reserved
18   for the extraordinary case of fundamentally unjust
19   incarceration."

20         Now, what a habeas petitioner must establish to
21   demonstrate an actual innocence basis for equitable tolling
22   is that -- he must establish that, "In light of new evidence
23   it is more likely than not that no reasonable juror would
24   have found him guilty beyond a reasonable doubt."

25         The circuit case on that is Gaskins, First Circuit,

1  2011, 640 F.3d 443.

2  The new evidence under Schlup and McQuiggen must be

3  reliable, and the reviewing Court may consider how the timing

4  of the submission and the likely credibility of the affiants

5  bear on the probable reliability of that evidence."  Again,

6  evidence.  Evaluating evidence attached to a petition.

7  "The Court must consider all the evidence, old and

8  new, incriminating and exculpatory, without regard to whether

9  it would necessarily be admitted under rules of admissibility

10  that would govern at trial."  That's U.S. Supreme Court

11  authority, the House case, House v. Bell, 547 U.S. 518.

12  The Schlup Court said, "It is not for the district

13  court's independent judgment as to whether reasonable doubt

14  exists that the standard addresses."  Rather, the standard

15  requires the district court to make a "probabilistic

16  determination about what reasonable, properly instructed

17  jurors would do."  Schlup, 513 U.S. at 329.

18  Now, in this case I don't view it as a truly

19  exceptional case.  Really the only thing that distinguishes

20  this case from the mountain of unmeritorious habeas cases

21  that we get from state court is the quality of the

22  representation here.

23  It's easy to confuse the defendant's very high

24  quality counsel, who are doing an exceptional job of

25  presenting the case, with the idea that the case itself has

merit.  I don't see it.

I want to first be very clear about what I think this newly discovered evidence is -- or I should say, yeah, strike that, what the defendant's -- the petitioner's actual innocence claim is based on.

I'm focusing not on every allegation that's been made here, every argument that's been made in the papers about the defendant's overall creepiness in dealing with teenage girls or the conduct of the detectives involved in the case.  Those are not evidence of actual innocence.

I'm taking the defendant -- the petitioner I should say, and I keep confusing that -- the petitioner, the habeas petitioner, at his word.  All right?

On page 16 of his memorandum he explains that the new evidence is "Statements that MacRae did nothing to him." On page 17, he continued, "The newly discovered evidence comes from those closest to TG at the time of trial.  It obliterates the State's case and reveals MacRae's innocence. TG admitted to them that he had hatched a scheme to extort money from the diocese.  He boasted," et cetera, "His conduct after the conviction," et cetera, "corroborates their reports of TG's confessions.  Simply put, TG confessed that MacRae is innocent."

That's consistent with the habeas petition itself. On page 35 reference was made to TG's alleged admissions that

1  "His claims were nothing but lies as the newly discovered

2  evidence constituting actual innocence."

3        So I'm proceeding on that assumption.  It doesn't

4  seem questionable to this Court that a reasonable properly

5  instructed juror could still convict MacRae even if they were

6  to hear Ghedoni's and Glenn's statements in their entirety.

7        By the way, Ghedoni is G-H-E-D-O-N-I, and Glenn,

8  G-L-E-N-N.  That is what I've been referring to in the

9  hearing so far as ex-wife and stepson.

10       Even if Ghedoni and Glenn were permitted to testify

11 to every single piece of information in their written

12 statements, which were unsworn, and Abbott's interview

13 notes -- and that's extremely unlikely in this Court's view,

14 by the way, that they would be permitted to do so given that

15 much of what they say is irrelevant and inadmissible, but I'm

16 assuming they would be allowed to because that's the Court's

17 function at this stage -- there's no reason to believe it

18 would change the verdict; let alone that it would be likely

19 to do so.

20       The Court must consider the reliability of the new

21 evidence, that's the applicable law, and as well as the

22 credibility of those providing it, in determining whether it

23 establishes actual innocence sufficient to trigger the

24 doctrine and the relief from the time bar.

25       First, initially, is that all these statements are

1     unsworn.  There's authority for the proposition that the
2     unsworn nature of these statements diminishes their
3     reliability and their probative value.
4          An authority from the Ninth Circuit, the Teahan
5     case, T-E-A-H-A-N, 383 Federal Appendix 615.  Also, the
6     Gutierrez case, which is a Western District of Oklahoma case
7     for the same proposition.  That's at 214 Westlaw 6603243.
8          Second, in addition to being unsworn, Ghedoni and
9     Glenn did not come forward of their own volition or
10    initiative.  They provided their statements after being
11    approached by Abbott.  That undermines their credibility and
12    their reliability.  That's particularly so in light of the
13    extremely suspicious circumstances under which Abbott
14    obtained their statements.
15         After providing his letter to Abbott, Glenn wrote a
16    letter to MacRae's counsel in which he claimed that he was
17    not completely truthful because Abbott had told his mother,
18    Ghedoni, who was having a rough time, that he would do what
19    he could to help her out financially and had given her a cell
20    phone and paid her rent and had had intimate relations with
21    her.  That's at document 1-7 of this record.
22         Now, Ghedoni responded -- let me think.  She denied
23    that she had had intimate relations with Abbott and just
24    explained that Glenn was just angry because he felt that she
25    and Abbott had not done enough to help him with his criminal

appeal.  She did admit that Abbott had loaned her money, and counsel has confirmed that today adding that she paid the money back.  That's at document 1-9 of this record.

It's a little ironic that we're relying on MacRae's investigator who, you know, improperly influenced witnesses, at least there's evidence that he did, which is exactly the allegation made against the Keene police.

Third are the witnesses' motives.  Even in the absence of Abbott's sort of unusual investigative techniques here Ghedoni and Glenn's statements would have to be viewed pretty critically.  They had a past relationship with Grover. And if their accounts are credited at all, including Grover's physical abuse of Ghedoni, the breakup of their marriage under pretty sordid circumstances, and Grover's sexually aggressive behavior toward Ghedoni's daughters, that would give Ghedoni and Glenn reason to fabricate testimony or statements against Grover.

Fourth, there's no objective corroboration to any of the statements made by Ghedoni or Glenn.  They claim that Ghedoni -- excuse me.  Ghedoni and Glenn both claim that Grover showed off the cash, but none of the photographs that I've seen depict Grover showing off cash.  They depict other family members.

MacRae provided no objective evidence corroborating Ghedoni and Glenn's claims about how he spent the money.

1    There are no receipts, no financial statements, nothing to

2    corroborate the claims of how Grover spent the money received

3    from the settlement with the diocese.

4              Now, fifth, this is not really as significant as

5    the other factors I've been through so far, but Judge Smukler

6    noted this in his motion denying a new trial.  Ghedoni and

7    Glenn are convicted felons.  Glenn is serving a prison

8    sentence for second degree murder, and Ghedoni was convicted

9    of hindering apprehension when she assisted Glenn in fleeing

10   from the police after the murder took place and lied to the

11   police about his whereabouts.

12             Those facts undermine their credibility in the view

13   of this Court and would likely do so to any juror hearing

14   their testimony under cross-examination.

15             Now, sixth, of course, is the statements

16   themselves.  The statements themselves are not highly

17   credible.  The primary subject of the statements that Ghedoni

18   and Glenn made are basically sort of recantations.  They're

19   not formal recantations in the sense, but they're

20   inconsistent statements.  They're statements that what I said

21   at trial -- I, being Grover, what I said at trial was untrue.

22             Our Court of Appeals in the First Circuit have

23   stated that, "It is well-established that recantations are

24   generally viewed with considerable skepticism."  That's

25   U.S. v. Connolly, 504 F.3d at 206.

1          Also <u>Bader v. Warden</u>, this court's case, 2005 DNH

2    103.  That's by Judge DiClerico.

3          The Ninth Circuit has said, "Recanting testimony is

4    easy to find but difficult to confirm or refute.  Witnesses

5    forget.  Witnesses disappear.  Witnesses with personal

6    motives change their stories many times before and after

7    trial."  That's the <u>Carriger</u> case, 132 F.3d at 463.

8          The Court can think of many reasons why the victim

9    of sexual abuse might claim later that it never took place or

10   that he had made it up.  One of the most obvious ones is that

11   the victim is embarrassed and doesn't want to be perceived in

12   a certain way, certainly by a stepson or by close family

13   members.

14         Recantations are not particularly unusual.  Courts

15   frequently conclude that recantation evidence does not

16   provide a sufficient basis for a finding of actual innocence.

17         One example is <u>Freeman v. Trombley</u>.  That's at 483

18   Federal Appendix 51.  It's a Sixth Circuit case.

19         Now, those are the reasons this Court finds the

20   statements of Ghedoni and Glenn, which constitute the newly

21   discovered evidence establishing actual innocence, as having

22   very limited credibility and unlikely in any case to

23   eliminate the possibility that a juror, a reasonable juror

24   would find guilt in this case, which is the standard.

25         There's also the evidence of guilt at trial.  Under

the House case, the U.S. Supreme Court case at 547 U.S., this
Court must consider all the evidence, old and new,
incriminating and exculpatory.

Now, it's true that the trial in Cheshire County
rested largely on TG's credibility, Grover's credibility, and
the defense went at great lengths at trial and here to
undermine that credibility.

But the jury plainly found Grover to be credible
and heard him testify at trial, and so those have to be
weighed against this evidence.  And what they are is they're
unsworn statements of two persons, two persons who may have
been given financial incentive for their cooperation and who
already had an axe to grind clearly against Grover based on
his pretty disgusting conduct, if believed, around Ghedoni,
Glenn and the girls who lived in that household.

I don't think that those statements would do much
to undermine the jury's own impressions of Grover or their
perceptions at trial.

Now, leaving Grover's credibility aside, nothing
that they say undermines what seems to be a very important
piece of evidence at the underlying criminal trial, which is
that when McLaughlin, a detective from Keene, confronted
MacRae with these accusations, he didn't deny them.  He had a
very unusual response, basically quibbling with McLaughlin
over the proper terminology to apply to a person who is

sexually attracted to children under 14 or 15.  I don't even remember the terms right now, but he basically corrected the detective for using the word pedophile.  He came up with the more correct term -- or a more precise term.  Whether that was even correct is debatable.  But it was a very unusual response.  It wasn't a denial.  It wasn't the type of conduct that one would expect one to undertake when accused in that way.  Especially a Catholic priest.

Now, MacRae in his memoranda before this Court downplayed that evidence and actually explained it, but the fact remains that MacRae did not react in a manner one would expect of an innocent person.

So this Court does not view the actual innocence showing made by the defendant here to be sufficient to meet the applicable standard here to remove the time bar.  A reasonable juror could I think find that Grover's testimony was credible even in light of this evidence.

That said, I want to take a closer look at the law that petitioner's counsel have advanced in this case because I do think that the type of analysis that I just undertook is perfectly permissible in evaluating this claim.  But counsel makes the argument that because we are in Rule 12 territory that that is -- he evaluated the credibility of the evidence too much, and that what the Court was duty bound to do was simply accept the pleadings and determine whether they were

1  sufficient to allege an actual innocence showing.

2          I'm going to take a closer look at that before I

3  rule because I want to give that the full stroke of the pump.

4          Let me look at my notes here.

5          I just want to bring up the petition here quickly.

6  Pauline Goupil testified at trial, but she didn't testify to

7  the jury, right?

8          MR. ROSENTHAL:  Correct.

9          Oh, wait.  That might be incorrect, your Honor.

10          THE COURT:  Does anybody know?  Am I right about

11  that?

12          MS. WOODCOCK:  I'm looking at -- honestly, I can't

13  remember, but I'm looking at page 15 of Document 14 filed by

14  the petitioner, and it has citations to Goupil's testimony.

15  It says that Goupil testified that they did discuss MacRae.

16          MR. ROSENTHAL:  I don't recall if it was -- yeah, I

17  know that -- I just don't recall right now if that testimony

18  was in front of a jury or --

19          MS. WOODCOCK:  I can't remember either.  I'm sorry,

20  your Honor.

21          THE COURT:  Okay.  All right.

22          I also want to incorporate by reference, and I'm

23  relying on those specifically, Judge Smukler's orders in

24  state court.  The state court bifurcated the analysis between

25  the ineffective assistance claim and the new evidence claim,

1    and those two orders are documents 11-2 and 11-1 in this

2    court's docket, and the Court's adopting those and

3    incorporating them by reference to the analysis therein.

4           But I just want to be clear on my point here on the

5    legal issue, and I'm going to take a second look at it before

6    I rule.

7           My view is that the Supreme Court applicable law is

8    that the district court can evaluate the reliability of the

9    evidence at the outset of a case without having to assume

10   it's credible or without having to hear witness testimony.

11          That is based on McQuiggen's statements, "The

12   gateway should open only when a petition presents evidence of

13   innocence so strong that a court cannot have confidence in

14   the outcome of the trial," and secondly, "unless the court is

15   also satisfied that the trial was free of nonharmless

16   constitutional error."  That's at 133 S.Ct. 1924 in

17   McQuiggen.

18          The other quote is, "On remand, the District

19   Court's appraisal of Perkins' petition as insufficient to

20   meet Schlup's actual innocence standard should be

21   dispositive, absent cause --" which we do not currently see

22   "-- for the Sixth Circuit to upset that evaluation."

23          And I think those quotes from McQuiggen, and just

24   the inference to be drawn by any number of any of these

25   cases, is that a Court can evaluate the evidence alleged in

1   the petition under this actual innocence standard to

2   determine whether tolling should be involved subject to lift

3   the time bar.

4           Questions before I --

5           MR. ROSENTHAL:  I have one.  If you do find the

6   actual innocence is satisfied in looking at the merits of

7   that, are you satisfied now or should we discuss now that the

8   independent constitutional ineffective assistance ground is

9   properly pled so we don't have to come back on the motion to

10  dismiss?  We could probably run through it.

11          THE COURT:  Why not.  Why not.

12          MR. ROSENTHAL:  I think I can do it quickly.  The

13  independent ground was the ineffective assistance, which we

14  have pled both the deficient performance and the prejudice.

15          We have alleged that the state court did not

16  properly apply the Strickland standard.  It did not look at

17  all the circumstances, which is required by the language of

18  Strickland, in evaluating the performance.  It did not look

19  to the totality of the evidence in assessing the prejudice.

20  It did each one on its own together.

21          So without looking at, you know, defense counsel's

22  comment that triggered all of the uncharged acts evidence,

23  you can look at that alone, or then you can look at it with

24  that defense counsel -- you have to look at it also that

25  defense counsel turned the case over, sent the prosecution

1  the State's case, and you have to consider that along with

2  the defense counsel did not take advantage of -- full

3  advantage of the opportunity to interview Grover before trial

4  and the other instances presented.  So the state court didn't

5  do that, leaving it to this Court to follow Strickland.

6           With the prejudice, the same thing.  The prejudice

7  needs to be reviewed on the totality of the evidence.

8           THE COURT:  Yes.

9           MR. ROSENTHAL:  So again, you need to look at

10  everything, not only the individual boxes.

11          And one of the things that the -- this cumulative

12  error doctrine that the State has raised, that there's

13  clearly established law, that the Court needs to look at

14  prejudice according to the cumulative error doctrine, two

15  points about that that we make is -- first, we don't rely on

16  that entirely, cumulative error.  We rely on the totality of

17  the circumstances -- or the totality of the evidence and all

18  the circumstances that's required by Strickland's language

19  alone.  But also the cumulative error doctrine is deemed by

20  the First Circuit to be clearly established law.  That's how

21  we look at it.

22          There's a Supreme Court case in 2013 called

23  Marshall v. Rodgers that actually says that the circuit looks

24  to its own precedent to determine what is clearly established

25  federal law for the purpose of habeas.

1           THE COURT:  Okay.  Your point is that I don't need

2      a Supreme Court case.  The circuit's its own precedent.

3           MR. ROSENTHAL:  Yeah.  It's actually interesting.

4      The court says the circuit cannot do a survey of other

5      circuits to determine is this clearly established or not,

6      because that would mean if the circuit gave another ruling on

7      Miranda or Brady or something, now all the sudden that's not

8      clearly established.  It shouldn't take it out of habeas.

9           So we've pled that the Court has not followed the

10     Strickland standard by any means.  And as far as -- another

11     issue that the Court really identified -- the Court did a

12     better job than I did.  It said because these witnesses were

13     known by -- MacRae knew who they were, knew Grover's wife,

14     knew Grover's stepson --

15          THE COURT:  That counsel should have been on top of

16     that.

17          MR. ROSENTHAL:  No due diligence.  The Court

18     identified that.

19          The State argues that it's not exhausted because we

20     didn't raise it, but it was raised -- the Court raised it.

21     The purpose of exhaustion is to give the state court a chance

22     to pass on it, and the Court did.  It raised deficient

23     performance but then did not look at prejudice, and the

24     prejudice would be something that this Court would decide de

25     novo, what is the value of these statements, how would they

1   have been used in trial.  So once again, we're in that same

2   area.

3            So again, as far as the ineffective assistance,

4   we've pled all of the components of it with or without a

5   dispute of cumulative, which I submit is clearly established.

6   The Court did not follow the clearly established law.

7            THE COURT:  Understood.  Do you want to address

8   ineffective assistance?

9            MS. WOODCOCK:  Very briefly, your Honor.  I'm not

10  familiar with this Marshall v. Rodgers case that counsel

11  cites about looking to -- that this Court should look to the

12  First Circuit's opinions, or the circuit itself should look

13  to its own opinions, but I have to believe that the opinion

14  has to be a little bit more nuanced than that because the

15  rule is clearly established federal law as recognized by the

16  United States Supreme Court.

17           Now, I would assume that the reference in Marshall

18  is that the First Circuit of course applies United States

19  Supreme Court law, and that you wouldn't go and look to the

20  Ninth Circuit to see how they had applied it necessarily.

21  But you would still be limited to clearly established federal

22  law as cited by the United States Supreme Court, and the

23  cumulative error doctrine has never been adopted by the

24  United States Supreme Court.

25           THE COURT:  So your point is that the point of that

1  case is not that it equates circuit authority with Supreme

2  Court authority, but only that circuit interpretation of

3  Supreme Court authority is clearly established law.

4  MS. WOODCOCK:  I think that that's what it must

5  mean.  I don't know the case, and I apologize for not knowing

6  it because it's certainly within my bailiwick, but it seems

7  to me that you would have to still apply the law that has

8  been established by the Supreme Court because the First

9  Circuit is making rulings all the time on different issues.

10  THE COURT:  Yeah.

11  MS. WOODCOCK:  And since the cumulative error

12  doctrine has not been adopted by the United States Supreme

13  Court, I'm not sure that you could say that Judge Smukler

14  committed an error in not applying it because he's looking

15  obviously to the United States Supreme Court and New

16  Hampshire law when he's making his ruling.

17  The claims of ineffective assistance of counsel

18  here are really -- they're just sort of second-guessing,

19  Monday morning quarterbacking if you will, the decisions that

20  were made by the trial counsel, a lot of which were made with

21  the petitioner's acquiescence.

22  We've cited a number of spots in our brief where we

23  say, you know, you can't go and say, all right, that's a good

24  idea, go ahead, give them my notes, and then claim somewhere

25  down the road, well, that was ineffective assistance of

counsel.  That's just not allowed.

One of the things that I think that the Court has to bear in mind, and I think the Court was driving at it when it spoke earlier about ruling on a petition, is that petitions of habeas corpus don't come in the way a lot of civil claims come into the court, because civil claims come in and there's no record.  The record gets developed.

In federal habeas corpus litigation the record is already there.  And if the Court looks at the trial that the petitioner had, you can see that the lawyers are trying to make strategic decisions in trial that does not have its disadvantages.

There were other allegations against the petitioner.  Indeed, he pleaded guilty to at least one of the allegations after he was convicted of this one.

So the lawyers are trying to navigate a very difficult road.  And in doing so they have to make decisions, and sometimes they're split decisions, split second decisions, making an opening statement that may open the door to something.  Sometimes it's deciding whether to cross-examine or not to cross-examine someone.  Sometimes it's the way you go about interviewing a victim, which is the claim here.

None of those decisions -- in none of those decisions can the Court say that absolutely this was

1    ineffective assistance of counsel to the detriment of the

2    petitioner so that it changed the outcome of the case.

3             Judge Smukler examined the claims.  He wrote

4    thorough opinions on both of these issues.  This Court should

5    give deference to his factual findings and his conclusions of

6    law because he did address all of the issues here.

7             So it's our position that this ineffective

8    assistance of counsel claim again can't get the petitioner

9    the relief he seeks.  He has come to this Court years after

10   his conviction was final.  He's seeking to overturn a

11   conviction that has been thoroughly examined by the state

12   courts, and this Court has no reason to intercede on his

13   behalf.

14            THE COURT:  All right.

15            MR. ROSENTHAL:  Judge, just really briefly.

16            THE COURT:  Of course.

17            MR. ROSENTHAL:  We can argue the merits of the

18   ineffective assistance, but again, all I'm offering, unless

19   you want more, is that we've properly pled it for the purpose

20   of the motion.

21            We are alleging that the state court did not

22   properly apply the federal standard according to --

23   Strickland on its own terms, setting aside the cumulative

24   error doctrine, on its own terms the Court didn't properly

25   apply it, and that's why the Court didn't see the overall

1    nature of the errors.  He saw one thing at a time and

2    dismissed each one, one after another.

3             If the Court applies the proper standard here, you

4    would be looking at the effect of each of them and how they

5    come into each other.

6             If you look at -- the case was really turned on

7    Grover, as you said.

8             THE COURT:  That's true.

9             MR. ROSENTHAL:  So that's not a tremendously strong

10   case, and the case was even weaker pretrial because a lot of

11   evidence had been suppressed.  Three weeks before the trial a

12   lot of evidence had been suppressed.  The defense was going

13   to have an interview with Grover.  The defense was holding

14   its own case.  All the statements of his witnesses and

15   everything else were in its own possession.  The State didn't

16   have any access to them.  And the police officer was not

17   going to be able to offer that quasi-expert testimony.  So

18   the State had less before trial than it had at trial.

19            The defense gave the State all of those other

20   accusations, allowed Grover to testify without being

21   thoroughly interviewed before trial, gave the State the

22   questionnaires that the defense counsel had given to its own

23   witnesses and had been answered, so gave defense witness

24   testimony to the State prior to trial, and now allowed the

25   police officer to offer that testimony which essentially was

1    telling the jury that accusations that looked like Grover's

2    bear an indicia of truth.

3            So the State's case was much weaker before trial

4    than it was after defense counsel got in there and really

5    served the State in ways that it never could have served

6    itself.

7            And the idea that all of that uncharged acts

8    evidence would have been admitted just because credibility

9    was the focus, impeachment was the focus of the defense,

10   makes no sense.

11           There's no evidence -- there's not a question on

12   cross-examination that would have triggered that evidence.

13   The only thing in that trial that triggered that evidence to

14   come in was because defense counsel after suppressing -- I'm

15   going to suppress one, two and three, and then say to the

16   jury, you're hearing four, that can't be the first thing that

17   happened.  You can't believe it.  He used the suppression as

18   a sword.

19           But for that comment, to say to Grover on the

20   stand, you said at one point this happened in the east office

21   and you said at another point that this happened in the west

22   office, or the locks were painted over, the locks were not

23   painted over, that doesn't trigger all that evidence.  The

24   state court entirely missed that.

25           The evidence shouldn't have come in.  Judge Brennan

1  should not have allowed in almost the same number of

2  uncharged acts as were charged.  That was huge.

3          THE COURT:  Just so I'm understanding your

4  argument, that goes to ineffective assistance.  The evidence

5  itself doesn't create a constitutional problem.  It's that

6  competent counsel would have kept it out.

7          MR. ROSENTHAL:  That's the ineffective assistance

8  of counsel claim.  Yes, it was not strategic, and the impact

9  was tremendous.  The impact of all -- this is an exceptional

10  case.  McQuiggen is not saying it has to be an exceptional

11  case only on what's newly discovered.  It says it has to be

12  an exceptional case.  This is an exceptional case.

13          In the first three paragraphs, or ten, whatever

14  paragraph it was of defense counsel's opening statement, he

15  triggers all of this evidence that he just got suppressed.

16  The State wanted that evidence so much, and the defense

17  wanted it out so badly because it cuts the accusations

18  against Grover in half to keep it out on four and three.

19  Three came in.  They had four.

20          My God, what a gift to the State that defense

21  counsel gave by using the suppression as a sword.  And

22  defense counsel, as soon as he did it and they went up to the

23  bench he said, maybe this was ineffective.  I didn't even

24  know what I did.

25          He didn't even know what he did.  That was not

1   strategic.  And there's no way -- there's nothing else in his

2   cross-examination that would have brought out that testimony.

3   The only reason it came in was because he violated the

4   suppression order.  He referred to it himself.  This couldn't

5   have been the first thing that happened, and he knew very

6   well it wasn't because he got that other stuff suppressed.

7            The trial was gone there.  The trial was gone right

8   there because that's all the more.  And the State argues at

9   some point that getting all that in gave the defense more

10  opportunity to cross-examine.  Come on.  I mean then the

11  defense would always want more accusations in.  I mean it

12  didn't give us more -- it gave more time for Grover to lie

13  and to come out of things and change his testimony and do all

14  of the stuff that he was doing.  Four and three.  Four were

15  charged.  Three more came in.  The trial was that much

16  longer.  The jury had to sit through that much more, hear

17  that many other accusations, see them go after this guy that

18  many more times.  This was not a bonus to the defense.  This

19  was the end of the trial for us.

20            And MacRae -- sending the defense case to the State

21  sent defense witnesses' answers to questionnaires that

22  defense counsel sent.  The prosecution had the defense

23  witnesses' testimony before trial.  I mean, I don't know, in

24  New York the prosecutor doesn't even have to turn their

25  witnesses' statements over to the defense until just before

1    cross-examination.  But the prosecution could prepare their

2    trial with material that they received.  MacRae, as the

3    client, is sophisticated enough to think that's a bad idea.

4              I mean this is an exceptional case because we have

5    a defense counsel that dropped the ball.  He really neglected

6    his client each instance of this.  And if you take the

7    Court's instance also, that he should have gone and

8    interviewed Ghedoni before trial and got these statements

9    from her, that she was available, if you put that in -- the

10   defense lawyer, he did what he could with what he had at

11   trial, but the preparation was faulty and the execution was

12   faulty serving the State.

13             So this is an exceptional trial.  For the purpose

14   of newly discovered evidence -- or for the purpose of

15   McQuiggen this is an exceptional trial, and for the purposes

16   of the ineffective assistance of counsel this was a disaster.

17             THE COURT:  If this case proceeded to the merits,

18   there would be a discussion about whether the deferential

19   AEDPA standard applies or the de novo one, right?  That's a

20   different standard depending on the record whether the

21   highest court evaluated the federal constitutional claims.

22             But there's a different standard for the judge's

23   factual findings, right?  Is it clear and convincing?  What's

24   the standard of review of the state court's factual findings?

25             MS. WOODCOCK:  I think it's if the findings are not

1    wholly supported by the record or unsupported by the record.

2             THE COURT:  No.  Clearly erroneous or something.

3    There's a standard for -- there's a deferential standard for

4    the state court's factual findings.

5             MR. ROSENTHAL:  Factual findings, yes.

6             THE COURT:  Do you know that offhand?

7             MR. ROSENTHAL:  I don't.

8             THE COURT:  I can look it up.

9             MR. ROSENTHAL:  But for much of what we're -- if

10   the state court didn't find facts -- see, you may find in the

11   ineffective assistance -- when you look at all of the

12   instances alleged, you may find that some that the Court

13   found were not deficient performance were deficient because

14   you're looking at them together as they should be looked at.

15            In that case, the ones that the state court did not

16   find were deficient you would be making de novo findings

17   because there was no prejudice determination made by the

18   state court.  I don't know if I said that right.

19            THE COURT:  I understand.

20            MR. ROSENTHAL:  Okay.  And certainly for the one

21   where he made no prejudices.  So there are going to be places

22   where you have de novo review and others where there's some

23   deference.

24            THE COURT:  All right.  A couple points then.

25            Look, I do need to -- I appreciate your arguments,

1    but I do need to stress I don't think the Court gets to -- I

2    don't think it's likely, unless this motion is denied, that

3    the Court gets to an examination of ineffective assistance,

4    because I think in order to get habeas review at all, not a

5    petition to grant it, to get habeas review, to get through

6    the gate, this defendant has to make an actual innocence

7    showing to escape the time bar.  I don't think he has, and I

8    am going to make sure that I'm applying the standard

9    correctly before I rule.

10           I asked about the standard applicable to the trial

11   court's factual findings for a reason.  Only that -- I

12   believe it's clearly erroneous.  The factual findings of a

13   state court are evaluated under a clearly erroneous standard,

14   and I've incorporated two orders of the superior court into

15   my analysis, and I want to be clear that the reason I did

16   that was so it would be clear that the Court's factual

17   findings -- Judge Smukler's factual findings were credited by

18   this Court under that standard.

19           All right.

20           MS. WOODCOCK:  Excuse me, your Honor.  Just to let

21   the Court know what the standard is, it's on page 19 of

22   document 11, "In addition, findings by the state court are

23   conclusive unless overcome by clear and convincing evidence."

24           THE COURT:  There it is.

25           MS. WOODCOCK:  And that's Title 28 USC 2254(e)(1).

1          THE COURT:  So I misstated it.  It's not clearly
2    erroneous.  It's that the burden -- to overcome a factual
3    finding of the superior court it must be demonstrated by
4    clear and convincing evidence.
5          MS. WOODCOCK:  I think that's correct.
6          THE COURT:  All right.  For me it's -- I don't want
7    to say it's the same standard, but I think for my purposes in
8    evaluating Judge Smukler's findings, particularly with
9    respect to document 11.2 where he analyzed the newly
10   discovered evidence, that is the type of deference I was
11   affording his factual findings.
12         Okay.  We are in recess.  Thank you for your
13   presentations.
14         MR. ROSENTHAL:  Thank you, Judge.
15         (Conclusion of hearing at 12:30 p.m.)
16
17
18
19
20
21
22
23
24
25

1                    C E R T I F I C A T E

2

3

4          I, Susan M. Bateman, do hereby certify that the

5    foregoing transcript is a true and accurate

6    transcription of the within proceedings, to the best of

7    my knowledge, skill, ability and belief.

8

9

10   Submitted: 4-6-15

                         **SUSAN M. BATEMAN, LCR, RPR, CRR**
11                       LICENSED COURT REPORTER, NO. 34
                         STATE OF NEW HAMPSHIRE
12

13

14

15

16

17

18

19

20

21

22

23

24

25